IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

No. 07-157C
(Senior Judge Smith)

---

PACIFIC GAS AND ELECTRIC COMPANY,
SOUTHERN CALIFORNIA EDISON COMPANY,
AND CALIFORNIA ELECTRICITY OVERSIGHT BOARD,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S MOTION TO CONSOLIDATE, FOR MORE DEFINITE STATEMENT, AND TO STAY PROCEEDINGS; ALTERNATIVELY, DEFENDANT'S MOTION FOR ENLARGEMENT OF TIME**

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0475
Fax: (202) 305-7644

OF COUNSEL:
Sean B. McNamara
Trial Attorney
Department of Justice

Peter Burger
Attorney
Bonneville Power Administration

John D. Bremer
Attorney
Western Area Power Administration

May 11, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I. The Two Cases Should Be Consolidated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. Plaintiffs Should Provide A More Definite Statement . . . . . . . . . . . . . . . . . . . . 9

A. Plaintiffs Should Be Required To Identify The Provisions Of The ISO And CPX Tariffs That Allegedly Dictate That The Refund They Claim Is Owed Is Currently Overdue . . . . . . . . . . . . . . . . . . . . . . . 10

B. Plaintiffs Should Be Required To Identify The Alleged Statements They Claim Constitute An Anticipatory Breach . . . . . . . . . . . . . . . . . . . 12

III. The Cases Should Be Stayed Until *BPA v. FERC* Is Final . . . . . . . . . . . . . . . . 13

IV. Alternative Motion For Enlargement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

### CASES

**PAGE(S)**

Bonneville Power Administration v. FERC,
422 F.3d 908 (9th Cir. 2005) . . . . . . . . . . passim

In re: California Power Exchange Corp.,
245 F.3d 1110 (9th Cir. 2001) . . . . . . . . . . 3, 4

Cienega Gardens v. United States,
62 Fed. Cl. 28 (2004) . . . . . . . . . . 7, 8

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . 9, 10

Far West Fed. Bank S.B. v. Dir. Office of Thrift Supervision,
930 F.2d 883 (Fed. Cir. 1991) . . . . . . . . . . 15

Landis v. N. Am. Co.,
299 U.S. 248 (1936) . . . . . . . . . . 13

Loveladies Harbor, Inc. v. United States,
27 F.3d 1545 (Fed. Cir. 1994) . . . . . . . . . . 15

Lowry Econ. Redev. Auth. v. United States,
71 Fed. Cl. 549 (2006) . . . . . . . . . . 7

N.Y. Power Auth. v. United States,
42 Fed. Cl. 795 (1999) . . . . . . . . . . 14, 15

Penn. R.R. Co. v. United States,
363 U.S. 202 (1960) . . . . . . . . . . 15

Public Utilities Commission v. FERC,
456 F.3d 1025 (9th Cir. 2006) . . . . . . . . . . 3, 4, 11, 12

Scogin v. United States,
33 Fed. Cl. 285 (1995) . . . . . . . . . . 10

Stephenson v. United States,
37 Fed. Cl. 396 (1997) . . . . . . . . . . 9

United States v. Dekonty,
922 F.2d 826 (Fed. Cir. 1991) . . . . . . . . . . 12

**FERC DECISIONS**

San Diego Gas & Electric Co.,
92 F.E.R.C. ¶ 61,172 (2000) . . . . . . . . . . 4

San Diego Gas & Electric Co.,
93 F.E.R.C. ¶ 61,121 (2000) . . . . . . . . . . 13

San Diego Gas & Electric Co.,
95 F.E.R.C. ¶ 61,418 (2001) . . . . . . . . . . 5

San Diego Gas & Electric Co.,
96 F.E.R.C. ¶ 61,120 (2001) . . . . . . . . . . 5

**STATUTES**

16 U.S.C. § 824e . . . . . . . . . . 4

Cal. Civil Code § 1440 . . . . . . . . . . 12

Cal. Pub. Util. Code §§ 330-398.5 . . . . . . . . . . 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY, SOUTHERN CALIFORNIA EDISON COMPANY, AND CALIFORNIA ELECTRICITY OVERSIGHT BOARD, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 07-157C (Senior Judge Smith) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO CONSOLIDATE, FOR MORE DEFINITE STATEMENT, AND TO STAY PROCEEDINGS; ALTERNATIVELY, DEFENDANT'S MOTION FOR ENLARGEMENT OF TIME**

