IN THE

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY, SOUTHERN CALIFORNIA EDISON COMPANY, AND CALIFORNIA ELECTRICITY OVERSIGHT BOARD,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant.<br><br>SAN DIEGO GAS & ELECTRIC COMPANY, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 1:07-cv-00157-LAS<br><br>No. 1:07-cv-00167-LAS<br><br>Consolidated<br><br>**HON. LOREN A. SMITH**<br><br>**APPENDIX TO PLAINTIFFS' MEMORANDUM OPPOSING DEFENDANT'S MOTION FOR STAY AND MORE DEFINITE STATEMENT** |

## TABLE OF CONTENTS


Page

Declaration of Russell P. Cohen in Support of Plaintiffs' Memorandum Opposing Defendant's Motion for Stay and More Definite Statement....A3

Exhibit 1 Excerpts from Bonneville Power Administration's Annual Report for 2006 ....A6

Exhibit 2 Opposition of Governmental Entities to Motion of the California Parties to Stay Issuance of the Mandate (Mar. 19, 2007), filed in the United States Court of Appeals for the Ninth Circuit in *Bonneville Power Administration v. FERC*, Docket Nos. 02-70262, *et al*....A10

Exhibit 3 Motion by and Answer of the Bonneville Power Administration (BPA) and the Western Area Power Administration (Western) to the California Parties' Motion Related to Procedures Following Remand in *Bonneville Power Administration, et al. v. FERC* (Apr. 17, 2007), filed at the Federal Energy Regulatory Commission in *San Diego Gas & Electric Co.*, FERC Docket Nos. EL00-95-000, *et al.*, and EL00-98-000, *et al.* ....A19

Exhibit 4 Answer of the Bonneville Power Administration (BPA) and Western Area Power Administration (Western) to the California Parties' Answer to Motions of the Governmental Entities (May 14, 2007), filed at the Federal Energy Regulatory Commission in *San Diego Gas & Electric Co.*, Docket Nos. EL00-95-000, *et al.*, and EL00-98-000, *et al*....A40

Exhibit 5 Response to Motion of the California Parties for Leave to Answer the Answers of the Governmental Entities to the Earlier Filed Motion of California Parties (May 14, 2007), filed at the Federal Energy Regulatory Commission in *San Diego Gas & Electric Co.*, Docket Nos. EL00-95-000, *et al.*, and EL00-98-000, *et al* ....A47

IN THE

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY, SOUTHERN CALIFORNIA EDISON COMPANY, AND CALIFORNIA ELECTRICITY OVERSIGHT BOARD,<br>Plaintiffs,<br>v.<br>THE UNITED STATES,<br>Defendant.<br><br>SAN DIEGO GAS & ELECTRIC COMPANY, a California corporation,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 1:07-cv-00157-LAS<br>No. 1:07-cv-00167-LAS<br>Consolidated<br><br>**HON. LOREN A. SMITH**<br><br>**DECLARATION OF RUSSELL P. COHEN IN SUPPORT OF PLAINTIFFS' MEMORANDUM OPPOSING DEFENDANT'S MOTION FOR STAY AND MORE DEFINITE STATEMENT** |

I, Russell P. Cohen, hereby declare:

1. I am an attorney with the law firm of Heller Ehrman LLP, counsel to Pacific Gas and Electric Company ("PG&E") in this action. I am a member of the State Bar of California and am admitted to practice before this Court. Unless otherwise indicated, I have personal knowledge of the matters set forth herein, and, if called upon to do so, could testify competently to their truth.

2. Exhibit 1 to my declaration is a true and correct copy of excerpts from Bonneville Power Administration's Annual Report for 2006, obtained from Bonneville Power Administration's website at http://www.bpa.gov/corporate/Finance/a_report/.

3. Exhibit 2 to my declaration is a true and correct copy of the Opposition of

Governmental Entities to Motion of the California Parties to Stay Issuance of the Mandate (Mar. 19, 2007), filed in the United States Court of Appeals for the Ninth Circuit in *Bonneville Power Administration v. FERC*, Docket Nos. 02-70262, *et al.*

4. Exhibit 3 to my declaration is a true and correct copy of the Motion by and Answer of the Bonneville Power Administration (BPA) and the Western Area Power Administration (Western) to the California Parties' Motion Related to Procedures Following Remand in *Bonneville Power Administration, et al. v. FERC* (Apr. 17, 2007), filed at the Federal Energy Regulatory Commission in *San Diego Gas & Electric Co.*, FERC Docket Nos. EL00-95-000, *et al.*, and EL00-98-000, *et al*.

5. Exhibit 4 to my declaration is a true and correct copy of the Answer of the Bonneville Power Administration (BPA) and Western Area Power Administration (Western) to the California Parties' Answer to Motions of the Governmental Entities (May 14, 2007), filed at the Federal Energy Regulatory Commission in *San Diego Gas & Electric Co.*, Docket Nos. EL00-95-000, *et al.*, and EL00-98-000, *et al.*

6. Exhibit 5 to my declaration is a true and correct copy of the Response to Motion of the California Parties for Leave to Answer the Answers of the Governmental Entities to the Earlier Filed Motion of California Parties (May 14, 2007), filed at the Federal Energy Regulatory Commission in *San Diego Gas & Electric Co.*, Docket Nos. EL00-95-000, *et al.*, and EL00-98-000, *et al.*

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed this 13th day of June, 2007, at San Francisco, California.

s/Russell P. Cohen
Russell P. Cohen

**EXHIBIT 1**
**TO**
**DECLARATION OF RUSSELL P. COHEN IN SUPPORT OF PLAINTIFFS' MEMORANDUM OPPOSING DEFENDANT'S MOTION FOR STAY AND MORE DEFINITE STATEMENT**
***PG&E, ET AL. V. UNITED STATES*, CASE NO. 1:07-CV-00157-LAS**
***SDG&E V. UNITED STATES*, CASE NO. 1:07-CV-00167-LAS**

BONNEVILLE POWER ADMINISTRATION

# 2006 ANNUAL REPORT

## A PIVOTAL YEAR



# TABLE OF CONTENTS

Letter to the President . . . . . . . . . . . . . . . . . . . . 1

Financial Results . . . . . . . . . . . . . . . . . . . . . . . 4

A Pivotal Year . . . . . . . . . . . . . . . . . . . . . . . 5

Performance Measures . . . . . . . . . . . . . . . . . . . 27

Financial Section . . . . . . . . . . . . . . . . . . . . . . 31

BPA Executives . . . . . . . . . . . . . . . . . . . . . . . 84

BPA Offices . . . . . . . . . . . . . . . . . . . . . . . . 85

BPA Profile . . . . . . . . . . . . . . . . . . . . . . . . 86



exposure limits are appropriate given BPA's risk tolerance and objectives.

We are applying risk management discipline throughout the agency. For example, thorough risk assessment resulted in a proposal to rebuild BPA's 55-year-old Libby-Troy line in Montana at its existing 115-kilovolts, rather than increasing it to 230-kV or going to double-circuit. This proposal would save $13 million while maintaining long-term reliability.

## California issues resolved

BPA and Southern California Edison have agreed to settle two lawsuits filed by SCE against BPA in the U.S. Court of Federal Claims regarding a 1988 power sales and exchange contract. The two claims total $208 million. BPA will pay SCE $28.5 million plus interest, but not until the California Public Utility Commission approves SCE's participation in the agreement and there is resolution of the pending California Refund Process with respect to the net amounts owed to or by BPA. The settlement resolves longstanding and potentially expensive litigation at a modest cost. The cost may be offset by payments BPA believes it is owed by a variety of California parties in the ongoing California Refund Process, which stems from the West Coast power crisis.

**EXHIBIT 2**
**TO**
**DECLARATION OF RUSSELL P. COHEN IN SUPPORT OF PLAINTIFFS' MEMORANDUM OPPOSING DEFENDANT'S MOTION FOR STAY AND MORE DEFINITE STATEMENT**
***PG&E, ET AL. V. UNITED STATES*, CASE NO. 1:07-CV-00157-LAS**
***SDG&E V. UNITED STATES*, CASE NO. 1:07-CV-00167-LAS**

Nos. 02-70262, *et al.*
Date of Decision: September 26, 2005
Panel: Judges Sidney R. Thomas, M. Margaret McKeown, Richard P. Clifton

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| Bonneville Power Administration; *et al.*,<br><br>Petitioners,<br><br>v.<br><br>Federal Energy Regulatory Commission,<br><br>Respondent. | Docket Nos. 02-70262, *et al.* |

**OPPOSITION OF GOVERNMENTAL ENTITIES**
**TO MOTION OF THE CALIFORNIA PARTIES**
**TO STAY ISSUANCE OF THE MANDATE**

Pursuant to Federal Rules of Appellate Procedure (FRAP) 27 and Circuit Rule 27-1, the Governmental Entities[1] hereby respond in opposition to the March 13, 2007 Motion of the California Parties to Stay Issuance of the Mandate of *Bonneville Power Administration v. FERC*, 422 F.3d 908 (9th Cir. 2005), *rehearing denied* (March 7, 2007) ("*Bonneville*").

---

[1] The Governmental Entities consist of Sacramento Municipal Utility District, Bonneville Power Administration, State Water Contractors/Metropolitan Water District, Modesto Irrigation District, Northern California Power Agency, Turlock Irrigation District, the California Cities of Santa Clara, Pasadena, Burbank, Glendale, Vernon, and Colton, Grant County, and Arizona Electric Power Cooperative, Inc. (which is not a Governmental Entity but was still found to be not subject to FERC's refund jurisdiction). The Governmental Entities were all either petitioners or intervenors in the *Bonneville* case.

Under FRAP Rule 41, a motion for stay of mandate pending the filing of a petition for certiorari "must show that the certiorari petition would present a substantial question and that there is good cause for a stay." As this Court observed in *Coalition for Economic Equity v. Wilson*, 122 F.3d 718 (9th Cir. 1997), its decision to grant or deny the stay will be informed by whether (1) rehearing en banc was denied, (2) there is any "inter-Circuit conflict on the law governing th[e] case," and (3) the movant has been able "to identify any other traditional criteria employed by the Supreme Court in granting certiorari." *Id.* at 719.

The California Parties have not met, and cannot begin to meet, any of these elements.

First, rehearing and rehearing en banc of the Court's unanimous *Bonnneville* opinion was denied by the Court's March 7, 2007 order, and no Judge on the Circuit requested a vote on whether to rehear the matter en banc. The first factor thus completely disfavors stay of the mandate, which is why the California Parties simply ignored it.

