IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY, SOUTHERN CALIFORNIA EDISON COMPANY, AND CALIFORNIA ELECTRICITY OVERSIGHT BOARD,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 07-157C<br>(Senior Judge Smith) |
| SAN DIEGO GAS AND ELECTRIC COMPANY, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 07-167C<br>(Senior Judge Smith) |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTIONS FOR MORE DEFINITE STATEMENT AND TO STAY PROCEEDINGS**

Pursuant to Rule 7 of the Rules of the United States Court of Federal Claims ("RCFC"), we respectfully submit this reply to plaintiffs' opposition to our motions to stay and for more definite statement. In our motion to stay, we established that it was reasonable for the Court to stay this matter pending potential proceedings in the United States Supreme Court related to Bonneville Power Administration v. FERC, 422 F.3d 908 (9th Cir. 2005). Plaintiffs do not dispute that the Supreme Court's reversal of Bonneville could potentially moot this case. The Court should, accordingly, grant our motion to stay. Likewise, we requested that plaintiffs

provide a more definite statement of their claims that we breached and repudiated contracts with them. Plaintiffs assert that their complaint is sufficiently clear, but their explanation is unpersuasive, and the Court should thus grant our motion for more definite statement.

## ARGUMENT

### I. The Court Should Grant Our Motion To Stay

#### A. Our Motion Is Consistent With Our Positions In Other Fora

Plaintiffs characterize our motion to stay these proceedings as a gambit undertaken in furtherance of a larger strategic effort to shirk our alleged liability for the events surrounding the California electricity crisis. Pl. Opp. 9-11.[1] The truth is more mundane. The potential reversal of Bonneville would moot these proceedings — plaintiffs do not contest this — and we see no point in pressing forward with litigation in this Court while that remains a possibility.[2] Staying these proceedings is a practical and reasonable course of action that would hardly work the "grave injustice" that plaintiffs predict.

Contrary to plaintiffs' claims, our request that the Court issue a stay is entirely consistent with our posture in the United States Court of Appeals for the Ninth Circuit. We are not forsaking our victory in Bonneville now that a contrary position suits us, as plaintiffs contend. Pl. Opp. 9. We merely recognize that the Supreme Court could overturn Bonneville. In doing so, we hardly abandon our view, shared by the Ninth Circuit, that FERC's attempt to exercise

---

[1] "Pl. Opp. ___" refers to Plaintiffs' Memorandum Opposing Defendant's Motion to Stay and More Definite Statement, filed on June 13, 2007. "Pl. App. ___" refers to the appendix attached to plaintiffs' June 13, 2007 memorandum. "Def. Mot. ___" refers to our motion to stay and for more definite statement, filed on May 11, 2007. "Def. App. ___" refers to the appendix attached to this reply.

[2] Supreme Court proceedings remain viable. Plaintiffs recently, and successfully, requested that the Supreme Court allow them more time to file a petition for a writ of certiorari, which is now due on July 20, 2007. Def. App. 30-39.

jurisdiction over our power sales offended the plain language of the Federal Power Act. Instead, we acknowledge that the Supreme Court might take a different view, and that any ruling from the Supreme Court could dramatically alter these proceedings.

Nor does our request for a stay conflict with our successful opposition in the Ninth Circuit to plaintiffs' effort to stay the remand of Bonneville pending the filing of a petition for a writ of certiorari.[3] As plaintiffs emphasize, we noted before the Ninth Circuit that it was "highly unlikely" that the Supreme Court would grant plaintiffs' petition, should one be filed. Pl. Opp. 9. Our request for a stay in this Court comports with this assessment; the improbability of certiorari means that any stay in these proceedings will likely be limited in duration. If plaintiffs do not file a petition for a writ of certiorari, these proceedings can continue apace before the end of summer. If plaintiffs do file a petition and the Supreme Court denies it, the proceedings in Bonneville should terminate before the end of this year, a minor delay. If the Court grants certiorari, then the justification for a stay will deepen, and further delay in these proceedings will be a necessary consequence of plaintiffs' own success before the Supreme Court.