Pursuant to Rule 42(a) of the Rules of the United States Court of Federal Claims, defendant respectfully requests that the Court order case numbers 07-157C and 07-167C consolidated because common questions of law and fact pervade both cases and the interests of judicial economy weigh in favor of consolidation. Further, pursuant to RCFC 12(e), defendant respectfully requests that the Court order plaintiffs to provide a more definite statement of their claims. Plaintiffs' complaints are so vague regarding their claim for breach of contract and anticipatory breach that we cannot reasonably be required to frame a responsive pleading. Finally, defendant requests that the Court otherwise stay proceedings in this case until related, duplicative proceedings stemming from the United States Court of Appeals for the Ninth Circuit are final. Alternatively, in the event our request for a stay is denied, we request an enlargement of time of 60 days, from the date of denial, within which we may respond to the complaints in both cases.

Plaintiffs' counsel informs us that they have no opposition to our request to consolidate, but that they do oppose our request for a more definite statement and to stay proceedings. Plaintiffs have no objection to our alternative motion for an enlargement of time.

In support of this motion, we rely upon the following memorandum.

**DEFENDANT'S MEMORANDUM**

**STATEMENT OF THE ISSUES**

1. Whether the Court should order case numbers 07-157C and 07-167C consolidated because common questions of law and fact pervade both cases and the interests of judicial economy weigh in favor of consolidation.

2. Whether the Court should order plaintiffs to provide a more definite statement of their claims because their complaints are so vague regarding their claim for breach of contract and anticipatory breach that the Government cannot reasonably be required to frame a responsive pleading.

3. Whether the Court should otherwise stay proceedings in this case until related, duplicative proceedings stemming from the United States Court of Appeals for the Ninth Circuit are final, or, alternatively, in the event the Court declines to grant a stay, whether the Court should grant the Government's request for an enlargement of time of 60 days from the date of that denial within which to respond to the complaints in both cases.

**STATEMENT OF THE CASE**

These cases arise from the California power crises of 2000 through 2001. Explanations of the facts surrounding these cases can be found in Public Utilities Commission (CPUC) v. FERC, 456 F.3d 1025, 1035-44 (9th Cir. 2006); Bonneville Power Administration (BPA) v. FERC, 422 F.3d 908, 911-14 (9th Cir. 2005); and In re: California Power Exchange Corp. (CPX), 245 F.3d 1110, 1114-19 (9th Cir. 2001). To summarize, in 1996 California enacted Assembly Bill 1890 ("AB 1890"). Cal. Pub. Util. Code §§ 330-398.5. That act required California's three major, investor-owned, vertically integrated electric utilities ("IOUs") to divest themselves of substantial amounts of their power generation facilities. CPUC, 456 F.3d at 1035-36. Those utilities are now plaintiffs in these cases, with Pacific Gas and Electric Co. ("PG&E") and Southern California Edison Co. ("SCE") appearing as plaintiffs in number 07-157C, and San Diego Gas and Electric Co. ("SDG&E") appearing as plaintiff in number 07-167C.