Second, the California Parties' claim that *Bonneville* presents an inter-Circuit conflict with *United Distribution Companies v. FERC*, 88 F.3d 1105 (D.C. Cir. 1996), has already been rejected twice, first in this Court's opinion and again in its March 7, 2007 Order denying rehearing. *See Bonneville*, 422 F.3d at 922; March

7, 2007 Order at 2. Similarly erroneous is the California Parties' contention that the Court's decision conflicts with *Pacific Gas & Electric Company v. FERC*, 306 F.3d 1112 (D.C. 2002) ("*PG&E*"). The March 7, 2007 Order expressly rejected that contention, noting that the D.C. Circuit ruled in *PG&E* that "'publicly-owned utilities are not subject to FERC's §§ 205 and 206 jurisdiction.'" March 2, 2007 Order at 2, quoting *PG&E*, 306 F.3d at 1114. The California Parties simply ignore these rulings, which make plain that their claims of an inter-Circuit conflict are meritless.

The California Parties attempt to depict the issue as being of great future importance with respect to centralized power markets generally. But there is no issue. *Bonneville* held that "Congress unambiguously removed government-owned utilities from FERC's refund jurisdiction." 422 F.3d at 921. Furthermore, Congress definitively addressed the liability of § 201(f) entities for refunds in centralized markets for the future in the Energy Policy Act of 2005, Pub. L. No. 109-58, § 1286, 119 Stat. 594, 981 (2005), as *Bonneville* noted. *Id.* at n.10. The statutory change negates any possible broader significance of any issue.

Stated differently, it is very unlikely that four Supreme Court Justices will vote to grant certiorari and five Justices will vote to reverse where (a) no Judge of the Ninth Circuit has disagreed with the *Bonneville* opinion, (b) there is no conflict among the Circuits, and (c) Congressional action has mooted the future

significance of the issue (if there were any).[2] Significantly, FERC, the federal agency whose decision is under review, did not seek rehearing and has not sought a stay of mandate from this Court. In short, grant of certiorari and reversal of *Bonneville* are highly unlikely.

Finally, the California Parties claim that issuance of the mandate will have an adverse effect on the immediate dispute by permitting "a torrent of activity and litigation" over how to comply with *Bonneville* and diverting the parties from settlement efforts. These contentions are completely misplaced.

First, remand proceedings at FERC are unavoidable. Since the Supreme Court, for reasons stated above, is exceedingly unlikely to grant certiorari and reverse *Bonneville*, the California Parties' contention amounts to a request to delay the inevitable. The far more appropriate -- and, in fact, the only responsible --

---

[2] The Supreme Court employs a similar test. *See, e.g.*, *White v. Florida*, 458 U.S. 1301, 1302 (1982) (Powell, J., in chambers), stating that:

> The standards for granting a stay of mandate pending disposition of a petition for certiorari are well established:
>
> "(T)here must be a reasonable probability that four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari or the notation of probable jurisdiction; there must be a significant possibility of reversal of the lower court's decision; and there must be a likelihood that irreparable harm will result if that decision is not stayed." *Times-Picayune Publishing Corp. v. Schulingkamp*, 419 U.S. 1301, 1305 (1974) (Powell, J., in chambers).
>
> *See Karcher v. Daggett*, 455 U.S. 1303 (1982) (Brennan, J., in chambers); *Whalen v. Roe*, 423 U.S. 1313 (1975) (Marshall, J., in chambers).

view is that if changes are going to be required, they should start sooner rather than later so that there will be less, and not more, waste of resources and delay.

Second, it is unfortunate that there has been so much delay to date,[3] but it is the California Parties -- not sellers, and certainly not the Governmental Entities -- that have repeatedly sought to delay these proceedings.[4] Notwithstanding their professed desire to reach closure, the California Parties have consistently sought to prolong the proceedings, undoubtedly because they perceive an advantage in the status quo and delay. Certainly the delay in the Court's mandate has impaired FERC's ability to conform to the decision in its actions. "[B]ecause the Court has not issued a mandate enabling the Commission to act on remand, the Commission cannot at this time revisit its final orders concerning the refund methodology." *San Diego Gas & Elec. v. Sellers of Energy and Ancillary Serv.*, 115 FERC ¶61,171 at P60 (2006). Issuance of the mandate, and not a stay, will thus expedite resolution of the protracted dispute.

Denial of a stay would not prejudice the California Parties by loss of posted collateral. All of the Governmental Entities have assets and income streams, including the accounts receivable on millions of dollars owed to them by the ISO and the PX on sales for which the Governmental Entities were never paid. These

---

[3] The last day of the refund period was June 20, 2001, nearly six years ago.
[4] It is for this reason that the Governmental Entities opposed the California Parties' motion last fall to extend further the settlement "timeout" in *Bonneville*.

assets could be used to pay any refunds that might be reinstated in the exceedingly unlikely event certiorari were granted and this Court's decision reversed. In contrast, further delay prejudices the Governmental Entities, as they have been deprived of the use of that collateral, and in some instances have been required to continue to pay fees to maintain letters of credit, even though the Governmental Entities delivered the power to California and have been waiting to be paid for that power for over five years. There is no reason to continue to inflict those costs on these Governmental Entities and their citizens and constituents.

The California Parties' final assertion is that issuance of the mandate will divert effort from settlement negotiations. The assertion defies credibility. In the six-plus years that the refund proceeding has been pending, the California Parties have reached settlement with exactly one Governmental Entity for a minor amount. There is no reason to think that delay of the mandate will promote settlement in any way, as this Court implicitly recognized in denying the California Parties' last request to extend the period for seeking rehearing. As the Governmental Entities explained in their opposition to that extension request, the general experience of the Governmental Entities is that progress in settlement discussions has been blocked by the sharp differences in views as to the litigation; issuance of the *Bonneville* mandate will serve to remove, or at least greatly narrow, one area of disagreement.

The suggestion that the parties cannot litigate and negotiate at the same time is also far-fetched. The fact is that settlement occurs in the face of litigation all the time; indeed, litigation is often the spur to settlement. The California Parties have legions of lawyers, and enough can be spared from preparing a certiorari petition to pursue any negotiations that may be fruitful.

CONCLUSION

For all the foregoing reasons, the motion for a stay should be denied.

Respectfully submitted,

Robert D. Rosenberg

Robert D. Rosenberg
Slover & Loftus
1224 Seventeenth Street, N.W.
Washington, DC 20036
Telephone: (202) 347-7170
Facsimile: (202) 347-3619
rdr@sloverandloftus.com
*Attorney for Arizona Electric Power Cooperative, Inc.,, Petitioner*

*And on behalf of Petitioners/Intervenors*
City of Santa Clara, State Water Contractors/Metropolitan Water District, Turlock Irrigation District, City of Pasadena, City of Burbank, City of Glendale, City of Los Angeles Department of Water and Power, Northern California Power Agency, City of Vernon, City of Colton, Grant County, and Modesto Irrigation District

Mark W. Pennak / RDR
ROBERT S. GREENSPAN
MARK W. PENNAK
(202) 514-1673
Attorneys
Appellate Staff
Civil Division, Room 7326 MAIN
Department of Justice
Washington, D.C. 20530-0001
*Attorneys for Petitioner/Intervenor*
*Bonneville Power Administration*

Dated: March 19, 2007

**EXHIBIT 3**
**TO**
**DECLARATION OF RUSSELL P. COHEN IN SUPPORT OF PLAINTIFFS' MEMORANDUM OPPOSING DEFENDANT'S MOTION FOR STAY AND MORE DEFINITE STATEMENT**
***PG&E, ET AL. V. UNITED STATES,* CASE NO. 1:07-CV-00157-LAS**
***SDG&E V. UNITED STATES,* CASE NO. 1:07-CV-00167-LAS**

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| San Diego Gas & Electric Company,<br>Complainant, | ) | |
| v. | ) | Docket No. EL00-95-000, *et al*. |
| Sellers of Energy and Ancillary Services Into Markets Operated by the California Independent System Operator and the California Power Exchange,<br>Respondents. | ) | |
| Investigation of Practices of the California Independent System Operator and the California Power Exchange | ) | Docket No. EL00-98-000, *et al*. |

**MOTION BY AND ANSWER OF THE BONNEVILLE POWER ADMINISTRATION (BPA) AND THE WESTERN AREA POWER ADMINISTRATON (WESTERN) TO THE CALIFORNIA PARTIES' MOTION RELATED TO PROCEDURES FOLLOWING REMAND IN *BONNEVILLE POWER ADMINISTRATION, et al. v. FERC***

Pursuant to Rules 212 and 213 of the Commission's Rules of Practice and Procedure, 18 C.F.R. §§ 385.212 and 213 (2003), BPA and Western respectfully submit this Motion and Answer to the California Parties[1] motion to establish procedures (Cal. Parties Motion) following the issuance of the mandate in the *BPA v. FERC*

[1] The motion describes the California Parties as: the People of the State of California, *ex rel*. Edmund G. Brown Jr., Attorney General; the California Electricity Oversight Board; the California Public Utilities Commission; Pacific Gas &Electric Company; San Diego Gas &Electric Company; and Southern California Edison Company.

decision.[2] The California Parties Motion was filed on April 2, 2007. For the reasons set forth below, the motion should be denied and as to the governmental entities specifically, the Commission must terminate these proceedings, vacate all orders in these proceedings as to the governmental entities, order all outstanding accounts receivable paid plus interest accrued, and return any collateral retained by the California Power Exchange (PX).[3]

**1. The California Parties motion asks FERC to ignore the legal directions of the *BPA* decision.**

The California Parties filed their motion in anticipation of the issuance of the mandate by the Ninth Circuit in the *BPA* appeal. The Ninth Circuit's docket now shows the Court's mandate issued on April 5, 2007, and is thus controlling on these remand proceedings. As to governmental entities, the California Parties' motion seeks to have FERC order the California Independent System Operator (ISO) continue to conduct refund calculations, continue to withhold the collateral and receivables, and require the immediate filing of cost offset data, despite the fact that all of these actions are inconsistent with the Court's decision. The Ninth Circuit ruled that FERC lacked jurisdiction in these proceedings to order governmental entities to pay refunds for transactions in the ISO and PX markets. Despite the unambiguous determination by the Court that FERC lacks jurisdiction, the California Parties nevertheless plead with the Commission to ignore the specific holding of the Court's decision and effectively continue this proceeding as if the Ninth Circuit never issued its opinion.

---

[2] *BPA v. FERC*, 422 F3d 908, 911 (9th Cir. 2005), *reh'g denied*. (*BPA*).
[3] While BPA and Western believe that there is no legal basis to retain the PX collateral, neither BPA or Western posted collateral with the PX as a condition of trading in those markets.