Finally, our recent filings before FERC concerning FERC procedures in light of Bonneville do not contradict our current position. Plaintiffs argue that our reliance upon Bonneville before FERC — where we were faced with an immediate and meritless challenge to Bonneville's mandate by plaintiffs — precludes us from pointing out here that Bonneville could be subject to reversal. Pl. Opp. 10-11. This is sophistry. Bonneville is the law, and plaintiffs forced us to rely upon it with their motion before FERC. The Supreme Court might change the

[3] Plaintiffs' eagerness to proceed in this case, on the other hand, directly contradicts their attempt to delay the issuance of the mandate in Bonneville. See Pl. App. A11.

law; recognizing this reality in no way contradicts our simultaneous fidelity to Bonneville's current mandate.

**B. There Is A Strong Basis To Stay This Matter**

Plaintiffs assert that their potential petition for a writ of certiorari is a legally insufficient ground upon which the Court may stay this matter. Pl. Opp. 11. They cite the factors enumerated in Cherokee Nation of Okla. v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997), and various other considerations, and assert that a denial of our motion is required. Pl. Opp. 11. Plaintiffs are mistaken. It is well within the Court's discretion to grant a stay in this case, and we respectfully suggest that the Court should do so.

As an initial matter, we do not believe that Cherokee Nation is, as plaintiffs claim, the governing legal standard. Cherokee Nation applies when this Court seeks "to stay proceedings indefinitely." Id. at 1416. We have not asked for an indefinite stay; we have asked for a stay until the completion of proceedings in the Supreme Court, should any be undertaken. As we noted in our motion to stay, any stay in this matter is likely to end when the Supreme Court denies certiorari; if the Court grants certiorari, proceedings in the Supreme Court would obviously continue, but the need for a stay would also be greater. Either way, the potential proceedings in the Supreme Court would be far shorter in duration than the proposed period for a stay in Cherokee Nation, which depended upon an unfiled action to quiet title that the parties agreed could take "decades" to resolve. Id. at 1416.

Moreover, even if we are required to demonstrate some sort of "pressing need" or "hardship or inequity," this case easily meets that standard. This matter is exceedingly complex, related matters have been the subject of litigation for years, and plaintiffs seek hundreds of millions of dollars in damages in this litigation. If the Court does not stay this matter, both the

parties and the Court will be forced to continue to invest significant resources in this case, an investment entirely unnecessary should the Supreme Court overturn Bonneville.

Plaintiffs erroneously assert that we have "effectively conceded" that there is no need for a stay in this matter, relying again upon our representations in the Ninth Circuit regarding Bonneville and claiming that we are "judicially estopped from arguing the opposite position to this Court." Pl. Opp. 12. As we demonstrate above, our request for a stay in this Court in light of the potential for proceedings in the Supreme Court is not the "opposite" of our position in the Ninth Circuit — it is no contradiction to recognize both the current force of Bonneville and the power of the Supreme Court to overturn Bonneville. We established in our initial motion that there is a need for a stay in this matter, and we are not estopped from making this argument.

Plaintiffs' also quibble with our characterization of Bonneville as not "final." Pl. Opp. 13. We understand the technical definition of finality; our argument regarding potential Supreme Court review has nothing to do with that definition, which is accordingly irrelevant. Plaintiffs' argument regarding the progress made in Bonneville is equally meritless. They assert that the litigation in Bonneville is "effectively over." Pl. Opp. 13. Plaintiffs are certainly free to represent to the Court that they do not intend to seek certiorari from the Supreme Court. Until they do so, or until the time for their petition has expired, it is simply inaccurate to characterize the Bonneville litigation as "over."

Plaintiffs also take issue with our characterization of Bonneville as "duplicative litigation." Pl. Opp. 13. As we established in our motion to stay, plaintiffs seek to recover in this Court the same amounts at issue in Bonneville. Def. Mot. 14. Plaintiffs do not dispute this in their opposition, presumably because they filed suit in this Court at the suggestion of the Bonneville court, which raised the possibility of "equivalent refund relief" in a contract action.