Instead of generating their own electricity, under AB 1890 the IOUs initially were required to purchase all of their power from a new, centralized market called the California Power Exchange ("CPX"). The CPX ran a price auction in which purchasers and suppliers submitted bids that generated a single market clearing price necessary to meet the entire market's demands for electricity for a particular period of time. All bidders paid or received that single market clearing price for the time period. Because the CPX was deemed a public utility pursuant to the Federal Power Act ("FPA"), its operations and transactions were governed by a tariff approved by the Federal Energy Regulatory Commission ("FERC"). CPUC, 456 F.3d at 1036-37. That tariff also provided the mechanism by which payments were made for the power

transacted, with the CPX generating settlement statements and invoices that billed participants for the amounts they owed. PG&E Complaint ¶ 26; SDG&E Complaint ¶ 23.

AB 1890 also established the California Independent System Operator Corporation ("ISO"). Although the IOUs continued to own their electricity transmission facilities, the legislation required the IOUs to give operational control over these facilities to the ISO. The ISO operated the electricity transmission grid, directing necessary power to the loads of the IOUs. CPUC, 456 F.3d at 1037. To run the grid, the ISO was authorized to acquire the necessary power to balance it, known as "imbalance energy," as well as operating reserves, known as "ancillary services." Id. The ISO ran its own auction market to obtain these services in which it received bids from suppliers and then, like the CPX, set a single price necessary to meet the market's demands for a particular time period. Like the CPX, the ISO was regulated by FERC and therefore operated under a FERC approved tariff. Also like the CPX, the ISO tariff provided the mechanism for the ISO to generate statements and invoices that billed the IOUs for the power and services purchased. CPUC, 456 F.3d at 1037; PG&E Complaint ¶ 26; SDG&E Complaint ¶ 23.

In the summer of 2000, California began to experience a power crisis. Prices in the CPX markets spiked sharply. CPX, 245 F.3d at 1115-16. Accordingly, one of the IOUs filed a complaint with FERC claiming the CPX and ISO markets were producing unjust and unreasonable prices and sought a price cap. FERC denied the request, but initiated an investigation of those allegations under section 206 of the FPA (16 U.S.C. § 824e) on August 23, 2000. BPA, 422 F.3d at 912; San Diego Gas & Electric Co., 92 F.E.R.C. ¶ 61,172, at 61,603 (2000). FERC's investigation led to several actions, including its December 15, 2000

elimination of the requirement that the IOUs purchase all of their power requirements through the CPX, and culminating in an order dated June 19, 2001, that prospectively imposed a price mitigation plan upon ISO spot market sales, effective June 20, 2001. San Diego Gas & Electric Co., 95 F.E.R.C. ¶ 61,418, at 62,545-48 (2001).

In a decision dated July 25, 2001, FERC ordered refunds pursuant to section 206(b) of the FPA by all sellers of electricity in the CPX and ISO markets for sales occurring between October 2, 2000, and June 19, 2001. The amount of the refunds was generally based upon the June 19 price mitigation plan, with some modifications. San Diego Gas & Electric Co., 96 F.E.R.C. ¶ 61,120, at 61,502, 61,516 (2001). This order included the unprecedented requirement that government owned sellers, and not just investor owned utilities (which are confusingly referred to as "public utilities") pay refunds. FERC ordered the ISO and the CPX to commence calculating the refund amounts due from each seller in the exchanges and to rerun their settlement/billing process in accordance with the order. San Diego Gas & Electric Co., 96 F.E.R.C. at 61,516-17, 61,520; PG&E Complaint ¶ 56, SDG&E Complaint ¶ 50. That process has continued since then, with no final billing statements presented for payment.

Various governmental entities that sold electricity into the CPX and ISO markets, including the Bonneville Power Administration ("BPA"), challenged FERC's inclusion of governmental entities within the scope of its July 25, 2001 refund order. In a decision dated September 6, 2005, the United States Court of Appeals for the Ninth Circuit ruled that FERC lacked the authority to order refunds by governmental entities. BPA, 422 F.3d at 914. FERC's refund authority was limited to public utilities, which again means investor-owned utilities, not government-owned entities. Observing that FERC's refund authority stems from

subchapter II of the FPA, the court, among other things, held that section 201(f) of the FPA provides a sweeping exemption from the terms of subchapter II to "the United States or any state, including any political subdivision." Accordingly, this exemption applies to "'governmental entities,'" BPA, 422 F.3d at 915. The court of appeals remanded the matter to FERC for actions consistent with its decision. Id. at 926.