### 2. The Ninth Circuit's decision specifically exempts governmental entities from refund liability.

Contrary to the California Parties' contentions, the Ninth Circuit's opinion does not give FERC the discretion to continue to include governmental entities in this refund proceeding. Rather the Court's decision specifically sets aside the Commission's orders in this proceeding to the extent that they impact governmental entities. The decision states:

> We conclude that FERC does not have refund authority over wholesale electric energy sales made by governmental entities and non-public utilities.
>
> ****
>
> Consequently, we grant the petition and set aside FERC's orders related to the 2000 and 2001 spot market to the extent the orders subject the governmental entities and non-public utilities to FERC's refund authority under FPA subchapter II.

*BPA*, 422 F.3d at 911.

The Court's language makes it clear that FERC cannot continue the refund proceeding against the governmental entities and sets aside all prior FERC orders to the extent they subject governmental entities to FERC's refund authority. As a consequence, the Commission has no authority to continue the refund calculations for BPA, Western and the other governmental entities. Rather, the Court's opinion requires the Commission to terminate these proceedings as to the governmental entities. This naturally includes a cessation of the refund calculation by the ISO and PX, as well as a return of the collateral and receivables that have been frozen pending the resolution of these refund proceedings.

### 3. The Ninth Circuit rejected the characterization of this proceeding as one that reset the market clearing prices.

The California Parties' motion is replete with references to what they contend the *BPA* case does and does not stand for. One such contention is that the calculation of the refund liability for the governmental entities is somehow consistent with the *BPA* opinion. In particular, the California Parties characterize the Court's decision as one that does not hold that the Commission erred by requiring that the tariffed rates for all such transactions be revised using the mitigated market clearing price (MMCP) methodology. Cal. Parties Motion at 7. The California Parties support this argument by asserting that FERC reset the market clearing price for all ISO and PX transactions in the refund proceeding as a part of the Commission's mandate under the Federal Power Act (FPA). As a result, they conclude that FERC must continue to calculate refunds for all transactions, including those by the governmental entities. Cal. Parties Motion at 7. That argument is manifestly wrong. The Ninth Circuit expressly rejected the argument, now repeated by the California Parties, that these proceedings reset the clearing price for all spot market sales, holding instead that this was a refund proceeding against FERC jurisdictional sellers. As the Court noted:

> FERC attempts to deflect our attention away from the fact that it is ordering refunds from the Public Entities by arguing the FERC is simply using its §§ 205 and 206 authority to reset the prices of the single-price auction to a just and reasonable level … ISO similarly tries to cast FERC's orders as resetting the market clearing price under FERC-jurisdictional tariffs and characterizes the refunds by the Public Entities as just a "byproduct" of the resettlement of the ISO and CalPX markets.

> The rationale advanced by FERC and ISO is flawed. Perceiving FERC's orders as effecting a reset market clearing prices of all spot market sales under the ISO and CalPX tariffs, rather than as a order for refunds under § 206(b), ignores the explicit language of FERC's July 25, 2001 Order. … We cannot conclude that FERC said "refund" but meant resettlement of the market-clearing price.

*BPA*, 422 F.3d at 919.

Indeed, the Court of Appeals took pains to stress that FERC's jurisdiction over the market could not justify its attempt to exercise jurisdiction over governmental entities. As the Court explained, "FERC's attempt to order refunds based on its *general* jurisdiction over wholesale sales of electric energy contravenes the more *specific* provisions of the FPA that limit FERC's authority over governmental entities and limit FERC's authority to ensure just and reasonable rates and to order refunds to public utilities." *BPA*, 422 F.3d at 920 (emphasis in original, citations omitted). As the Court of Appeals ruled, this limitation on FERC's jurisdiction cannot be countered "by shifting the analysis away from the identity of the [parties it wishes to regulate], and focusing instead on the nature of their transactions and the markets and tariffs under which these transactions were conducted." *BPA*, 422 F.3d at 918. This same point has been made by the D.C. Circuit in *Columbia Gas*, where the court rejected FERC's attempt to enforce tariff language against a non-jurisdictional entity simply because it participated in a regulated market. *Columbia Gas Transmission Corp. v. FERC*, 404 F.3d 459, 462-63 (D.C. Cir. 2005).

These holdings bar the California Parties' argument that *BPA* did not address the issue. The Court explicitly finds that this is not a case of resetting the market and consistent with FERC's limited jurisdiction in this area, expressly directs the Commission

to discontinue the process of including BPA, Western and the other governmental entities in the calculation of refunds. The Court's opinion makes it clear that the "imposition of refunds is a regulatory action that falls outside of FERC's jurisdiction with respect to non-public utilities and governmental entities." *BPA*, 422 F.3d at 920. The California Parties' motion flies in the face of this ruling, by improperly urging the Commission to continue to exercise jurisdiction over governmental entities in these proceedings, precisely the jurisdiction that the Ninth Circuit has held the Commission does not have under the FPA. The only option available to the Commission under the Court's mandate is dismissal of the governmental entities from this proceeding and the release of any collateral and the accounts receivable owed to the governmental entities.

**4. FERC lacked authority to amend the tariff retroactively on sales by governmental entities**

The California Parties also err when they claim that the Commission "effectively amended the tariffs" when it revised the market clearing prices. Cal. Parties Motion at 13. First, there is no reason or occasion in these remand proceedings for the Commission to opine as to whether its proceedings "amended the tariffs" on sales by the governmental entities. The Commission simply has no jurisdiction as to such sales. All that is required is a simple dismissal of the governmental entities from these proceedings and a release of the governmental entities' collateral and account receivables. As discussed *infra*, the Commission should especially decline the request of the California Parties to issue dicta for the purpose of aiding the contract suits brought by the California Parties in state and federal courts, suits in which the Commission has no role or jurisdiction.

Second, in any event, the California Parties are wrong in arguing this Section 206 proceeding retroactively "amends" a tariff. Nothing in the Commission's orders purports to establish an "amended" tariff. Rather, the price cap established by the June 19, 2001 order was "prospective," as were all the changes to the market rules ordered prior to June 19, 2001, in the Commission's March 9, 2001 and April 6, 2001 orders. *See CPUC v. FERC*, 462 F.3d 1027, 1042-43 (9th Cir. 2006) (noting that the April 26 order established "a prospective mitigation and monitoring plan for wholesale prices"). The refund methodology was not established until the Commission issued its July 25, 2001 order. *Id*., 462 F.3d at 1043. That refund methodology likewise did not purport to "amend the tariff" for the refund period. Rather, it established a MMCP methodology for the calculation of refunds under which "refunds were to be determined by the difference between the market clearing price . . . and the MMCP calculated for each hour of the Refund Period, subject to certain adjustments." *Id*. Specifically, the Commission's refund methodology allowed for cost offsets for each individual seller. *See San Diego Gas & Elec. Co.*, 115 FERC ¶ 61,171, at P 33 (2006) (stating that "the purpose of the cost offsets is to ensure that the refund methodology does not result in a confiscatory rate for any individual seller" and that the "refund methodology is not complete without the offsets").

Indeed, FERC has no authority under the filed rate doctrine and the rule against retroactive ratemaking to retroactively change an existing tariff. The filed rate doctrine, of course, "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority." *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 577 (1981). *See also Western Resources, Inc. v. FERC,*

72 F.3d 147, 149 (D.C. Cir.1995)*; Columbia Gas Transmission Corp. v. FERC*, 831 F.2d 1135, 1139-42 (D.C. Cir.1987). "The related rule against retroactive ratemaking 'prohibits the Commission from adjusting current rates to make up for a utility's over- or under-collection in prior periods.'" *ConEd v. FERC*, 347 F.3d 964, 969 (D.C. Cir. 2003). (Citation omitted). Thus, "[t]he retroactive ratemaking doctrine is thus a logical outgrowth of the filed rate doctrine, prohibiting the Commission from doing indirectly what it cannot do directly." *Associated Gas Distribs. v. FERC,* 898 F.2d 809, 810 (D.C. Cir.1990) (per curiam) (Williams, J., concurring). *See also CPUC*, 462 F.3d at 1063 ("One of the fundamental tenets in FERC jurisprudence is the rule against retroactive ratemaking").

Stated differently, until a new tariff is established in a Section 206 proceeding (or otherwise), the existing tariff controls. As the Ninth Circuit explained in *CPUC*, the point of the Section 206 investigation is not to change the tariff retroactively but "to determine whether market rules required modification." *CPUC v. FERC*, 462 F.3d at 1047. Indeed, if a Section 206 determination were to constitute a retroactive "amendment" to the tariff as the California Parties suggest, it would mean that every sale made under the prior binding tariff during the Section 206 investigation period would be retroactively illegal, should the investigation result in a change. Such a holding would effectively convert a Section 206 proceeding into a Section 205 "violation of the tariff" proceeding, a patently absurd and illegal result. *See, e.g., Public Utility Dist. v. FERC*, 471 F.3d 1053, 1058 (9th Cir. 2006) (distinguishing the two types of proceedings); *ConEd v. FERC*, 347 F.3d 964, 967 (D.C. Cir. 2003) (same). As *BPA* makes plain, no such Section 205 violation, of course, could be found on sales by governmental entities,

which are no more subject to Section 205 than to Section 206.

The bar against retroactive amendments to tariffs is also embodied in the text of Section 206. Section 206 provides that if the Commission creates a new "charge, classification, rule, regulation, practice, or contract," then the change must be "thereafter observed." *See* 16 U.S.C. § 824e(a). Pursuant to this section, the Commission "can effect no change prior to the date of the order." *FPC v. Sierra Pacific Power Company*, 350 U.S. 348, 352 (1956). *See also Montana-Dakota Utilities Co. v. Northwestern Public Services Co.*, 341 U.S. 246, 254 (1951) (citing legislative history for the proposition that "Congress withheld from the Commission power to grant reparations."). This principle is reflected in the Commission's orders entered in this case -- nothing in the Commission's orders including the June 19, 2001 order establishing a price cap and a new pricing mechanism for the market, purports to change retroactively pre-existing tariffs. To the contrary, those rulings expressly apply prospectively only. For example, the Commission's June 19, 2001 order provides that "[t]he mitigation plan [established by the order] will become effective beginning on the day following the date this order is issued." 95 FERC ¶ 61,418, at 62,548. *See also* Answer of Indicated Public Entities at Paragraphs 33-39, which BPA and Western adopt and incorporate herein.

Refunds under Section 206 for sales by jurisdictional entities do not violate the filed rate doctrine and the rule against retroactive ratemaking because the Section 206 notice effectively alerts jurisdictional sellers that their sales under that tariff could be subject to a refund obligation to be later determined by the Commission after a properly instituted Section 206 investigation. *See CPUC*, 462 F.3d at 1046, 1063. *See also Transmission Access Policy Study Group v. FERC*, 225 F.3d 667, 709 (D.C. Cir. 2000).