Bonneville, 422 F.3d at 925. Instead, plaintiffs assert that this matter does not duplicate Bonneville because the cases will not require duplicative discovery or resolution of the same factual or legal issues. Pl. Opp. 13. This is true, but it side-steps the straightforward basis for our motion, which is that a decision from the Supreme Court in Bonneville could moot this matter. From that perspective, parallel litigation here is undeniably duplicative.

Finally, we did not misstate the holdings of Pennsylvania Railroad Co. v. United States, 363 U.S. 202 (1960), and Loveladies Harbor, Inc. v. United States, 27 F.3d 1545 (Fed. Cir. 1994), as plaintiffs contend. Pl. Opp. 14. These cases demonstrate that it is appropriate for this Court to stay a case when proceedings in another forum could affect the nature, necessity, and validity of the case. Def. Mot. 15. Plaintiffs try to distinguish Pennsylvania Railroad by noting that it involved a plaintiff who sought to stay a case in the Court of Claims while seeking review of an agency decision that undercut its court case. Pl. Opp. 14. Plaintiffs contend that their case is different, that they are not seeking review of an agency decision that defeats their claim in this Court. Plaintiffs are, however, potentially seeking review of an agency decision that could moot their claim here. In this respect, this case does not differ materially from Pennsylvania Railroad or Loveladies Harbor; in both cases, as here, proceedings elsewhere had a significant impact upon proceedings in this Court. A stay in those cases was appropriate, and a stay here is equally appropriate.

**C. A Stay In This Court Would Not Aid Us Before FERC**

In their opposition to our motion to stay, plaintiffs repeatedly accuse us of attempting to delay these proceedings while we seek favorable relief from FERC. Pl. Opp. 10, 11, 13, 15. These accusations are entirely without foundation. The mandate issued in Bonneville on April 5, 2007. See Pl. App. A21. Plaintiffs, not the Government, filed the first motion at FERC,

requesting that FERC continue, among other things, to calculate refund amounts and order the ISO and PX to retain receivables owed to, and collateral posted by, the governmental entities. Def. Mot. 11 n. 2; Def. App. 7-10. In fact, plaintiffs did so for the express purpose of aiding their efforts in this Court. Def. App. 10 n. 20 (citing these proceedings). We in turn filed a motion and response in which we argued that, pursuant to Bonneville, FERC has no jurisdiction to order the Government to do anything, and we requested that FERC dismiss us from its refund proceedings and order all outstanding accounts receivable paid. Pl. App. A21.

Plaintiffs claim that we declined to capitulate to their arguments before FERC because we hoped to prevent the ISO and PX from issuing invoices and because we sought to "undermine the IOUs' contractual right to collateral."[4] Pl. Opp. 10. As our FERC filing makes clear, our intent was instead to prevent plaintiffs' own attempt to compel FERC to interfere with this litigation. Although we disputed vigorously before FERC plaintiffs' contentions that FERC had retroactively amended the tariffs at issue here — the central thesis of plaintiffs' claims — we also made very clear that we sought no ruling to that effect. Pl. App. A25-33, A46. Instead, we sought merely the relief to which Bonneville entitled us, which was to be free of FERC's jurisdiction.[5] Pl. App. A34.

Further, plaintiffs' assertion that our "only evident motive" in seeking a stay in these proceedings is to avoid an adverse ruling is meritless. Pl. Opp. 15. In fact, our motive in

---

[4] While we did argue broadly for the return of any collateral posted by governmental entities (such as municipal utilities) still held by the California Power Exchange, we also noted that neither BPA nor WAPA have posted any such collateral. Pl. App. A21 n. 3. Plaintiffs' argument that we are attempting to undermine their right to our collateral is thus misplaced.

[5] Plaintiffs assertion that our reliance upon Bonneville before FERC somehow violates our duty of good faith and fair dealing is baseless. Pl. Opp. 19 n. 16. That duty cannot require us to relinquish jurisdictional arguments before FERC, especially when those arguments are based upon a mandate issued by the Ninth Circuit.

seeking a stay in this matter is to conserve the resources of the parties and the Court, not to avoid adverse precedent. An adverse decision from this Court would have no bearing upon litigation elsewhere — avoiding a judgment from this Court does not help us in some other forum.