After petitions for rehearing were denied in BPA v. FERC on March 7, 2007, the IOUs filed a motion with the Ninth Circuit Court of Appeals on March 13, 2007, to stay the issuance of its mandate while one or more of them petitioned for a writ of certiorari from the United States Supreme Court. The motion explained that the IOUs intend to challenge the court of appeals' holding that FERC lacks authority to order public entities to issue refunds. Motion of the California Parties to Stay Issuance of the Mandate, BPA v. FERC, Nos. 02-70262, et al. (9th Cir. March 13, 2007). Although that motion to stay the mandate was denied on March 28, 2007, a subsequent filing by the IOUs before FERC reiterated their intent to file such a petition with the Supreme Court. California Parties Motion For Procedures Following Remand at 2 n. 3, San Diego Gas & Electric Co., Nos. EL00-95-000, EL00-98-000 (F.E.R.C. April 7, 2007).

The IOUs have now also brought these two essentially identical suits in this Court, attempting to recover here what the Ninth Circuit has denied them. Both suits claim that, notwithstanding the fact that FERC entirely lacks regulatory authority to order BPA and the Western Area Power Administration ("WAPA") (another governmental entity that sold power into the CPX and ISO) to make refunds to the IOUs, FERC effectively required the governmental entities to issue such refunds anyway by retroactively amending the CPX and ISO tariffs to impose the price mitigation plan upon them from October 2, 2000, onward.

Accordingly, plaintiffs claim that BPA and WAPA have been contractually required by the tariffs to issue the same refunds that were ordered by FERC and nullified by the Ninth Circuit. They claim that BPA and WAPA have either breached that refund obligation or anticipatorily breached it. PG&E Complaint ¶¶ 55-56, 72-79; SDG&E Complaint ¶¶ 49-50; 64-71. The IOUs also seek declaratory rulings that BPA and WAPA owe the amounts sought; PG&E Complaint ¶¶ 80-81, 86-92; SDG&E Complaint ¶¶ 72-73, 78-84; and additional refunds once FERC issues more rulings that plaintiffs hope are favorable to them. PG&E Complaint ¶¶ 82-85, 90-92; SDG&E Complaint ¶¶ 74-77, 82-84.[1]

## ARGUMENT

### I. The Two Cases Should Be Consolidated

This Court's power to consolidate cases is found in RCFC 42(a), which provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

RCFC 42(a).

This Court has "broad discretion" to order the consolidation of cases. See Lowry Econ. Redev. Auth. v. United States, 71 Fed. Cl. 549, 553 (2006); Cienega Gardens v. United States, 62 Fed. Cl. 28, 32 (2004). The Court engages in a two-step inquiry to determine whether consolidation is appropriate. First, the Court determines whether a "common question of law or fact" exists in both cases. Id. Second, the Court determines whether considerations

[1] Additionally, the State of California has brought a related action that also involves BPA's and WAPA's electricity sales during the California power crises. Cal. v. United States, Fed. Cl. No. 07-184C (J. Smith).

regarding "the interest of judicial economy" outweigh "the potential for delay, confusion and prejudice that may result from consolidation." Id.

The questions of law and fact raised by the plaintiffs' complaints are not merely "common" — they are indistinguishable. The text of the two complaints is virtually the same, though, unlike PG&E and SCE, SDG&E characterizes the source of the flaw in the California electricity markets as "dysfunction" rather than "manipulation." Compare PG&E Complaint ¶¶ 61-66 with SDG&E Complaint ¶¶ 55-58. As the balance of the plaintiffs' complaints makes clear, this factual distinction is immaterial to the plaintiffs' dispute with the United States — plaintiffs' contractual claims do not hinge upon any facts regarding the problems underlying the California electricity market; their claims rest instead upon the tariffs and FERC's orders. Accordingly, these cases soundly satisfy the first prong of the consolidation test. See Cienega Gardens, 62 Fed. Cl. at 32.