Proper actual notice is crucial to this "notice exception" to the rule. As the D.C. Circuit very recently opined, "[n]otice to affected parties, we have explained, 'changes what would be purely retroactive ratemaking into a functionally prospective process by placing the relevant audience on notice at the outset that the rates being promulgated are provisional only and subject to later revision.'" *NSTAR Elec. & Gas Corp. v. FERC,* __F.3d. __, 2007 WL 701631 at 6 (D.C. Cir. 2007), quoting *Columbia Gas,* 895 F.2d at 797. See also *Exxon Co. v. FERC*, 182 F.3d 30, 49 (D.C. Cir.1999). As the Ninth Circuit stated in *CPUC*, "the remedies afforded pursuant to a third party § 206 complaint must have a sufficient nexus to the substantive allegations of the complaint so that market participants are placed on notice that they are at risk for sales made after the refund effective date." *CPUC*, 462 F.3d at 1063.

The Section 206 notice in this case did not put governmental entities on any such notice for two reasons. First, as *BPA* holds, Section 206 simply does not apply to sales by governmental entities. Thus, even assuming *arguendo* that Section 206 somehow accorded the Commission the power to "amend a tariff" retroactively, that Section 206 power simply could not authorize the Commission to amend tariffs retroactively as applied to sales by the non-jurisdictional governmental entities. Stated differently, since FERC has no Section 206 legal authority over sales by governmental entities, it likewise has no authority to alter the filed rate doctrine and the rule against retroactive ratemaking as to sales by those governmental entities. The rates in effect at the time of sales by the governmental entities are thus controlling as a matter of law and cannot be retroactively changed by any invocation of Section 206.

Second, the Section 206 notice, in fact, purported to apply only to "public utilities." The original complaint filed by San Diego Gas & Electric, the claim on which the Section 206 refund date is based and calculated, only addressed such sales by "public utilities." *See CPUC*, 462 F.3d at 1046-47 & 1063. The Commission did not even purport to give notice that it was applying these refund proceedings to sales by governmental entities until the Commission's July 25, 2001 order applying its prior rulings to governmental entities. *San Diego Gas & Elec. Co.*, 96 FERC ¶ 61,120 at 17 (2001). That is undisputed. Certainly, given the legal bar to assessing refund liability against governmental entities, reaffirmed by the court in *BPA*, the governmental entities could not have reasonably anticipated that they would ever be subject to an illegal Section 206 refund order in making desperately needed sales of power into the California market during the refund period. It bears repetition that, but for these sales, the power crisis in California would have been much worse. The governmental entities might have chosen to limit their sales if they had been put on notice of any refund liability -- precisely the point of the notice requirement. For all these reasons, the filed rate doctrine and the rule against retroactive ratemaking bar any retroactive amendments to the tariffs for sales by governmental entities.

In any event, even as to jurisdictional entities, Section 206 proceedings do not retroactively "amend" the tariff itself, but simply provide a legal mechanism for the Commission to impose refunds on jurisdictional entities *as a matter of discretion*. *See, e.g., Towns of Concord, Norwood, & Wellesley, Mass. v. FERC,* 955 F.2d 67, 73 (D.C. Cir. 1992) (sustaining FERC's equitable discretion over whether to order refunds). As *Towns of Concord* holds, the Commission "need only show that it 'considered relevant

factors and . . . struck a reasonable accommodation among them,' *Las Cruces TV Cable v. FCC*, 645 F.2d at 1047, and that its order granting or denying refunds was 'equitable in the circumstances of this litigation,' *Wisconsin Elec. Power Co. v. FERC*, 602 F.2d 452, 457 (D.C. Cir.1979)." Under that standard, a refund proceeding does not create an "amended tariff" or any "tariff." Rather, refunds simply involve the Commission's equitable discretion. *See also City of Vernon*, 115 FERC ¶ 61,297, 62,061 (2006) (applying the *Towns of Concord* test).

That discretion is evident in this case. Here, FERC's own orders make clear that the Commission did not bind itself to applying the MMCP in calculating refunds. Rather, the Commission has allowed each jurisdictional entity to show that a different refund calculation would be applicable to its sales by making a cost filing. *See San Diego Gas & Elec. Co.*, 105 FERC ¶ 61,066 at 61,372 (2003) ("In the December 19 and May 15 Orders, the Commission provided marketers with the opportunity to demonstrate that their portfolio costs exceeded their cost recovery under the MMCP methodology."). The Commission has continually refined that approach. *See also San Diego Gas & Elec. Co.* 107 FERC 61,166 (2004); *San Diego Gas & Elec. Co.*, 108 FERC ¶ 61,311 (2004). Such a case-by-case refund inquiry is the antithesis of a "tariff," which generally must be uniform and non-discriminatory. *See generally* 18 U.S.C. 824d(b); *California ex rel Lockyer v. FERC,* 383 F.3d 106, 111 (9th Cir. 2003). Stated differently, such an individualized refund approach makes clear that the refund calculation is not a "tariff" matter, much less a matter of retroactively applying an "amended tariff," as the California Parties mistakenly suggest.

As the Indicated Public Entities point out (Answer at Paragraph 31), the settlements accepted by the Commission to date also belie the notion that the Commission has somehow retroactively reset the tariff. In each of those cases, the refund liability of the settling jurisdictional seller was offset by the receivables that were owed to the jurisdictional seller under the *tariff rate in effect at the time of the sale*. *See, e.g. San Diego Gas & Electric Co. v. Sellers of Energy and Ancillary Services, et al.*, 111 FERC ¶ 61,017 (2005) ("Under the Settlement, Mirant will assign to the California Parties approximately $283 million in receivables claimed by Mirant to be due to it from the CAISO and CalPX".) *Accord San Diego Gas & Electric Co. v. Sellers of Energy and Ancillary Services, et al.*, 113 FERC ¶ 61,308 (2005); *San Diego Gas & Electric Co. v. Sellers of Energy and Ancillary Services, et al.*, 111 FERC ¶ 61,354 (2005*); San Diego Gas & Electric Co. v. Sellers of Energy and Ancillary Services, et al.*, 113 FERC ¶ 61,308 (2005); *San Diego Gas & Electric Co. v. Sellers of Energy and Ancillary Services*, et al., 118 FERC ¶ 61,168 (2007). In sum the California Parties' suggestion that the Commission retroactively amended the tariff on sales by governmental entities is thus wrong both as a matter of law and as a matter of fact.

**5. FERC should not become embroiled in a legal proceeding outside the scope of its jurisdiction.**

The California Parties spend a significant portion of the motion trying to convince the Commission of the relative strength of the various contract claims they have filed against the governmental entities. They explain how the *BPA* decision, along with the *MAPP/Alliant*[4] cases, supposedly creates a basis for their contract claims. Because of the

[4] *Alliant Energy v. Nebraska Public Power District,* 347 F.3d 1046 (8th Cir. 2003); *Mid-Continent Area Power Pool*, 89 FERC ¶ 61,135 (1999).

purported strength of their contract claims, the California Parties then argue that FERC should "ensure that the ISO and PX calculate the refunds owed by all sellers including the Governmental Entities." Cal. Parties Motion at 16.

Whether the California Parties are correct regarding the merits of those claims has no relevance in this proceeding. The presence in this case of a contract between jurisdictional and non-jurisdictional parties is irrelevant because FERC has no legal authority to regulate a party over which it lacks FPA jurisdiction. Certainly, BPA and Western feel strongly that the contract claims asserted against them are not meritorious, as portrayed by the California Parties. That, too, is irrelevant to this proceeding. The relative strength of the California Parties' contract cases and the questions regarding whether *BPA* and the *MAPP/Alliant* cases stand for the propositions for which the California Parties contend, are not for the Commission to decide. The Commission should not interfere in the disposition of cases involving parties over which it has no jurisdiction.

The *BPA* case has drawn a bright line when it comes to the refund liability of governmental entities in these proceedings and the Commission's role; post-*BPA* the Commission's role is very limited. Very simply, the governmental entities are not subject to FERC's refund authority. As a result, the string of FERC decisions asserting jurisdiction, as well as the underlying rationale for that assertion of jurisdiction, are set aside and no longer have any force and effect. The California Parties' motion essentially asks the Commission to continue to enforce provisions that are no longer valid under binding law. The Commission must reject this request that it simply nullify the Ninth Circuit's order and continue to retain collateral over which it lacks jurisdiction, calculate

refunds that it has no right to order, and otherwise conduct this proceeding in the very same manner as it was being conducted prior to the Ninth Circuit's order denying jurisdiction. Similarly, the Commission must reject the California Parties' blatant attempt to encourage the Commission to meddle in state and Federal court litigation over which it has no jurisdiction.

With the issuance of the mandate, the Commission has no power in this proceeding to issue any order having binding effect on the governmental entities. Thus, there is no reason for FERC to continue to include governmental entities in the refund calculation. Certainly, it is not within the Commission's jurisdiction to assist the California Parties in their contract litigation. The Commission has no role in these unrelated contractual disputes and should not take any action in these remand proceedings that could prejudice the rights of the non-jurisdictional utilities in litigation that does not implicate the Commission's regulatory authority, as defined by the Ninth Circuit in its mandate.

**6. The California Parties' reliance on the *CPUC* decision is misplaced.**

The California Parties contend that the Ninth Circuit's decision in *CPUC v. FERC* requires the Commission to mitigate all transactions from the refund period in the ISO and PX markets. They conclude from this that the Commission should therefore continue the calculation of refunds for the governmental entities. Their conclusion is fundamentally flawed because it ignores the holding in the *BPA* case.[5]

The California Parties argument essentially asks the Commission to read the *CPUC* case in a vacuum. The *CPUC* and *BPA* cases have been linked together by the

---

[5] We note that no mandate has issued in *CPUC* so, even if the case could be read as the California Parties suggest, it is not before the Commission.

Ninth Circuit since the scheduling conference. The two cases were briefed on the same general schedule and argument was heard by the same panel on both cases on consecutive days. The *BPA* decision was issued approximately 11 months prior to the *CPUC* decision by the Court, so to the extent that one reads the *CPUC* decision, it must be read in the context of its companion case, *BPA v. FERC*. Therefore, to suggest that the *CPUC* case somehow requires the Commission to mitigate all transactions in ISO and PX markets ignores the clear holding of the *BPA* decision, discussed above. The *CPUC* case cannot be read to somehow require the Commission to continue to mitigate the transactions of BPA, Western and the other governmental entities. The two opinions must be read consistent with each other. To the extent that the *CPUC* case suggests that all transactions in the ISO and PX markets must be mitigated, it is illogical to extend transactions by governmental entities.