## II. The Court Should Grant Our Motion For More Definite Statement

### A. Plaintiffs Should Provide A More Definite Statement Regarding Their Breach Claim

Plaintiffs assert that our motion for more definite statement concerning their breach of contract claim is "not credible in light of the specificity provided in the Complaint." Pl. Opp. 18. Plaintiffs highlight portions of their complaint, reference Alliant Energy v. Neb. Pub. Power Dist., 347 F.3d 1046 (8th Cir. 2003), and maintain that they should not have to provide a more definite statement because we understand their complaint well enough to foreshadow a defense to it. Pl. Opp. 18-19. Plaintiffs' arguments lack merit.

As we noted in our motion for more definite statement, we do not understand how we could have breached a contractual payment obligation if our payment is not yet late. Def. Mot. 10-11. Plaintiffs state that our obligation became due "[u]pon FERC's correction of the rates charged by sellers," but their complaint also references provisions of the tariffs that provide for the re-running of invoices "if necessitated by disputes, errors, FERC directives, or for other good cause, at any time." Pl. Opp. 19; PG&E Compl. ¶ 40 (relying upon ISO Tariff § 11.6.3 and PX Operating Manual (PSABP) §§ 5.3.1 – 5.3.5). Plaintiffs now contend that these provisions are not a "condition precedent" to our obligation to perform. Pl. Opp. 19 n. 16. This contention is a helpful clarification, but it also directly contradicts the complaint's reliance upon the tariffs' invoice re-running provisions. See PG&E Compl. ¶ 40. The Court should require plaintiffs to

formally resolve this ambiguity; absent such resolution, we do not know how to respond to plaintiffs' complaint.

**B. Plaintiffs Should Provide A More Definite Statement Regarding Their Anticipatory Breach Claim**

In our motion for more definite statement, we requested that the Court order plaintiffs to provide a more definite statement regarding their claim that we have anticipatorily breached a contractual obligation. Def. Mot. 12-13. The basis of our motion was practical. In their complaints, plaintiffs point to a large universe of documents and potential statements, leveling at us broad accusations of repudiation. See PG&E Complaint ¶ 78; SDG&E Complaint ¶ 70. As we noted in our motion for more definite statement, a claim of anticipatory breach depends upon a distinctly communicated refusal to perform under a contract. Def. Mot. 12. Because plaintiffs must know, pursuant to Rule 11, exactly which of our statements constituted such a refusal, it seemed reasonable to require plaintiffs to identify such statements.

In their opposition to our motion, plaintiffs repeat their general allegations that we have repudiated our obligations, but they decline to provide more detail. Pl. Opp. 20-22. Instead, they assert that at "every stage" of litigation between the parties, we have "taken actions and positions inconsistent with acknowledging any contractual or other obligations to pay refunds to the IOUs." Pl. Opp. 21. Plaintiffs cite as an example of repudiation a sentence in a footnote in a FERC brief in which we joined last month, more than two months after plaintiffs' complaints were filed in this Court. Id.

If our repudiations are as obvious as plaintiffs claim, then providing us with some identifying details hardly seems burdensome. We could, of course, obtain this information in discovery, but we must respond to plaintiffs' complaints first, and we cannot do so blindly.

Plaintiffs assertion that we know what our "own prior statements are," and that we know our position on their repudiation claim, is no help. We do not, in fact, know exactly which of our communications they consider to have anticipatorily repudiated our alleged contractual obligations. Accordingly, we cannot meaningfully respond to their allegations, and the Court should order plaintiffs to provide a more definite statement of their anticipatory breach claim.

## CONCLUSION

For the foregoing reasons, we request that the Court grant our motions for more definite statement and to stay, or, in the alternative to our motion to stay, our motion to enlarge.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ Jeanne E. Davidson by Bryant G. Snee
JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0475
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:
Sean B. McNamara
Trial Attorney
Department of Justice

Peter Burger
Attorney
Bonneville Power Administration

John D. Bremer
Attorney
Western Area Power Administration

July 9, 2007

CERTIFICATE OF FILING

I hereby certify that on this 9th day of July, 2007, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTIONS FOR MORE DEFINITE STATEMENT AND TO STAY PROCEEDINGS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Mark A. Melnick