Interests of judicial economy in this matter also outweigh the potential for any delay, confusion, or prejudice that might result from consolidation. Plaintiffs have litigated together before on a similar matter. In addition to suing the United States, plaintiffs have pursued suit against a number of smaller governmental entities — which, like the United States, were expressly excluded from the ambit of FERC's jurisdiction by the Ninth Circuit's BPA decision, thus restricting plaintiffs to their alleged contractual remedy — in the United States District Court for the Eastern District of California. See Pac. Gas and Elec. Co. v. Ariz. Elec. Power Coop., Inc., 2:06-CV-0559-MCE-KJM (E.D. Cal. March 16, 2007) and San Diego Gas & Elec. Co., v. Ariz. Elec. Power Coop., Inc., 2:06-CV-0592-MCE-KJM (E.D. Cal. March 16, 2007). Plaintiffs filed separate but similar complaints, and the court ordered the cases "related" pursuant

to local rules, though not "consolidated." See Related Case Order, March 27, 2006, 2:06-CV-0592-MCE-KJM (E.D. Cal.). Plaintiffs then combined their efforts, filing a joint response to defendants' motions to dismiss. See California Parties Consolidated Memorandum of Points and Authorities in Opposition to Defendants' Preliminary Motions, filed August 4, 2006. Upon dismissal of that litigation for lack of jurisdiction, plaintiffs jointly refiled the suit against those entities in the Superior Court of California. Pac. Gas and Elec. Co. v. Ariz. Elec. Power Coop., Inc., Cal. Sup. Ct. No. BC 369141. Plaintiffs have already demonstrated an ability to coordinate their efforts, and no delay, confusion, or prejudice is likely to result from their doing so in this matter. Moreover, the Court's time will be far better spent deciding only once the common issues of law and fact presented by these cases. Accordingly, the Court should grant our unopposed motion to consolidate these cases.

## II. Plaintiffs Should Provide A More Definite Statement

RCFC 8(a) states that a pleading shall contain: (1) a short and plain statement of the grounds upon which the Court's jurisdiction depends; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for judgment for the relief the pleader seeks. This rule requires a complaint "that will give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957); accord Stephenson v. United States, 37 Fed. Cl. 396, 403 (1997). Although the notice pleading required by the rules of this Court is liberal in its demands, it "requires pleadings to state, at the very least, the 'operative facts' upon which a claim is based." Stephenson, 37 Fed. Cl. at 403.

Rule 12(e) empowers this Court to order a party to file a more definite statement if the original pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a response." RCFC 12(e). The rule requires the movant to "point out the defects complained of and the details desired." Id. Allowing a confusing complaint to signify a proper pleading "would not serve 'the just, speedy, and inexpensive determination of ... [the] action.'" Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting RCFC 1(a)(2)). In such a situation, both the Supreme Court and this Court have expressly sanctioned ordering more definite statements pursuant to Rule 12(e) to ensure that a defendant has fair notice. Conley, 355 U.S. at 47-48 n. 9; accord Scogin, 33 Fed. Cl. at 293. Additionally, RCFC 9(h)(3) requires a plaintiff to plead the substance of those portions of the contract or treaty upon which the plaintiff relies, or to annex to the complaint a copy of the contract or treaty, indicating the provisions thereof on which the plaintiff relies.