**7. The Commission cannot compel governmental entities to make cost filings.**

As part of their motion, the California Parties ask FERC to require the governmental entities to make cost filings within five days of the Commission's ruling on this motion.[6] They contend that it remains the Commission's responsibility to both determine the market-wide pricing under the ISO and PX tariffs, as well as adjudicate cost filing issues for the governmental entities. As noted above, the *BPA* decision forecloses both of these contentions. The Commission has no jurisdiction over governmental entities in this proceeding and this matter is not, as the California Parties suggest, one in which the Commission is establishing a market-wide price applicable to all transactions in the ISO and PX markets. As a consequence of the absence of any

---

[6] Cal. Parties' Motion at 18 -20.

jurisdiction over the governmental entities, the Commission cannot require them to make offset cost filings in a refund proceeding in which the Commission lacks jurisdiction over the governmental entities.

The Indicated Public Entities have also filed an answer in to the California Parties' motion on this point. BPA and Western support and adopt the arguments made therein. Indicated Public Entities Answer paragraph 17-25.

**8. No market shortfall will result from dismissal of the governmental entities.**

The California Parties ask the Commission to defer determining how to address the market shortfall that will result from the failure of the governmental entities to pay refunds until after their contract claims are completed. The request assumes that a market shortfall will result from dismissal of the governmental entities. The whole notion of a market shortfall is premised upon the California Parties contention that all transactions in the ISO and PX markets have been adjusted by the Commission. As previously noted, this is a flawed assumption. The *BPA* decision specifically rejects the concept that this proceeding adjusted the prices for all the transactions in the ISO and PX markets. FERC's jurisdiction cannot be countered "by shifting the analysis away from the identity of the [parties it wishes to regulate], and focusing instead on the nature of their transactions and the markets and tariffs under which these transactions were conducted. *BPA*, 422 F.3d at 918. As a consequence, the removal of the governmental entities as source of potential refund does not result in a market shortfall, only a smaller pool of refunds to be distributed to buyers.

Additionally, as noted in the answer of the Indicated Governmental Entities, the California Parties reliance on the *MAPP* case is misplaced. BPA and Western adopt and

support the arguments made therein. Indicated Public Entities Answer paragraph 27-32. *MAPP* specifically rejected the notion that a market shortfall resulted from FERC's lack of jurisdiction over the non-public utilities in that proceeding.

**9. FERC's jurisdiction over BPA's and Western's rates are not governed by the FPA.**

As noted, under the FPA, FERC's role is to determine whether the rates for public utilities are "just and reasonable." Under the Northwest Power Act, FERC reviews BPA's rates (as determined by the BPA Administrator) only to ensure that these rates are sufficient to ensure repayment of the federal investment and based on total system costs, the criteria imposed by Section 7(a) of the Act.[7] Upon FERC's approval, those BPA rates take effect and are then controlling. There is no avenue for FERC to reconsider those rates at a later time under the Northwest Power Act or under the FPA. Under separate authorities[8], the process and the results are the same for Western. FERC's review is limited to sufficiency of repayment and it may not adjust the rates. FERC either confirms Western's rates or returns them to Western for further consideration. As with BPA, the Commission lacks jurisdiction to review justness and reasonableness of Western's rates.

---

[7] *See Aluminum Co. of America v. BPA*, 903 F.3d 585, 592 (9th Cir. 1989), *cert. denied*, 498 U.S. 1024 (1991) (contrasting FERC role and proceedings under the Federal Power Act to those created by the Northwest Power Act); *Central Lincoln People's Utility District v. Johnson*, 735 F.2d 1101, 1113 n.6 (9th Cir. 1984) (expressly rejecting the argument that the "substantive provisions of the FPA are meant to govern the rate review under section 7(k)"); *Southern Calif. Edison Co. v. Jura*, 909 F.2d 339, 343-44 (9th Cir. 1990) (same).

[8] *See* Sections 301 (b), 302(a) and 644 of the Department of Energy Organization Act, Pub.L 95-91 (42 U.S.C. 7101, *et seq*.); section 5 of the Flood Control Act of 1944 (16 U.S.C. 825s); the Reclamation Projects Act of 1902 (43 U.S.C. 372, *et seq*.) as amended and supplemented by subsequent enactments, particularly section 9(c) of the Reclamation Project Act of 1939 (43 U.S.C. 485h(c)) and the Acts specifically applicable to individual projects or power systems; and which has been codified at 10 C.F.R. Part 903.

Given these vastly different statutory goals, it is quite possible, for example, that a "reasonable rate" under the FPA could be insufficient to meet the goals of the Northwest Power Act. Even assuming *arguendo* that "reasonable" rates under the Federal Power Act could satisfy the criteria set forth in the Northwest Power Act, FERC's exercise of such FPA jurisdiction would obviate the primary role accorded the judgment of the Administrator of BPA for making those rate determinations by the Northwest Power Act and would mean that FERC would be exercising *de novo* rate-setting jurisdiction instead of the appellate role required by the Northwest Power Act.

In the event the Commission entertains the California Parties' recommendation and continues the calculation of refunds for BPA or Western, the Commission would have no jurisdiction under the Northwest Power Act, Western's authorities, or the FPA to put into effect any such recalculated rate. Stated differently, the refund calculation would be a nullity as it would effectively impose on BPA or Western the same "reasonable" rate the Commission intends to apply to jurisdictional sellers of electrical power over which FERC may exercise ratemaking authority under the FPA. In essence, FERC would be applying the "reasonable" rate standard of the Federal Power Act, a result that is flatly barred under *BPA* and controlling precedent applying the Northwest Power Act, cited above.

The obvious answer to these difficulties is to reject the California Parties' attempt to have the Commission circumvent the *BPA* decision and for the Commission to refuse to continue to calculate the just and reasonable rate for these transactions. Such a decision gives full effect to the exclusion of BPA and Western from FERC's jurisdiction under Section 201(f), while properly limiting FERC's role to that specifically delineated

by Congress in BPA and Western's authorizing statutes. Only that determination will give full effect to the objectives and goals set forth in both statutory schemes.

**10. Conclusion.**

Based on the foregoing, the California Parties' motion should be denied. The Commission should dismiss BPA, Western and the other governmental entities from these proceedings and release the governmental entities' collateral and accounts receivable from Commission jurisdiction.

Respectfully submitted this 17th day of April, 2007

*/s/ Peter Burger*
Peter Burger
Attorney for the
Bonneville Power Admin.
905 NE 11th Avenue
Portland, OR 97232
Phone: (503) 230-4201
Fax: (503) 230-7405
pjburger@bpa.gov

*/s/ John D. Bremer*
John D. Bremer
Attorney for the
Western Area Power Admin.
12155 W. Alameda Parkway
Lakewood, CO 80228-8213
Phone: (720) 962-7019
Fax: (720) 962-7009
bremer@wapa.gov

**EXHIBIT 4**
**TO**
**DECLARATION OF RUSSELL P. COHEN IN SUPPORT OF PLAINTIFFS' MEMORANDUM OPPOSING DEFENDANT'S MOTION FOR STAY AND MORE DEFINITE STATEMENT**
***PG&E, ET AL. V. UNITED STATES,* CASE NO. 1:07-CV-00157-LAS**
***SDG&E V. UNITED STATES,* CASE NO. 1:07-CV-00167-LAS**

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| San Diego Gas & Electric Company, Complainant, | ) | |
| v. | ) | Docket No. EL00-95-000, *et al*. |
| Sellers of Energy and Ancillary Services Into Markets Operated by the California Independent System Operator and the California Power Exchange, Respondents. | ) | |
| Investigation of Practices of the California Independent System Operator and the California Power Exchange | ) | Docket No. EL00-98-000, *et al.* |

**Answer of the Bonneville Power Administration (BPA) and Western Area Power Administration (Western) to the California Parties' Answer to Motions of the Governmental Entities**

Pursuant to Rules 212 and 213 of the Commission's Rules of Practice and Procedure,18 C.F.R. §§ 385.212 and 213 (2006), BPA and Western submit the following in answer to the "California Parties' Answer to Motions of the Governmental Entities," (Cal. Parties' Answer) filed on April 30, 2007.[1] Although styled as an answer, the California Parties' pleading mischaracterizes both the arguments to which they claim to be responding and the circumstances that led to the Ninth Circuit's remand in *Bonneville Power Administration v. FERC*, 422 F.3d 908 (9th Cir. 2005)("*Bonneville").* BPA and

[1] The "California Parties" are: the People of the State of California, *ex rel*. Edmund G. Brown Jr., Attorney General; the California Electricity Oversight Board; the California Public Utilities Commission; Pacific Gas &Electric Company; San Diego Gas &Electric Company; and Southern California Edison Company.

Western submit this to correct some of the misstatements in that pleading and accordingly request leave to file this answer on that ground.[2]

**1. The California Parties misrepresent the nature of this proceeding**

The California Parties' answer to BPA and Western's motion mischaracterizes the pending matter before the Commission as one involving the resetting or amending of ISO and PX rates. The California Parties state:

> [T]he Commission established the new MMCP to calculate just and reasonable rates, thereby amending the formula rates originally allowed under the tariffs.

Cal. Parties Answer at 19.

This characterization is flawed for two reasons; first the Ninth Circuit specifically rejected the notion that this proceeding involved resetting of the ISO and PX rates; and secondly, the rates at issue are market based rates of the jurisdictional sellers not the rates of the ISO and PX.

In an effort to justify the exercise of refund authority over governmental entities, both the Commission and the ISO argued to the Ninth Circuit that this proceeding involved the resetting of the ISO and PX rates rather than refund proceeding against sellers into the ISO and PX markets. The Ninth Circuit specifically rejected this same characterization of the proceeding. As the Court noted:

> FERC attempts to deflect our attention away from the fact that it is ordering refunds from the Public Entities by arguing the FERC is simply using its §§ 205 and 206 authority to reset the prices of the single-price auction to a just and reasonable level … ISO similarly tries to cast FERC's orders as resetting the market clearing price under FERC-jurisdictional tariffs and characterizes the refunds by the Public Entities as just a "byproduct" of the resettlement of the ISO and CalPX markets.

[2] *See Buckeye Pipe Line Co.*, 45 FERC ¶ 61,046 at 61,160 (1988) (Good cause exists for consideration of prohibited answers where "they help explicate issues that are important to this proceeding ….").