### A. Plaintiffs Should Be Required To Identify The Provisions Of The ISO And CPX Tariffs That Allegedly Dictate That The Refund They Claim Is Owed Is Currently Overdue

The complaints here contain lengthy allegations relating to activities of the CPX and the ISO, including discussion of FERC's July 25, 2001 refund order and the plaintiffs' theory that FERC essentially retroactively amended the exchanges' tariffs to obligate BPA and WAPA to pay that refund. However, a claim that a party breached a contract by failing to pay some allegedly required amount not only must demonstrate the existence of the obligation, but that payment has not been made within the contractually contemplated time for doing so. If the time permitted by the contract for payment to be made has not yet occurred, then there has not been a breach of the contract. Our review of the complaints fails to reveal what provision of the tariffs

plaintiffs rely upon for the conclusion that the amount allegedly owed is late. We should not have to guess upon what provision they rely for purposes of carrying out our obligation to respond to the complaint, especially given that each tariff is hundreds of pages in length.

This issue is especially unclear here because, as we have addressed above, and more significantly as the plaintiffs have admitted in their complaints, the tariffs provide a billing system to generate payments due. Accordingly, the CPX and ISO calculate the amounts due by each entity and present them with a billing statement and invoices for payment. CPUC, 456 F.3d at 1037; PG&E Complaint ¶ 26; SDG&E Complaint ¶ 23. Plaintiffs do not allege that final billing statements and invoices for the alleged refunds owed have been presented to BPA and WAPA, and indeed they have not been.[2] Nevertheless, plaintiffs' breach claims are premised upon payment already being overdue under the tariffs' terms.

Given plaintiffs' own admissions about the tariffs' payment provisions, combined with their failure to allege that billing statements and invoices have been issued for the alleged refunds, there is an apparent inconsistency or ambiguity in their allegation that the Government is currently in breach of contract. Plaintiffs should be required to clarify that ambiguity by identifying the provisions of the tariffs they rely upon to support their allegation that the alleged

[2] Recently, the IOUs filed a motion with FERC that, among other things, requested FERC to continue to require the ISO and CPX to calculate the refunds that governmental entities would owe under FERC's July 25 order, arguing that the calculation is relevant to their contract claims against governmental entities such as BPA and WAPA. California Parties Motion For Procedures Following Remand, San Diego Gas & Electric Co., Nos. EL00-95-000, EL00-98-000 (F.E.R.C. April 7, 2007). Regardless of what relevance such a calculation may have to plaintiffs' claims in this case, in light of the Ninth Circuit's holding in BPA v. FERC, BPA and WAPA are opposing any suggestion that FERC possesses jurisdiction to issue the orders sought by the IOUs.

refund payment is late, and therefore the Government is in breach of contract, prior to our having to respond to the complaints.

### B. Plaintiffs Should Be Required To Identify The Alleged Statements They Claim Constitute An Anticipatory Breach

Possibly recognizing the apparent weaknesses of their breach claim, plaintiffs alternatively claim that, in the event it is determined that the alleged refunds owed to them under the tariffs are not yet late, BPA and WAPA have nevertheless anticipatorily breached their alleged obligation to pay refunds under the terms of the tariffs. PG&E Complaint ¶¶ 77-79; SDG&E Complaint ¶¶ 69-71. An anticipatory breach occurs "when one party to [a] . . . contract absolutely refuses to perform his contract, and before the time arrives for performance distinctly and unqualifiedly communicates that refusal to the other party . . . ." United States v. Dekonty, 922 F.2d 826, 828 (Fed. Cir. 1991); see also Cal. Civil Code § 1440 (Anticipatory breach occurs when one party to an obligation notifies another before the time to perform arrives that he will not perform).[3] Plaintiffs only partly identify BPA's and WAPA's alleged communications that they will not pay any refund amounts billed to them when they refer vaguely to statements made by the agencies "in the FERC proceedings, in appeals from FERC orders, and by their denials of [the plaintiffs'] duly-presented claims." PG&E Complaint ¶ 78; SDG&E Complaint ¶ 70.