> The rationale advanced by FERC and ISO is flawed. Perceiving FERC's orders as effecting a reset market clearing prices of all spot market sales under the ISO and CalPX tariffs, rather than as a order for refunds under § 206(b), ignores the explicit language of FERC's July 25, 2001 Order. … We cannot conclude that FERC said "refund" but meant resettlement of the market-clearing price.

*Bonneville*, 422 F.3d at 919.

Indeed, the Ninth Circuit went further, noting that "it would be one thing for FERC to order CalPX and ISO to operate the market in a different fashion or to set a market-clearing price for power on a going-forward basis, *but the retroactive imposition of a market price that effects a refund responsibility is a regulatory action that falls outside of FERC's jurisdiction with respect to non-public utilities and governmental entities*."[3] As the Court thus made clear, the Commission simply has no power to reset prices retroactively for sales by governmental entities. The California Parties are thus inviting the Commission to engage in the very determination that the Ninth Circuit has held to be beyond the Commission's jurisdiction. This distinction is key. Since the Commission's rate authority extends only to the sales by jurisdictional entities, the Commission lacks authority to determine that any amounts charged by governmental entities were "overcharges," as the California Parties insist.

The Ninth Circuit clarified that this proceeding involves the Commission's exercise of its §§205 and 206 authority to calculate refunds due from by FERC jurisdictional utilities. Contrary to the California Parties contentions, this is not a matter where the Commission is amending the prices under the ISO and PX tariffs. Cal. Parties' Answer at 6. See also BPA/Western Answer and Motion at 5. As noted, those arguments were made by the Commission and the ISO and rejected by the Court of

[3] *Bonneville* at 920. Emphasis supplied.

Appeals. The calculation of the MMCP is not a resetting of the market prices, rather is merely the mechanism for calculating the refund obligation of the respective sellers into those markets. See BPA/Western Motion and Answer at 5.

The California Parties compound their mischaracterization of this proceeding by contending that the rates at issue are formula rates. Cal. Parties Answer at 19.[4] Even as to sales by jurisdictional entities the rates at issue are not formula rates, as that term has been defined by the Commission:

> [A] formula rate specifies the cost components that form the basis of the rates a utility Commission's acceptance of formula rates is premised on the rate design's "fixed, predictable nature," charges its customers. *Hampshire Gas* Co., 6 F.E.R.C. ¶ 61,249, at 61,607 (1979). The Commission's acceptance of formula rates is premised on the rate design's "fixed, predictable nature," *Ocean State Power II*,69 F.E.R.C. ¶ 61,146, at 61,552 (1994), which both allows a utility to recover costs that may fluctuate over time and prevents a utility from utilizing excessive discretion in determining the ultimate amounts charged to customers. *See id*. Thus, "'[w]hen the Commission accepts a formula rate as a filed rate, it grants waiver of the filing and notice requirements of [§205] [, and] [t]he utility's rates, then, can change repeatedly, without notice to the Commission, provided those changes are consistent with the formula.'" Ala. Power Co. v. FERC, 993 F.2d 1557, 1567-68 (D.C. Cir. 1993) (quoting San Diego Gas & Elec. Co., 46 F.E.R.C. ¶ 61,363, at 62,129-30 (1989)).

*Public Utilities Comm'n of California v. FERC*, 254 F.3d 250,254 (D.C. Cir. 2001) (footnote omitted).

Market-based rate tariffs of the jurisdictional sellers in the ISO and PX markets are not formula rates because the actual rate for each transaction, not the utility's costs, is

[4] In the briefing to the Ninth Circuit in *CPUC*, the IS0 and SDG&E both argued that market rates were "formula rates" in contending that the Commission had erred in failing to order Section 206 refunds for the time prior to October 2. The Court of Appeals implicitly rejected that theory, expressly upholding the October 2 cut-off date for Section 206 refunds (462 F.3d at 1046), and holding further that sales predating October 2 were subject to review only under the Commission's Section 309 authority to remedy "market manipulation" and "gaming" activities that would be "in violation of the Cal–ISO and CalPX rules." (462 F.3d at 1047-49). While never mentioning the "formula rate" argument, the Court's refusal to accept that argument was hardly an oversight or inadvertent. The "formula rate" contention was highlighted in the ISO and SDG&E briefs and in the intervenor brief filed by the Indicated Governmental Entities and was raised at oral argument. Moreover, the Court otherwise expressly denied the petitions for pre-October 2 relief. (462 F.3d at 1051). As detailed above, the Commission should likewise reject the California Parties formula rate argument should it find it necessary to reach the issue.

reported to the FERC. The Commission's market-based rate tariff system was held to be lawful because the Commission requires a seller that applies for such authority first to demonstrate that it lacks market power, and then to comply with transaction-specific reporting requirements, to provide FERC with the means of ensuring that the actual rates charged are just and reasonable. *California v. FERC*, 3 83 F.3d 1006 at 1013 (9th Cir. 2004) (remanding to FERC for a determination of remedies for violations of market-based tariff reporting requirements). The post-transaction reporting required by FERC specifies the actual price charged for each transaction under the market-based rate authority, to ensure compliance with FPA §205(c). *California v. British Columbia Power Exch. Corp.*, 99 FERC ¶ 61,247 at 62,066-067 (2002), *rev 'd in part*, *California v. FERC*, 383 F.3d 1006 (9th Cir. 2004).

This requirement that actual prices be reported is the antithesis of a formula-based system. The market-based rate tariff system does not require the reporting of formula inputs, such as a market-based sellers' marginal costs; the reporting requirements require filing of the actual stated rate for each transaction, down to transactions as short as ten minutes. In such circumstances, the "filed rate" for purposes of the filed rated doctrine is not any formula; rather, it is the market-based tariff under which the transactions reported are conducted. Therefore, arguments relying on market-based rate tariffs as formula rates are misplaced.

**2. The California Parties' Mischaracterize the "MAPP Precedent"**

The California Parties contend that the MAPP precedent requires the Commission maintain the *status quo* pending the outcome of the various suit filed against the governmental entities in state and federal court. Cal. Parties Answer at 10. The

California Parties attempt to twist the meaning of the MAPP case should not be entertained by the Commission. As pointed out in the Answer filed by the Indicated Public Entities, under MAPP, the Commission is not obligated to continue require governmental entities to continue to participate in these proceedings. BPA and Western support and adopt each of the arguments made by the IPE in their pleading filed in response to the Answer of the California Parties.

Respectfully submitted this 14th day of May, 2007

*/s/ Peter Burger*
Peter Burger
Attorney for the
Bonneville Power Admin.
905 NE 11th Avenue
Portland, OR 97232
Phone: (503) 230-4201
Fax: (503) 230-7405
pjburger@bpa.gov

*/s/ John D. Bremer*
John D. Bremer
Attorney for the
Western Area Power Admin.
12155 W. Alameda Parkway
Lakewood, CO 80228-8213
Phone: (720) 962-7019
Fax: (720) 962-7009
bremer@wapa.gov

**EXHIBIT 5**
**TO**
**DECLARATION OF RUSSELL P. COHEN IN SUPPORT OF PLAINTIFFS' MEMORANDUM OPPOSING DEFENDANT'S MOTION FOR STAY AND MORE DEFINITE STATEMENT**
***PG&E, ET AL. V. UNITED STATES,* CASE NO. 1:07-CV-00157-LAS**
***SDG&E V. UNITED STATES,* CASE NO. 1:07-CV-00167-LAS**

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

| | |
|---|---|
| San Diego Gas & Electric Co., Complainant<br><br>v.<br><br>Sellers of Energy and Ancillary Services Into Markets Operated by the California Independent System Operator and the California Power Exchange, Respondents | Docket Nos. EL00-95-000 et al. |
| Investigation of Practices of the California Independent System Operator and the California Power Exchange | Docket Nos. EL00-98-000, et al. |

**RESPONSE TO MOTION OF THE CALIFORNIA PARTIES FOR LEAVE TO ANSWER THE ANSWERS OF THE GOVERNMENTAL ENTITIES TO THE EARLIER FILED MOTION OF CALIFORNIA PARTIES**

Pursuant to Rules 212 and 213 of the Commission's Rules of Practice and Procedure, the Indicated Public Entities [1] hereby oppose the California Parties' Motion for Leave to Answer contained in their "Answer to Motions of the Governmental Entities," filed with this Commission on April 30, 2007, and request that it be rejected as an unauthorized answer to an answer or, in the alternative, request leave to respond to the California Parties' Answer. Although styled as an answer, the California Parties'

[1] Hereafter "IPE." The IPE joining in this Answer are Arizona Electric Power Cooperative ("AEPCO"), Sacramento Municipal Utility District ("SMUD"), Modesto Irrigation District ("MID"), Northern California Power Agency ("NCPA"), Public Utility District No. 2 of Grant County, Washington, and the California Cities of Anaheim, Azusa, Banning, Glendale, Pasadena, Redding, Riverside, Santa Clara, and Vernon.

pleading instead mischaracterizes both the arguments to which they claim to be responding and the circumstances that led to the Ninth Circuit's remand in *Bonneville Power Administration v. FERC*, 422 F.3d 908 (9th Cir. 2005), Nos. 02-70262, e*t al.*, (9th Cir Mar. 7, 2007) ("*Bonneville").* Correcting such misstatements is a well-recognized ground for granting waiver of Rule 213's limitation on answers to answers, and IPE accordingly request leave to file this answer on that ground.[2]

In their joint answer to the California Parties' Motion for Procedures Following Remand, IPE pointed out that because the Commission had no authority to regulate their rates or to order refunds of their charges, the Commission never had any authority to mitigate the market prices they charged and should act promptly (1) to order the payment of their charges plus interest and (2) to order the return of their collateral since the collateral requirements were intended to ensure the ultimate payment of refunds owed by *jurisdictional* entities.[3] As discussed below, the California Parties do not really respond to these arguments, but (a) falsely assert that IPE have urged the Commission to ignore its *MAPP* precedent (Motion at 7), and then, (b) mischaracterize the *MAPP* precedent as requiring the Commission to assume that the California Parties have a valid contract claim that the Commission must takes steps to protect.

In fact, as also discussed below, California Parties have substituted repetition of their contract claim for proof of it. Their efforts have nothing to do with fashioning a

---

[2] *See Buckeye Pipe Line Co.*, 45 FERC ¶ 61,046 at 61,160 (1988) (Good cause exists for consideration of prohibited answers where "[t]hey help explicate issues that are important to this proceeding ….").  *See also Transwestern Pipeline Co*., 50 FERC ¶ 61,211 at 61,672 n.5 (1990)(same); *Morgan Stanley Capital Group, Inc. v. New York Independent System Operator, Inc.*, 93 FERC ¶ 61,017 at 61,036 (2000)(same); *PSEG Power In-City I, LLC v. Consolidated Edison Company of New York, Inc.*,109 FERC ¶61,189 at 61,919, P12 (2004)(same).