Plaintiffs' cryptic references to statements made "in the FERC proceedings" and "in appeals from FERC orders" do not provide us with fair notice regarding the operative facts underpinning this claim. FERC has conducted proceedings in this matter for approximately

[3] We cite the California code here because we expect plaintiffs to contend that California law governs their claim instead of the federal common law of contracts. It is not necessary to address the accuracy of that position now given that the basic concept of anticipatory breach for purposes of this motion is the same in both jurisdictions.

seven years, and in that time has issued numerous orders. See, e.g., San Diego Gas & Elec. Co., et al., 93 FERC ¶ 61121 (Nov. 1, 2000); see also BPA v. FERC, 422 F.3d at 913 (noting FERC orders). BPA and WAPA have filed hundreds of pages of materials in those proceedings. In addition, the agencies have made numerous filings at the appellate stage in both BPA v. FERC and CPUC v. FERC.

We should not have to sift through hundreds of pages of materials looking for statements that plaintiffs might perceive to be unqualified communications that the agencies will not perform. Without more detail, we cannot meaningfully respond to the vague allegations that we have engaged in the specific act of repudiation at some point in these proceedings. Plaintiffs, however, must already know precisely what statements to which they are referring or they could not have made these assertions under RCFC 11. Clearly it is reasonable to expect them to identify both to us and the Court the statements they claim constitute an anticipatory breach before we should be required to respond under RCFC 11 as to whether we are liable under those statements. Accordingly, the Court should order the plaintiffs to identify with greater precision the statements or acts upon which they rely prior to our having to respond to the complaints.

## III. The Cases Should Be Stayed Until BPA v. FERC Is Final

Except for ordering consolidation and more definite statements of facts, the Court should otherwise stay these cases until BPA v. FERC becomes final. The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," and is within the discretion of the Court. Landis v. N. Am. Co., 299 U.S. 248, 255 (1936). This Court has noted

that if there is duplicative litigation in federal courts, the case that has made the most progress should continue. N.Y. Power Auth. v. United States, 42 Fed. Cl. 795, 799-800 (1999).

As described above, in these cases plaintiffs are simply attempting to recover through a contract claim the very same amounts that FERC attempted to require BPA and WAPA to pay under its regulatory authority, but that was denied in BPA v. FERC. However, plaintiffs have announced that they intend to seek further review of BPA v. FERC in the United States Supreme Court. Motion of the California Parties to Stay Issuance of the Mandate, BPA v. FERC, Nos. 02-70262, et al. (9th Cir. March 13, 2007); California Parties Motion For Procedures Following Remand at 2 n. 3, San Diego Gas & Electric Co., Nos. EL00-95-000, EL00-98-000 (F.E.R.C. April 7, 2007). In particular, they intend to challenge the Ninth Circuit's exclusion of BPA and WAPA from FERC's jurisdiction to order the refunds they seek here through contractual claims. If plaintiffs prevail in that effort, they could recover through FERC's regulatory orders the same refunds they seek here, rendering these suits duplicative and moot.

Neither the Government, nor this Court, should be put to the considerable work of addressing these complex, multi-count claims while plaintiffs continue to pursue the alleged FERC remedy through proceedings in the Supreme Court.[4] If plaintiffs' petition for a writ of certiorari is granted in BPA v. FERC, its final outcome could significantly alter or affect the nature of these proceedings, including what issues, if any, need to be litigated here. Clearly, interests of judicial economy and efficiency, as well as the limited resources of the parties,

[4] Indeed, plaintiffs have requested complex case designation for a similar lawsuit filed by them against local municipalities in California state court. Among other things, they note the numerous legal issues expected to be presented. Plaintiffs' Request for Complex Case Designation and Referral to Complex Litigation Panel. Pac. Gas and Elec. Co. v. Ariz. Elec. Power Coop., Inc., No. BC 369141 (Cal. Sup. Ct. Los Angeles, April 18, 2007).