3 As we noted, in each case, monies that would otherwise have been due and payable to IPE are being held

*Continued …*

Commission response to the remand order and everything to do with attempts at shaping litigation in which the Commission is not involved.

## I. ARGUMENT

There is very little in the filing of the California Parties that addresses the legal or factual points made by IPE in the filing to which they purport to respond, and certainly nothing that would warrant an attempt by IPE to answer it, if that were all that were involved. The Commission is quite capable of weighing the issues and the legal positions that have been put before it without our attempting to add to it at this point. But that is not all that is involved here.

*Bonneville* makes clear that the Commission cannot order governmental entities to make refunds of the amounts they charged for power sales and that the California Parties only have recourse against governmental entities *if* they can establish a valid contract claim. The point had long been made by IPE and others both before this Commission and before the Ninth Circuit that if a relevant contract obligation existed (and IPE believe it did not), the proper venue to seek redress under such a hypothetical contract against entities exempt from Commission jurisdiction was in state or federal courts. Only after the Ninth Circuit's decision in *Bonneville,* however, did the California Parties ever assert such claims, and those claims were subsequently dismissed by the federal district court in Sacramento for lack of jurisdiction. That court's decision has since been appealed to the Ninth Circuit and the California Parties have also instituted new breach of contract actions against IPE in a California state court and similar claims against Bonneville and the Western Area Power Administration in the United States Court of Federal Claims.

---

as a result of the Commission's prior orders.

The multiple actions pending in the state and federal courts are referred to herein as the "contract litigation." Whether or not there is a contractual obligation to pay refunds and whether or not such an obligation is enforceable are matters to be decided, if at all, by those courts and not the Commission. What is evident, however, is that the California Parties' pleading in this case is crafted with the aim to get this Commission to inadvertently "weigh in" on these other proceedings by adopting characterizations which, if treated as facts by the other tribunals, would help their cause. IPE ask that the Commission not allow itself to be drawn into this; we illustrate the inaccurate nature of the California Parties' characterizations below.

### *A. The California Parties' Characterization of the "MAPP Precedent" is Simply Erroneous, as is Their Implication That the Ninth Circuit Discovered a Contract Theory Previously Unknown to California Parties and Directed Them to Pursue it*

According to the California Parties, "the Governmental Entities do not show that they would suffer any harm if the Commission follows the *MAPP* precedent in this proceeding." Answer at 10. What the California Parties mean by following the "*MAPP* precedent" is clear enough: that "the status quo is preserved pending the court rulings made necessary by the Governmental Entities' refusal to honor their contracts." *Id.* But there are multiple misstatements in this single passage.

First, the "*MAPP* precedent" does not require the Commission to maintain the status quo. The status quo is that the CAISO and PX continue to hold monies owed to non-jurisdictional utilities to pay a refund obligation that, as non-jurisdictional entities, they do not have. The situation in *MAPP* was exactly the opposite. The non-jurisdictional entity in that case – the Nebraska Public Power District (NPPD) – had *already* been paid, and the Commission found that it could not require NPPD to provide

refunds. The Commission certainly did not decide that it could withhold money from NPPD while the contract litigation went forward in a different forum. For the same reason, the governing precedent in this case – the *Bonneville* decision – makes the status quo unlawful because the Commission is withholding funds from governmental entities to secure unlawful refunds.[4]

Second, the California Parties' statement *assumes* "the Governmental Entities' refusal to honor their contracts." They assert that the CAISO and PX should be able to continue to hold the IPEs' money and that, if the IPEs "prevail in the pending contract actions against them, their liability for overcharges could be zeroed out with a stroke of a pen." Answer at 10. But their argument asks the Commission to assume both that there has been a breach of a contract and that continuing to hold the IPE money is necessary to preserve the contract claim. One of the many issues in the contract litigation, of course, is whether there really *is* a contract that imposes the obligations asserted by California Parties. But the California Parties have never attempted to show that such a contract obligation existed, relying instead upon implication and repeated assertions, while IPE and others have demonstrated to the best of their ability and in some detail in their motion to dismiss for failure to state a claim submitted to the Eastern District of California, that

---

[4] The CAISO's May 3 Answer notes that the PX is the only entity that still owes the CAISO for Refund Period transactions, and asserts that the PX can only release those receivables if FERC orders it to do so under the PX Bankruptcy confirmed plan. *Id*. *See also,* Official Committee of Participant Creditors' Fifth Amended Chapter 11 Plan, As Modified, approved by the United States Bankruptcy Court, Central District of California, Los Angeles Division, Case No. LA 01-16577 ES, at §§ III.D.4.c and IV.E. IPE understand that the PX, in turn, is owed substantial amounts by PG&E, and that the Commission's authorization is necessary for payment of funds held in PG&E accounts under the approved PG&E Reorganization Plan. See, e.g., Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company Dated July 31, 2003, As Modified by Modifications Dated November 6, 2003 and December 19, 2003, approved by the United States Bankruptcy Court, Northern District of California, San Francisco Division, Case No. 01 30923 DM, at § 5.4(g). Under the PX and PG&E reorganization plans, therefore, the Commission is the proper authority to direct the release of payments to sellers, and it must exercise that authority consistent with the *Bonneville* mandate.

the claimed contract obligation did not exist.[5] Another critical issue is whether, even if there were found to be such a contract obligation, the California Parties' claim was timely brought.[6] Consistent with the "*MAPP* precedent," however, the answers to those questions are of no concern to the Commission. If there were a valid contract claim – and IPE strongly dispute that – the court can order a remedy, and the Commission is neither obliged nor permitted to hold the IPE's money while the contract litigation is sorted out.[7]

### *B. The Repeated Statement That the Commission Acted to Reset the Rates Charged Under the ISO and PX Tariffs Instead of Using its Section 206 Power to Set Refunds is an Attempt to Rewrite History to Affect Decisions by Another Decision-Maker*

In support of their answer, the California Parties argue that in *Bonneville* "[t]he Ninth Circuit recognized the broad continuing scope of the Commission's authority to *re-set prices* under the ISO and PX tariffs and otherwise regulate the markets, and that such exercise of authority could indeed be enforced against even the Governmental Entities." Answer at 6 (emphasis supplied). But as the Court noted, whatever authority the

[5] IPE and others filed Rule 12(b)(6), F.R.Civ.P. motions to dismiss for failure to state a claim. The district court in California chose not to reach that motion, granting instead the motion to dismiss for lack of federal question jurisdiction, which had been filed under Rule 12(b)(1), F.R.Civ.P.

[6] "It was the Ninth Circuit," the California Parties claim, "that suggested that the Commission's revision of the ISO and PX Tariffs could be enforced against the Governmental Entities by means of a contract remedy in the appropriate court, as occurred in the *MAPP/Alliant* proceedings." Answer at 6. In so characterizing the Court's opinion, the California Parties appear to suggest that the notion of a contract claim sprang initially and unbidden from the mind of the Ninth Circuit, and that they are simply following the direction of that Court to enforce a contract found to exist by that Court. But nothing could be further from the truth. The distinction between refunds enforced under section 206 of the FPA and those required by contract was in fact raised by the Governmental Entities in their briefs to the Ninth Circuit, including a fairly significant number of pages addressed to the fact that if there were a contract the contract would govern, citing what has been referred to as the MAPP case, *Álliant Energy v. Nebraska Public Power District*, 347 F.3d 1046 (8th Cir. 2003). *E.g.* Opening Brief pp.40-41, Reply Brief pp 25-27. Obviously, IPE made that argument because we believed that no contractual obligation existed. Tellingly, the California Parties did not adopt the contractual argument at any time prior to the decision in *Bonneville*, presumably because they too believed no such contractual obligation to exist.

[7] The Nevada Companies' May 10, 2007 Motion Regarding Remand Proceedings explains that holding the refund proceeding open during the time it will take to litigate the California Parties' civil claims is unfair to other market participants.

Commission has to establish Mitigated Market Clearing Prices as a first step in determining refund obligations for jurisdictional utilities,[8] it cannot order governmental entities to pay refunds:

> FERC attempts to deflect our attention away from the fact that it is ordering refunds from the Public Entities by arguing that FERC is simply using its §§ 205 and 206 authority to reset the prices of the single-price auction to a just and reasonable level:
>
> > Our action thus revises the market clearing prices that all market participants previously agreed to accept for their sales. In this context, we see no reason to treat non-public utility sellers differently, as they are receiving the same price, the just and reasonable market clearing price established pursuant to market rules approved by this Commission, that they expected to obtain for their wholesale sales into the centralized ISO and PX spot markets.
>
> 96 FERC ¶ 61,120, at 61,512 (2001); *see also* 97 FERC ¶ 61,275, at 62,182 (2001). ISO similarly tries to cast FERC's orders as resetting the market clearing price under FERC-jurisdictional tariffs and characterizes the refunds by the Public Entities as just a "byproduct" of the resettlement of the ISO and CalPX markets.
>
> The rationale advanced by FERC and ISO is flawed. Perceiving FERC's orders as effecting a reset market clearing price for all spot market sales under the ISO and CalPX tariffs, rather than as an order for refunds under § 206(b), ignores the explicit language of FERC's July 25, 2001 Order:
>
> > The Commission has determined that all sellers of energy in the California ISO and PX spot markets

[8] California Parties also assert that "*BPA* does not affect … the Commission's holding that the MMCP methodology sets the maximum price that may be charged to customers under the ISO and PX tariffs for the time period at issue." Answer at 3. But FERC's authority extends to the rates charged by public utility sellers, not the rates paid by customers (16 U.S.C. § 824d(a)); the MMCP methodology can only "set[] the maximum price that may be charged" by jurisdictional utilities, subject to certain additional adjustments on a seller-by-seller basis. That is the whole point of the Section 201(f) exemption of governmental utilities from rate regulation.

> should be subject to refund liability for the period beginning October 2, 2000. We have decided to extend refund liability to public and non-public utility sellers based on our review of the controlling law, the involvement of both types of sellers in the California centralized ISO and PX spot markets, and the equities of the situation.