dictate awaiting its outcome under these circumstances. N.Y. Power Auth., 42 Fed. Cl. at 804 (noting that the conservation of judicial resources and promotion of judicial economy favor a stay); cf. Far West Fed. Bank S.B. v. Dir. Office of Thrift Supervision, 930 F.2d 883, 891 (Fed. Cir. 1991) ("In today's climate of burgeoning litigation and strained resources, duplication of litigation serves no congressional purpose; it squanders judicial, governmental, and private resources"). If plaintiffs' petition for a writ of certiorari is denied, only a relatively limited delay in these proceedings will have occurred. Given that the BPA v. FERC proceedings could directly affect the nature, necessity, and validity of the claims being advanced here, these cases should be stayed until BPA v. FERC becomes final.[5] See Penn. R.R. Co. v. United States, 363 U.S. 202 (1960) (holding that the Court should stay a claim to await the outcome of proceedings in another forum that would determine rights and obligations having significant legal consequences for the matter in this Court), cited with approval in Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554-55 (Fed. Cir. 1994) (recognizing the appropriateness of a stay in this Court to await the outcome of regulatory review in another forum which could "determine the necessity for prosecuting" the claim here).

We propose that, upon exhaustion of proceedings in the Supreme Court in BPA v. FERC, the parties be required to file individual status reports within 30 days addressing the outcome of those proceedings, proposing further proceedings in these cases, and proposing an appropriate schedule to be adopted by the Court. The stay should remain in effect pending the Court's establishment of a post-stay schedule.

[5] In making this request we are not intending to waive or abandon any potential defenses that may apply, whether they be upon the merits or jurisdictional.

**IV. Alternative Motion For Enlargement**

In the event the Court denies both our motion for a stay and our request for a more definite statement, we respectfully request an enlargement of time of 60 days, from the date of that denial, within which the Government may respond to the complaints in these cases. In the event the Court denies our motion for a stay but grants our request for a more definite statement, we respectfully request an enlargement of time of 60 days, from the date plaintiffs provide their more definite statement, within which the Government may respond to the complaints in these cases.[6] As previously noted, plaintiffs have informed us they do not oppose this alternative request for an enlargement.

As both the complaints and the Statement of the Case above indicate, these are very complex cases involving a sophisticated regulatory regime. The complaints present numerous claims about multiple sets of transactions engaged in by two different agencies in two separate markets governed by two different tariffs. Each tariff is hundreds of pages in length. Moreover, the underlying facts involve the very tangled and voluminous events of the California energy crises of 2000-2001. Additionally, we are also addressing the related suit filed by the state of California that also arises from those events. Cal. v. United States, Fed. Cl. No. 07-184C (J. Smith). The process of developing the Government's responses to these suits has required us to perform in-depth research about a wide range of factual and legal matters and to coordinate with multiple agency counsel. Although progress has been made, in the event the Court denies our

[6] In the event the Court grants our motion for a stay but defers our request for a more definite statement until after the stay terminates, we will address when we should be required to respond to the complaint in our proposed status report to be filed upon completion of proceedings in the Supreme Court.

request for a stay we seek an enlargement of time, from the date of that denial, within which we can complete our research and consultations, draft appropriate responses to the complaints, obtain their review by the various interested entities, and file them with the Court.

## CONCLUSION

For the foregoing reasons, we request that the Court grant our motion to consolidate, our motion for a more definite statement, and our motion to stay, or, in the alternative to our motion to stay, our motion to enlarge.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0475
Fax: (202) 305-7644

OF COUNSEL:
Sean B. McNamara
Trial Attorney
Department of Justice

Peter Burger
Attorney
Bonneville Power Administration

John D. Bremer
Attorney
Western Area Power Administration

May 11, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 11th day of May, 2007, a copy of the foregoing "DEFENDANT'S MOTION TO CONSOLIDATE, FOR A MORE DEFINITE STATEMENT, AND TO STAY PROCEEDINGS; ALTERNATIVELY, DEFENDANT'S MOTION FOR ENLARGEMENT OF TIME" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Mark A. Melnick