> 96 FERC ¶ 61,120, at 61,511 (footnote omitted). <u>We cannot conclude that FERC said "refund" but meant resettlement of the market-clearing price.</u>

> FERC's order does more than simply reset the market clearing price for power in the FERC-jurisdictional ISO and CalPX markets. FERC specifically ordered governmental entities/non-public utilities to pay refunds, an action that lies outside Congress's clearly expressed intent that FERC's § 206 refund authority should apply only to public utilities. In addition, the fact that ISO and CalPX were public utilities is irrelevant because FERC is ordering refunds from the governmental entities/non-public utilities, not ISO or CalPX themselves. Indeed, it would be one thing for FERC to order CalPX and ISO to operate the market in a different fashion or to set a market-clearing price for power on a going-forward basis, but the retroactive imposition of a market price that effects a refund responsibility is a regulatory action that falls outside of FERC's jurisdiction with respect to non-public utilities and governmental entities.[9]

Similarly, the California Parties refer to the Commission's authority to require the PX and CAISO "to complete their calculation of the overcharges that the ISO and PX *passed through to purchasers* pursuant to their jurisdictional tariffs on file with the Commission." Answer at 7 (emphasis added). But the only overcharges passed through to purchasers, by definition, were overcharges by jurisdictional utilities. The Commission lacks authority to determine that any amounts charged by governmental entities were "overcharges."

---

[9] *Bonneville* at 919-920. Emphasis supplied.

IPE do not ask the Commission to opine on whether there is a contract or if there were one what it would mean. This is not the proper forum for resolution of the California Parties' contract claims. We do note for the record, however, that we believe the California Parties' contract claims are completely without merit, and we fully expect the courts to agree with us in that regard.[10]

### *C. The Implication That the Ninth Circuit has Overruled Its Own BPA Decision in CPUC*

The California Parties go so far as to assert that the same Ninth Circuit panel that decided *Bonneville* overruled, *sub silentio*¸ the decision in *Bonneville* in its later decision in *CPUC.*[11] Thus they assert (at p. 8, footnotes omitted):

> *BPA* does not hold that the prices for the millions of California market transactions in which Governmental Entities participated were exempt from mitigation, let alone that Governmental Entities are entitled to receive payments for sales they made under the ISO and PX tariffs at rates that exceed those that the Commission permits under the tariffs.

[10] Among other things: (1) the federal district courts have no federal question jurisdiction to entertain the contact claims (a position already adopted by the federal district court in Sacramento), (2) jurisdiction aside, the California Parties' claims do not satisfy presentment requirements under California law, (3) the claims should be dismissed because the statute of limitations has lapsed, (4) there is no privity of contract between the plaintiffs and the defendants with respect to the contracts alleged by the California Parties, (5) the plaintiffs do not have clean hands and are estopped from asserting the validity of the alleged contracts by their previous actions obtaining action from this Commission by denying such a contract obligation, and (6) as to some of the Governmental Entities, such as Grant County, the defendants never signed or otherwise evidenced their intent to be bound by the alleged contracts. Even if the plaintiffs surmount these objections to their claims, they face the much more basic argument that they have failed to demonstrate that there has been a breach of any provision of the contracts they allege. These points were all briefed to the federal district court in motions filed pursuant to Rule 12(b)(6), F.R.Civ.P., but were not decided, because the judge concluded that the case should be dismissed for lack of a federal question or complete diversity jurisdiction.

[11] *Pub. Utils. Comm'n of Cal. v. FERC*, 462 F.3d 1027 (9th Cir. Aug. 31, 2006), amending and superseding *Pub. Utils. Comm'n of Cal. v. FERC*, 456 F.3d 1025 (9th Cir. Aug. 02, 2006) ("*CPUC*"). As they did in their April 17 Answer, IPE note that CPUC is not at issue here because its remand has not been issued. Indeed, the California Parties continue to argue their incorrect interpretation of the non-final CPUC decision, despite the court having stayed the date for rehearing in CPUC to benefit the California Parties' settlement efforts. The California Parties attempt to litigate the meaning of CPUC during the stay should be soundly rebuked.

> Indeed, any claim that the Ninth Circuit intended in *BPA* to give the Governmental Entities a free pass . . . is belied by the court's opinion in *Public Utilities Commission of California v. FERC (CPUC)*, which was decided after *BPA* by the same panel. In *CPUC*, Governmental Entities argued that specific types of sales they made through the ISO, such as sleeve transactions, should be exempt from mitigation. Had the court concluded in *BPA* that all sales by Governmental Entities should be exempt from mitigation, it would have been pointless for the court to rule on the Governmental Entities' requests for transaction-specific exemptions. Nonetheless, the court not only ruled on, but rejected, the Governmental Entities' request that their sales through the ISO of sleeved energy be exempt from mitigation.

Of course, the argument that *Bonneville* was overruled might in theory be possible, if one believed that the Ninth Circuit panel had collectively lost their minds. But the conditions necessary for that argument to be possible are extraordinary. California Parties appear to assume that the same panel in *CPUC,* which opened its decision [12] by distinguishing the "Jurisdictional Cases" it had decided in *Bonneville,* had nonetheless forgotten *Bonneville* when it issued *CPUC*. That could be a correct assumption only if one were to assume that the Ninth Circuit panel had a <u>very</u> short memory. Since the same panel both denied rehearing *and* released the mandate in *Bonneville,* over the objection of California Parties and *after* the decision in *CPUC* that is cited,[13] that seems highly improbable (the California Parties' argument appears to assume that the Ninth Circuit panel had no idea what it was doing), and indicative of the depths to which the California Parties have stooped to find a basis for their contentions.

---

12 *Id*, at 1034-1035.

13 While the California Parties cited the *CPUC* decision in their Motion of the California Parties to the Issuance of Mandate filed in the Ninth Circuit on March 13, 2007, they did not suggest or even hint in that filing that the same panel had overruled *Bonneville*.

### *D. The PX and CAISO Tariffs Cannot be Applied to Justify Retention of Collateral Posted by IPE*

The California Parties assert that "the provisions of the PX and ISO Tariffs require the retention of collateral until accounts are billed and settled." Answer at 4. In support they cite to the D. C. Circuit's decision in *Constellation Energy Commodities Group, Inc., v. FERC*, 457 F. 3d 14, 20 (D. C. Cir. 2006). *Id.* at 13. But the very passage they quote makes clear that the collateral requirement is intended to provide "security of repayment" in the event the seller is found to have "ultimate liability to the PX." Non-jurisdictional sellers however, owe no refunds and therefore have no "ultimate liability to the PX." For the Commission to require non-jurisdictional sellers to maintain collateral in the face of the *Bonneville* mandate is to engage in a de facto form of rate regulation that the *Bonneville* mandate forbids. The Commission cannot refuse to release collateral, including receivables,[14] to secure refund obligations when the courts have ruled the refunds to be unlawful.

### *E. There is No Basis for Requiring Non-Jurisdictional Sellers to Submit Cost Filings at This Time.*

The California Parties do not even attempt to respond to the substance of IPE's arguments that there is (i) no basis for requiring non-jurisdictional sellers with no refund liability to submit cost filings pursuant to any premature deadline [15] and (ii) no valid

---

[14] The Nevada Companies' Motion Regarding Remand Proceedings, filed with the Commission on May 10, 2007, also makes this point well.

[15] See IPE Answer at 9-12 (citing *San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Services, et al.*, 114 F.E.R.C. ¶ 61,070, at P 130 (2006) ("[i]f a party does not have refund liability, then there is no need to determine an appropriate cost offset at this time"); *San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Services, et al.*, 116 FERC ¶ 61,167, at P 77, n.45 (2006) ("it is important to note that, if governmental entities have no refund liability, just like any other entity lacking refund liability, they correspondingly have no refund liability to offset and, therefore, no possible FCA offset to allocate to other net refund recipients").)

reason to require the Commission and the parties to this proceeding to expend resources analyzing unnecessary cost filings simply to provide the California Parties with an advisory opinion on damages for use in litigation in other *fora*.[16] Instead, the California Parties inaccurately assert that the "main support" relied upon for these arguments "is a footnote from a recent Notice issued by the Commission in response to their request for an extension of time to make their cost filings." Answer at 16. IPE believe that the Commission is perfectly capable of reviewing the various authorities that IPE cited and concluding on its own that, whether due to a deliberate attempt to mislead or simply inadvertence, the California Parties' claim is obviously incorrect. Nonetheless, IPE wish to point out that their reference to the Commission's Notice of Extension of Time—in footnote 13 to the last sentence, on page 14, of a six-page section of their Answer—was only one of many authorities supporting the conclusion that it is unnecessary and inappropriate to require non-jurisdictional sellers to submit cost filings until such time, if ever, as the Supreme Court issues a ruling reversing *Bonneville*.

The California Parties also claim that "the Governmental Entities' discussions of this issue are not applicable because those discussion assume a mandatory process," asserting that cost filings are "optional." Answer at 17. This statement is disingenuous. If non-jurisdictional sellers entitled to submit cost filings decline to do so, and the Commission orders the CAISO and PX to proceed with the calculation of refunds attributable to non-jurisdictional sellers as through *Bonneville* were never issued, as the California Parties insist that it must, it is clear that the California Parties would contend in the contract litigation they have initiated that any non-jurisdictional seller that declined to

[16] *Id*. at 12-14 (citing *San Diego Gas & Elec. Co.*, 114 FERC ¶ 61,070, at PP 28, 32, 34, 388, and n.265).

submit a cost filing to the Commission waived its right to mitigate its potential refund liability. The non-jurisdictional sellers should not be forced to assume that risk.

### *F. The California Parties Have Failed to Demonstrate Grounds for Leave to Answer*

Answers to answers are generally prohibited, *see* 18 C.F.R. 385.213(a)(2) (2006), *Ocean State Power*, 75 FERC ¶ 61,093 at 61,316 n.11 (1996), except in limited circumstances which the California Parties have not shown here. To the contrary, the California Parties are seeking leave to answer for a purpose not appropriate for such answers. After taking the liberty of recharacterizing the IPE Answer as a Motion, the California Parties, as described above, have submitted a filing designed to cause the Commission to inadvertently make statements not in accord with the record, so that the California Parties can use such statements in their contract litigation. This purpose is not an appropriate purpose for an answer to an answer. Accordingly, IPE request that the California Parties' request for leave to answer be denied.

## II. CONCLUSIONS

For the foregoing reasons, IPE respectfully request that the Commission reject the unauthorized "Answer" to an answer filed by the California Parties. That "Answer" is but one of a series of filings designed to obtain orders from this Commission colored by a view of the facts which is not in accord with the facts of record (or of history) and the Commission should carefully resist the efforts of the California Parties to use this Commission's processes to revise history.

Respectfully submitted,

/s/ *Robert C. McDiarmid*

Robert C. McDiarmid

Attorney for
the Northern California Power
Agency, on behalf of Indicated
Public Entities

Law Offices of:
Spiegel & McDiarmid
1333 New Hampshire Avenue, NW
Washington, DC 20036
(202) 879-4000

May 14, 2007