# Appendix

## **Index to Appendix**

California Parties' FERC motion following BPA remand, dated April 2, 2007 .................1
Application for extension of time in Supreme Court, dated May 17, 2007.......................30

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| San Diego Gas & Electric Company,<br>Complainant, | ) | |
| | ) | |
| v. | ) | Docket Nos. EL00-95-000, *et al.* |
| | ) | |
| All Sellers of Energy and Ancillary Services Into Markets Operated by the California Independent System Operator Corporation and the California Power Exchange,<br>Respondents. | ) | |
| | ) | |
| Investigation of Practices of the California Independent System Operator Corporation and the California Power Exchange | ) | Docket Nos. EL00-98-000, *et al.* |

**CALIFORNIA PARTIES' MOTION FOR PROCEDURES FOLLOWING REMAND IN *BONNEVILLE POWER ADMINISTRATION, et al. v. FERC***

Pursuant to Rule 212 of the Commission's Rules of Practice and Procedure,[1] the California Parties[2] respectfully request that the Commission adopt the

[1] 18 C.F.R. § 385.212 (2006).

[2] The California Parties are the People of the State of California, *ex rel*. Edmund G. Brown Jr., Attorney General, the California Electricity Oversight Board, the California Public Utilities Commission, Pacific Gas and Electric Company, San Diego Gas & Electric Company, and Southern California Edison Company.

following procedures when the United States Court of Appeals for the Ninth Circuit (Ninth Circuit) issues the mandate in *Bonneville Power Administration v. FERC* (*BPA*).[3]

First, consistent with its orders previously issued in this proceeding, the vast number of which are entirely unaffected by the *BPA* opinion, and with the *MAPP*[4] precedents, the Commission should ensure that the California Independent System Operator Corporation (ISO) and the California Power Exchange Corporation (PX) complete their calculations of wholesale energy transaction overcharges using the mitigated market-clearing price (MMCP) methodology, without regard to whether or not such transactions involved the Governmental Entities.[5]

Second, to facilitate this process, the Commission should order those Governmental Entities that wish to make a cost filing in order to offset their potential

---

[3] *See generally Bonneville Power Admin. v. FERC*, 422 F.3d 908 (9th Cir. 2005) (*BPA*), *reh'g denied*. Last week, the Court denied California Parties' Motion to Stay Issuance of the Mandate in *BPA*. Order, issued in *Bonneville Power Admin. v. FERC*, Nos. 02-70262, *et al*. (Mar. 28, 2007). Accordingly, the mandate will likely issue this Wednesday. *See* Fed. R. App. P. 41(b) (providing that the mandate will issue seven days after denial of a motion to stay the mandate, but that the court may shorten or extend this time). The California Parties previously advised the court that one or more of the California Parties is planning to seek a grant of certiorari in the Supreme Court of the United States concerning *BPA*. Though the California Parties cite to *BPA* in its current form, nothing here should be construed as waiving the arguments that may be advanced by one or more California Parties that *BPA* was incorrectly decided.

[4] In 1999, the Commission ordered the Mid-Continent Area Power Pool (Power Pool) to re-price a large number of transmission sales. *Mid-Continent Area Power Pool*, 87 FERC ¶ 61,075 (1999) (*MAPP I*), *reh'g denied*, *Mid-Continent Area Power Pool*, 89 FERC ¶ 61,135 (1999) (*MAPP II*); *see also Alliant Energy, Inc. v. Neb. Pub. Power Dist.*, 2001 U.S. Dist. LEXIS 17802 (D. Minn. Oct. 18, 2001), *aff'd*, *Alliant Energy v. Neb. Pub. Power Dist.*, 347 F.3d 1046 (8th Cir. 2003) (*Alliant*).

[5] The term "Governmental Entities" means all sellers of electric power that are not "public utilities" as defined by 16 U.S.C. § 824 (Supp. 2006). It includes rural electric cooperatives receiving Rural Utilities Service financing, whether or not such entities are affiliated with a state or local government.

liability for overcharges, as provided in the Commission's August 8, 2005 Order,[6] to do so within five business days of the Commission's ruling on this motion.

Third, the Commission should follow the precedent established in *Constellation* and its progeny[7] and require that the ISO and PX continue to retain the collateral of all market participants, including the Governmental Entities, until the ISO and PX have completed their calculations and market participants' accounts have been adjusted and settled accordingly.

Fourth, the Commission should defer for now the treatment of any shortfall or allocation issues that may arise as a result of implementation of the *BPA* opinion. The California Parties are pursuing claims in federal and state courts to enforce against the Governmental Entities their contractual obligations to repay amounts they received for transactions in the ISO and PX markets in excess of the prices determined by the Commission to be just and reasonable under the MMCP methodology. Depending on the outcome of that litigation, shortfalls could be created that would need to be addressed by

[6] *San Diego Gas & Elec. Co.*, 112 FERC ¶ 61,176 (2005); *see also San Diego Gas & Elec. Co.*, 114 FERC ¶ 61,070 (2006).

[7] In a series of cases, the Commission has interpreted the ISO and PX Tariffs to require sellers to maintain their collateral until such time as their account have been both billed and settled. *See* discussion *infra* at II.C; *see also Constellation Power Source, Inc. v. Cal. Power Exch. Corp.*, 100 FERC ¶ 61,124 (2002), *reh'g denied*, 100 FERC ¶ 61,380 (2002), *reh'g denied*, 111 FERC ¶ 61,147 (2005), *aff'd*, *Constellation Energy Commodities Group, Inc. v. FERC*, 457 F.3d 14 (D.C. Cir. 2006) (*Constellation*); *PG&E Energy Trading-Power, L.P. v. Cal. Power Exch. Corp.*, 102 FERC ¶ 61,091 (2003); *Powerex Corp. v. Cal. Power Exch. Corp.*, 102 FERC ¶ 61,328, *reh'g denied*, 104 FERC ¶ 61,119 (2003), *aff'd*, *Constellation Energy Commodities Group, Inc. v. FERC*, 457 F.3d 14 (D.C. Cir. 2006); *La Paloma Generating Co., LLC*, 110 FERC ¶ 61,386 (2005), *reh'g denied*, 118 FERC ¶ 61,189 (2007).

the Commission. However, it would be premature and inappropriate to address such potential shortfalls now, while the judicial proceedings are in an early stage.

## I. BACKGROUND

On July 25, 2001, the Commission issued an order in these proceedings finding that the rates for all power sales to and from the ISO and PX during the October 2, 2000 through June 20, 2001 Refund Period were unjust and unreasonable (with an exception for certain purported "non-spot" transactions), and correcting and revising the tariffed rates pursuant to the MMCP methodology.[8] Additionally, the Commission held in the July 25, 2001 Order that all sellers into the markets who sold at prices in excess of the revised rates, including the Governmental Entities, should pay refunds for the excess amounts charged.[9] Hearings were held in 2002 concerning the ISO's and PX's application of the Commission orders, and, based on orders issued thereafter, the ISO and PX have been implementing the MMCP methodology in order to recalculate rates for the Refund Period. Because of the number and complexity of the market transactions involved, these calculations have been enormously difficult and time-consuming.

On December 19, 2001, the Commission revised certain computational aspects of the MMCP methodology, but upheld the determinations in its July 25, 2001 Order that: (1) the pricing for all transactions in the ISO and PX markets should be corrected consistent with the MMCP methodology, and (2) all sellers, including the

---

[8] *San Diego Gas & Elec. Co.*, 96 FERC ¶ 61,120 at 61,516-19 (2001) (July 25, 2001 Order).

[9] *Id.* at 61,511-14.

Governmental Entities, would be obligated to pay refunds based on the revised tariff rates.[10] Numerous parties filed appeals, which were consolidated in the Ninth Circuit. In addition, numerous other orders have been entered by the Commission in these proceedings, and numerous additional petitions for review have been filed arising out of those orders.

In November 2004, the Ninth Circuit issued orders establishing a phased and bifurcated appeal procedure for the various issues arising from the pending petitions for review. In particular, the court directed an initial phase of briefing, broken into two separate appellate dockets. The first docket considered whether the Commission had exceeded its authority by ordering all sellers, including the Governmental Entities, to pay refunds pursuant to the revised tariff rates. The second docket considered whether the Commission had erred in the broad scope of its finding that prices should be revised for all ISO and PX transactions (other than so-called "non-spot" transactions) during the Refund Period.

The first appellate docket led to the issuance of the *BPA* decision in September 2005. In that decision, the Ninth Circuit held that the Commission exceeded its own authority by directing the Governmental Entities to pay refunds.[11] However, the *BPA* court also explicitly suggested that a private contractual remedy might be available to compel the Governmental Entities to repay their overcharges, citing to the example of

---

[10] *See San Diego Gas & Elec. Co*, 97 FERC ¶ 61,275 (2001).

[11] *See BPA*, 422 F.3d at 925-26.

the *Alliant* case in which the courts enforced against a governmental entity a Commission refund order for transactions in the MAPP Power Pool, based on a breach of contract theory.[12]

The second appellate docket led to the issuance of *Public Utilities Commission of California v. FERC* (*CPUC*) on August 2, 2006.[13] In *CPUC*, the Ninth Circuit rejected challenges by many parties (including the Governmental Entities) who argued that revision of the tariff rates pursuant to the MMCP methodology should be applied only to a subset of the Refund Period ISO and PX transactions. Additionally, the court held that the Commission had erred when it excluded certain ISO and PX transactions (those of more than twenty-four-hour duration and energy exchanges) from the scope of its revisions and had similarly erred when it rejected relief for the May 1, 2000 through October 1, 2000 period (Summer Period), when prices were also far in excess of the MMCP. In order to facilitate settlement discussions, the court postponed the date for parties to seek rehearing of that decision. Thus, pursuant to the Federal Rules of Appellate Procedure, the mandate in *CPUC* will not issue at least until after rehearing petitions are heard and resolved.

[12] *Id.*

[13] *Pub. Utils. Comm'n of Cal. v. FERC*, 462 F.3d 1027 (9th Cir. 2006) (as amended Aug. 31, 2006).

## II. ARGUMENT

### A. The Commission Should Follow the *MAPP/Alliant* Precedent and Require the ISO and PX to Continue Implementing the MMCP Methodology, Including Adjustment of Transactions Involving the Governmental Entities

Rather than now excluding the Governmental Entities from the recalculation process and starting back at square one, the only appropriate approach, as discussed below, is for the ISO and PX to continue their re-runs of <u>all</u> market participants' transactions. There should be <u>no</u> exceptions for the Governmental Entities' sales and purchases. Calculation of overcharges for <u>all</u> transactions and <u>all</u> market participants is the only legally-correct approach and it is by far the more efficient and practical way to proceed.

#### 1. *BPA* recognized that a contract remedy likely exists to require the Governmental Entities to repay the overcharges they collected

At the outset, it is important to recognize what the *BPA* opinion does, and does not, hold. *BPA* does hold that the Commission itself lacks authority to order the Governmental Entities to refund the amounts by which they overcharged California customers when they sold energy and ancillary services through the ISO and PX markets.[14] However, *BPA* does *not* hold that the Commission erred in finding that <u>all</u> transactions in the ISO and PX markets during the Refund Period were overpriced, or erred by requiring that the tariffed rates for <u>all</u> such transactions be revised using the MMCP methodology. Indeed, given the single-price auction nature of the ISO and PX

[14] *See, e.g., BPA*, 422 F.3d at 925-26.

markets, it would have been impossible for the Commission to fulfill its mandate under the FPA without correcting the tariffed pricing for all transactions. These latter issues were not even the subject of the *BPA* appeal. Instead, the Commission's findings on rate issues were the subject of the *CPUC* appeal, in which the Ninth Circuit rejected all efforts by sellers to limit the scope of transactions subject to the MMCP methodology, and, in fact, found that the Commission had erred by failing to provide such relief for an even broader set of transactions. Because the mandate has not yet issued in *CPUC,* these latter issues remain within the exclusive jurisdiction of the Ninth Circuit, and are not subject to question before the Commission.

The *BPA* decision should not be over-read. *BPA* does not hold that the Governmental Entities may charge a market-clearing price for their tariff-governed sales that is higher than the market-clearing price that they pay for their simultaneous purchases under the same tariff. Nor does *BPA* hold that the Governmental Entities are entitled to a windfall by retaining overcharges that the Commission has determined to be unjust and unreasonable. Most particularly, *BPA* most certainly does not change the central fact - which the Ninth Circuit recognized and to which it adverted in its opinion - that the Governmental Entities entered into contracts that obligate them to comply with all tariffed terms and conditions governing the ISO and PX market transactions, including rates as reviewed and corrected by the Commission. As the *BPA* court explained, the

remedy for the Governmental Entities' overcharges likely rests "in a contract claim, not a refund action."[15]

In this regard, the court discussed the California Parties' potential contract remedy against the Governmental Entities at some length, noting that:

> [s]uch an approach is not novel, as illustrated by FERC's *MAPP* proceedings and the related cases in federal district and circuit court. MAPP is a power pool that includes both public utility and non-public utility transmission owners. In 1999, FERC concluded that portions of the MAPP tariff violated § 205 and ordered refunds from the MAPP members. 89 FERC ¶ 61,135 at 61,384 (1999). Although the Commission concluded that it could not order refunds from the Nebraska Public Power District ([NPPD]), a governmental entity/non-public utility, the Commission suggested that a contract action might provide a remedy for public utility members of MAPP against [NPPD]: "However, we need not and do not address whether nonpublic utility members of MAPP are nevertheless bound to take or refrain from taking any actions, including providing refunds, under the terms of any agreement." *Id*. at 61,387-88.[16]

The *BPA* court went on to cite the district court and United States Court of Appeals for the Eighth Circuit (Eighth Circuit) decisions in the *Alliant* case as pertinent examples of how such contract relief might be obtained against a Governmental Entity in court, notwithstanding the Commission's lack of authority to order such an entity to pay refunds directly, saying:

> [A]lthough FERC had no authority to order [the governmental entity, NPPD] to pay refunds, a contract action brought by the parties to the MAPP agreement could result in

[15] *Id.* at 925.

[16] *Id.*

> the equivalent refund relief from [NPPD]. The district court held that [NPPD] was contractually liable to pay refunds as a result of FERC's orders that changed MAPP's FERC-jurisdictional tariff and the MAPP agreement . . . .[17]

Because the Governmental Entity in *Alliant* had bound itself by contract to comply with the tariff, it made no difference to the availability of a contract remedy that the Commission lacked authority to order it to pay refunds. As the *BPA* court noted, citing the *Alliant* district court decision, the Governmental Entity in *Alliant* was "bound by the contract regardless of whether FERC has regulatory authority over [NPPD] itself."[18] The *BPA* court also quoted from the Eighth Circuit's opinion affirming the district court's conclusion: "When a contract provides that its terms are subject to a regulatory body, all parties to the contract are bound by the actions of the regulatory body. As a result, we are not enforcing the FERC order; instead, we are enforcing an agreement, which [NPPD] freely entered."[19]

Guided by the suggestions made in the *BPA* opinion, the California Parties have initiated civil litigation against the Governmental Entities in federal and state courts, just as the other Power Pool members sued NPPD in federal district court in *Alliant*.[20]

---

[17] *Id*. at 925-26.

[18] *Id*. at 926 (*quoting Alliant*, U.S. Dist. LEXIS 17802, at *14).

[19] *Id*. (*quoting* from *Alliant*, 347 F.3d at 1050 and omitting internal citation).

[20] In March 2007, the California Parties filed claims against Bonneville Power Administration and Western Power Administration in the United States Court of Federal Claims. *Pac. Gas & Elec. Co., et al. v. United States*, Case No. 07-157C (filed Mar. 12, 2007); *San Diego Gas & Elec. Co. v. United States*, Case No. 07-167C (filed Mar. 13, 2007). Claims against other Governmental Entities were filed in March 2006 in the U.S. District Court for the Eastern District of California. *Pac. Gas & Elec. Co., et al. v. Ariz. Elec. Coop., et al.*, Cause No. 2:06-CV-0559 (filed Mar 16, 2006); *San Diego Gas & Elec. Co. v. Ariz. Elec. Coop., et al.*, Cause No.

(Continued …)

### 2. The *MAPP/Alliant* case is on all fours with the facts here

The very Governmental Entities who sought appellate review of the Commission's authority to require them to repay their overcharges have conceded that the *MAPP* case is "directly analogous" to the case at bar.[21] The California Parties agree and urge the Commission to follow the precedent established in *MAPP/Alliant*.

In *MAPP*, the Commission found that members of the Power Pool, both public utilities and Governmental Entities, had overcharged for transmission services,[22] just as it found here that both public utilities and Governmental Entities overcharged for power sold through the ISO and PX markets.[23] The Commission ordered the Power Pool to re-calculate transmission charges,[24] just as it has here ordered the ISO and PX to re-calculate energy and ancillary service charges.[25]

One of the Governmental Entities in the Power Pool, NPPD, like the Governmental Entities here, refused to repay its overcharges. It argued that, because it was not a public utility, the Commission was powerless to enforce a refund order against

---

2:06-CV-0592 (filed Mar. 21 2006). Other claims have been filed by some of the California Parties in the California Superior Court in Sacramento. In March 2007, the claims in the Eastern District of California were dismissed on the ground that the court lacked subject matter jurisdiction. Those claims will shortly be re-filed in state court.

[21] *See* Joint Br. of Pub. Entity Petitioners and Petitioner/Intervenors in the Jurisdictional Cases at 41, filed in *BPA v. FERC*, Nos. 02-70262, *et al*. (9th Cir. Dec. 23, 2004).

[22] *See Alliant*, 347 F.3d at 1049; *BPA*, 422 F.3d at 925.

[23] *See, e.g., San Diego Gas & Elec. Co.*, 96 FERC ¶ 61,120 at 61,512 (2001) (establishing "a revised method for calculating the just and reasonable prices to be applied to [the ISO and PX] markets for the period beginning October 2, 2000").

[24] *See Alliant*, 2001 U.S. Dist. LEXIS 17802, at *7-8.

[25] *See San Diego Gas & Elec. Co.*, 96 FERC ¶ 61,120 at 61,512 (2001).

it.[26] Other members of the Power Pool brought a civil action against NPPD for failing to abide by its contractual obligations under the Commission-filed tariff,[27] just as the California Parties have brought civil actions against the Governmental Entities for failing to abide by their contractual obligations under the Commission-filed ISO and PX Tariffs. The district court ruled on summary judgment that NPPD was contractually obligated to abide by the Commission's refund order because the Power Pool Agreement - like the ISO and PX Tariffs - was subject to the Commission's jurisdiction, "regardless of whether FERC has regulatory authority over NPPD itself."[28] The Eighth Circuit affirmed, finding that because NPPD had agreed to be bound by the terms of the Power Pool tariff, it was bound "to any FERC-ordered modification of [that tariff] - despite the fact that FERC normally would not be able to order NPPD to do anything."[29]

Like NPPD, the Governmental Entities here are contractually bound to abide by the provisions of the relevant tariffs and the Commission's regulation and modification thereof, including the Commission's orders adjusting the rates that sellers could lawfully charge for sales in those markets. Significantly, virtually all of the Governmental Entities signed Scheduling Coordinator Agreements,[30] UDC

---

[26] *Alliant*, 347 F.3d at 1049.

[27] *See generally Alliant*, 2001 U.S. Dist. LEXIS 17802.

[28] *Alliant*, 2001 U.S. Dist. LEXIS 17802, at *14.

[29] *Alliant*, 347 F.3d at 1050.

[30] *See, e.g., Pac. Gas & Elec. Co.,* 82 FERC ¶ 61,326 at 62,283 (1998); *Cal. Indep. Sys. Operator Corp.,* 82 FERC ¶ 61,174 at 61,619 (1998) (listing parties with Scheduling Coordinator Agreements).

Agreements,[31] and Meter Service Agreements[32] with the ISO and signed Participation Agreements[33] with the PX; these agreements expressly incorporated, and committed the Governmental Entities to be bound by, the ISO and PX Tariffs. As in the *Alliant* case, the Governmental Entities are therefore contractually liable to repay overcharges that arise from "an agreement, which [they] freely entered."[34] The Commission's orders have unambiguously revised the pricing formulations contained in the ISO and PX Tariffs for the period to which the MMCP applies.[35] By holding that prices resulting from the formulations set forth in the pre-existing tariff provisions were unjust and unreasonable, and thus subject to revision through use of the MMCPs, the Commission effectively amended the tariffs by which the Governmental Entities agreed to abide. The Governmental Entities must abide by their agreements, and thus may receive no more than the amended tariffed prices.

---

[31] *See, e.g., Pac. Gas & Elec. Co.,* 82 FERC ¶ 61,326 at 62,284 (1998) (approving a UDC with City of Anaheim); *see also So. Cal. Edison Co.*, 89 FERC 61,009 at 61,039 n.5 (1999) (noting that "Anaheim entered into a [UDC] Agreement with the ISO. Pursuant to [which,] Anaheim agreed to be bound by the requirements of the ISO Tariff . . . .").

[32] *See, e.g.,* Letter Order issued in *Cal. Indep. Sys. Operator Corp.*, Docket No. ER98-1499-003 (Feb. 28, 2001) (approving Meter Service Agreements with multiple Public Entities).

[33] *See, e.g.,* Participant Agreement Index of Customers, filed in *Cal. Power Exch. Corp.*, Docket No. ER98-2095-000 (Jan. 25, 2001) (listing entities that had executed the Commission-authorized *pro forma* Participation Agreement as of December 31, 2000).

[34] *See BPA*, 422 F.3d at 925-26.

[35] The California Parties believe that, as a result of the Ninth Circuit's opinions in *Lockyer v. FERC*, 383 F.3d 1006 (9th Cir. 2004), *petition for cert. filed* (U.S. Dec. 28, 2006) (No. 06-888), and in *CPUC*, the Commission must also order the ISO and PX to apply the MMCP to rates charged during the Summer Period.

A very few of the Governmental Entities did not sign Scheduling Coordinator Agreements or Participation Agreements, but the Commission has held that the ISO and PX Tariffs nonetheless apply to all sales to the ISO and PX.[36] Thus, the Commission's revised prices under the ISO and PX Tariffs would apply to transactions involving such entities as well.[37] This is fair - by voluntarily electing to sell power in the Commission-regulated and tariffed ISO and PX markets, such Governmental Entities are appropriately bound as a matter of implied-in-fact contract by the rules that govern all transactions in those markets.

Critical for present purposes, in *MAPP* the Commission did not order the Power Pool to cease calculating the amount of NPPD's overcharge, even after NPPD complained, and even after the Commission found, that it lacked the authority to compel NPPD to refund its overcharges. Rather, the Power Pool completed its calculations and then billed NPPD.[38] As here, the recalculation in *MAPP* was a complex process that took far longer than originally expected. In fact, the Commission granted the Power Pool several extensions of time to complete the necessary calculations even though it was

---

[36] *See e.g., San Diego Gas & Elec. Co.*,109 FERC ¶ 61,218 at PP 66-68 (2004).

[37] *Id.*

[38] *See Alliant*, 2001 U.S. LEXIS 17802, at *8. Indeed, the Power Pool billed all of the governmental entity members and, with the exception of NPPD, all of the governmental entity members honored their obligations. *See*, *e.g.*, *Alliant*, 2001 U.S. LEXIS 17802, at *2-8 (noting that some of the plaintiffs in the *Alliant* case were non-public utility members of the Power Pool and that "all MAPP members, with one exception, adhered to the refund requirement and made refunds to all customers who had been over-billed. NPPD is the lone MAPP member that did not." (internal citation omitted)).

aware of NPPD's objections to the Commission's jurisdiction over it.[39] Those objections notwithstanding, the Commission directed the Power Pool to proceed with its recalculations, including recalculating NPPD's accounts.[40] The district court used those recalculations as the basis for its order granting relief to the overcharged purchasers, pointing out that "[i]n compliance with FERC's order, . . . MAPP . . . calculated refunds . . . . MAPP's calculations revealed that NPPD had overcollected by $2,396,578.63 . . . ."[41] Here, as in the *MAPP* case, the ISO's and PX's completion of their recalculation of all sellers' accounts will facilitate the speedy resolution of court actions to enforce the Governmental Entities' repayment liabilities.

In a recent brief filed by the Commission with the United States Court of Appeals for the District of Columbia Circuit, the Commission referenced the *Alliant* case and explained that even when the Commission has found that it could not order a Governmental Entity to refund overcharges, the Governmental Entity is still subject to the Commission's amendments to a tariff:

> [S]ubsequent breach of contract proceedings in federal court found [NPPD,] a non-jurisdictional party to the pool tariff and contract[,] bound by FERC's regulatory changes to the tariff and contract, even though FERC could not regulate the non-

---

[39] *See*, *e.g*., Notice of Further Extension of Time at 1-2, issued in Docket Nos. OA97-163-000, *et al*. (Aug. 16, 1999); *Mid-Continent Area Power Pool*, 89 FERC ¶ 61,135 at 61,387-89 (Nov. 1, 1999) (stating that the Commission lacked jurisdiction over NPPD): Notice of Extension of Time at 1, issued in Docket Nos. OA97-163-009, *et al*. (June 16, 2000).

[40] *See Alliant*, 2001 U.S. Dist. LEXIS 17802, at *8.

[41] *Id.*

> jurisdictional entity directly. *Alliant Energy v. Nebraska Public Power Dist.*, 347 F.3d 1046, 1050-51 (8th Cir. 2003).[42]

The Commission further explained to the court that "[c]iting *Alliant*, [the *BPA* court] recognized that a non-jurisdictional entity that enters into a contract subject to FERC regulation [as the Governmental Entities did in California] can be liable to the other parties to the agreement for breaches of the agreement as modified by the Commission."[43] Given the close similarities between the case at bar and the *MAPP/Alliant* case, the Commission should follow the precedent established in *MAPP/Alliant* and ensure that the ISO and PX calculate the refunds owed by all sellers, including the Governmental Entities.

**3. Requiring the ISO and PX to rerun the markets to exclude Governmental Entities would be inefficient, impractical, and unlawful**

Maintaining the status quo - that is requiring the ISO and PX to continue to calculate overcharges for all participants, including Governmental Entities, so that we know, for example, that Governmental Entity X overcharged the markets by Y dollars - provides exactly the information that will facilitate resolution of the California Parties' breach of contract lawsuits against the Governmental Entities. If the ISO and PX continue to calculate the Governmental Entities' overcharges and the Governmental Entities are found liable on the contract claims, the overcharge calculations will, as they did in the *MAPP/Alliant* case, provide a ready measure of damages. If, on the other hand,

---

[42] Br. of Respondent FERC at 31-32, filed in *National Ass'n of Reg. Util. Comm'rs v. FERC*, Nos. 04-1148, *et al.*, 2006 WL 2287160 at *31-32 (D.C. Cir. July 31, 2006).

the Governmental Entities are found not liable to repay their overcharges, the ISO and PX can zero out those amounts with the stroke of a pen (or keyboard), and allocate the shortfall to the market.

The alternative would be enormously disruptive and costly, and ultimately pointless. The ISO and PX would have to re-design their MMCP calculation methodology, revise the vast market transaction data sets to exclude the Governmental Entities' transactions (if such a step were even feasible), and begin the multi-year calculation process all over again.[44] The result, after several years' time and enormous expense, would be no more useful to anyone than completing the current calculations. That is, if the Governmental Entities are found not liable to repay their overcharges, a revised multi-year calculation effort will not put them in a better position that the alternative proposed above of simply zeroing out the overcharge balance for the Governmental Entities. Put simply, trying to exclude Governmental Entities from the overcharge calculation process is a pointless and costly diversion yielding no real benefit.

In any case, the ISO and PX Tariffs do not provide any methodology for re-running the markets so as to exclude the Governmental Entities from the single-price auction provisions of the ISO and PX settlement system. New procedures and protocols would have to be created, and would be the subject of extensive litigation because it

---

[43] *Id.*

[44] The ISO recently filed its 33rd Status Report concerning the recalculation process. Thirty-Third Status Report of the Cal. Indep. Sys. Operator Corp. on Settlement Re-Run Activity, filed in Docket Nos. ER03-746-000, *et al.* (Mar. 19, 2007). Recalculation of the entire market for

(Continued …)

would be difficult or impossible to exclude the Governmental Entities in a way that is just, reasonable, and not unduly discriminatory. Litigation over the propriety of such new rules would no doubt require several more iterations of the already-costly and time-consuming ISO and PX reruns. Additionally, the whole process of excluding transactions from the calculations would be unlawful, given the Ninth Circuit's determination in *CPUC* that the Commission properly required mitigation of all Refund Period transactions with the ISO and PX, and the fact that the Ninth Circuit still retains jurisdiction over that issue.

### B. The Commission Should Order the Governmental Entities to Make Cost Filings if They Want the Benefit of Such Filings

The Commission has ruled that sellers should be allowed an opportunity to demonstrate that application of the MMCP to their sales over the entire Refund Period would cause them to suffer a loss,[45] and ordered sellers to make such a showing no later than September 14, 2005.[46] In order to allow the ISO and PX to complete their recalculations, the Commission should order those Governmental Entities that wish to make a cost filing in order to offset their calculated overcharges to do so within five business days of the Commission's ruling on this motion.

---

such a long period of time and for so many market participants has been a long, complicated, and complex process.

[45] *See*, *e.g.*, *San Diego Gas & Elec. Co.*, 97 FERC 61,275 at 62,254 (2001).

[46] *See*, *e.g.*, *San Diego Gas & Elec. Co.*, 112 FERC ¶ 61,176 at Ordering Paragraph (D) (2005), as supplemented by Notice Granting Extension of Time, issued in Docket Nos. EL00-95-000, *et al*. (Aug. 26, 2005).

The Governmental Entities have suggested in their requests for extension that the *BPA* opinion moots the needs for cost filings, because *BPA* eliminated their refund obligations. But as discussed above, *BPA* does not hold that Governmental Entities have no liability to repay the amounts they charged for energy in excess of Commission-determined just and reasonable rates. Rather, *BPA* shifts the responsibility for enforcing the Governmental Entities' obligations to repay their overcharges from the Commission to the courts. It remains the Commission's responsibility to determine the correct market-wide pricing under the ISO and PX Tariffs, and, to the extent that cost filings may serve to offset the calculated overcharges under the MMCP methodology, it remains the Commission's responsibility to adjudicate cost filing issues for any parties that desire to submit such filings.

Any further delay in addressing cost filings would have real consequences. The ISO and PX are in the process of recalculating tariffed charges for the Refund Period pursuant to the revised pricing methodology established by the Commission. Offsets resulting from cost filings are allocated market-wide, and the ISO and PX cannot complete their task if cost filing issues for some market participants remain outstanding. In order to facilitate the ISO and PX recalculations necessary to comply with *MAPP/Alliant*, the Commission should order those Governmental Entities that are eligible to make a cost filing to do so now.

This requirement would not impose any undue hardship on the Governmental Entities. The cost filings should be nearly completed, because the Commission granted the Governmental Entities a postponement just one day before the

cost filings were originally due.[47] In light of that timing, any Governmental Entity that wishes to avail itself of a cost filing should have no difficulty in submitting it within five business days of Commission action on this motion. Governmental Entities that choose not to file by that date should be held to have waived their opportunity to do so, and the Commission should then instruct the ISO and PX to complete their calculations for all buyers and sellers, including the Governmental Entities.

### C. The Commission Should Follow the *Constellation* Precedent and Require the ISO and PX to Continue to Retain the Governmental Entities' Collateral Until the ISO and PX Have Completed Their Calculations and the Governmental Entities' Accounts Have Been Billed and Settled

The Governmental Entities bought and sold power through the ISO and PX, and, pursuant to their contractual undertakings, they are subject to the same collateral requirements as other ISO and PX participants. The Commission should ensure that the Governmental Entities' collateral is maintained until the ISO and PX calculations are completed and their accounts have been billed and settled.

The PX Tariff defines a PX Participant as "[a]n entity that is authorized to buy or sell Energy or Ancillary Services through the PX, and any agent authorized to act on behalf of such entity."[48] Thus, the Governmental Entities were PX Participants. PX Participants, including the Governmental Entities, are required by the PX Tariff to maintain with the PX "sufficient collateral to cover [their] aggregate outstanding

---

[47] Notice of Extension of Time at 2, issued in Docket Nos. EL00-95-000, *et al.* (Sept. 13, 2005); *see also* Notice of Extension of Time, Docket Nos. EL00-95-000, *et al.* (Mar. 15, 2007).

[48] PX Tariff Appendix B, Master Definitions Supplement, First Revised Sheet No. 229.

liabilities . . . to and from the PX . . . during the period in which [their] liabilities are incurred and when payment is billed and settled."[49]

The *BPA* opinion does not alter the applicability of these tariff provisions. The Governmental Entities' contracts expressly incorporate all provisions of the ISO and PX Tariffs, including those provisions pertaining to billing and settlement. The ISO Tariff, in Section 19, provides for amendment of prices by the Commission and, in Section 11.6.3, provides for reruns and reissuance of settlement statements when prices have been revised. The PX Tariff has similar procedures.[50] Thus rebilling with revised prices as established by the Commission may proceed as a contractual matter, notwithstanding the limitation on the Commission's authority to order the Governmental Entities to pay refunds. The Governmental Entities' refusal to abide by such revised invoices is the essence of the ongoing federal and state court litigation. The process of resolving that dispute in the courts is not yet complete, so, by any measure, the transactions from the period are not yet finally "billed and settled." The Governmental Entities' collateral - and the status quo - should be preserved until that issue is finally decided.

As the Commission has held (absent settlement with the California Parties), the PX Participants' accounts cannot be billed and settled until the Refund Proceeding is

---

[49] *See* PX Tariff, Sched. 2, § 2.2.

[50] PX Tariff § 13 (providing for amendment of prices by the Commission); PX Operating Manual §§ 5.3.1-5.3.5 (providing for reruns and reissuance of settlement statements).

complete.[51] The Commission recently reaffirmed this holding, finding that "the Commission will not be able to determine [the final amount of refund liabilities] until the conclusion of the refund proceeding."[52] Obviously, the ISO and PX must complete their calculations before this can occur.

The D.C. Circuit upheld the Commission's interpretation of the PX Tariff, finding that:

> the Commission's position that the sellers' liabilities have not yet been "billed and settled" is both reasonable and consistent with precedent: Certainly decisions such as *Distriga*s in no way precluded the parties from entering into an agreement – more properly from maintaining and accepting a tariff – that provides [that] billing and settlement would not take place, and consequently collateral would be required, until any refund proceedings were complete.
>
> Indeed, we believe the Commission reasonably concluded [that] the parties did just that, with the result that

---

[51] *See Constellation Power Source, Inc.*, 100 FERC ¶ 61,124 at P 27 (finding that, due to "numerous ongoing contested proceedings regarding the transactions that occurred in the PX markets," the "final billing and settlement has not yet taken place [and] the trades made in the PX markets are not yet fully resolved"); *PG&E Energy Trading-Power, L.P.*, 102 FERC ¶ 61,091 at P 15 (refusing to release collateral because accounts are not billed and settled and holding that the PX Tariff also "requires that market participants maintain sufficient collateral to cover the estimated potential Cal ISO real-time aggregate outstanding liability to and from the CalPX") (*citing* Sched. 2, § 2.2 and App. B, Master Definitions Supplement, Real-Time Market Definition); *Powerex Corp.*, 102 FERC ¶ 61,328 at P 26 (refusing to release collateral because, as a result of the Hundred Days Evidence, it would be premature to release Powerex's collateral and that until recalculation is complete "the process of final billing and settling . . . cannot take place because its outstanding liabilities have not yet fully been resolved"); *La Paloma Generating Co., LLC*, 110 FERC ¶ 61,386 at PP 12-13, (refusing to release ISO collateral because, *inter alia*., "the Refund Proceeding has not yet been completed and . . . only after its completion will the liabilities of each supplier be determined").

[52] *La Paloma Generating Co*., LLC, 118 FERC ¶ 61,189 at P 17 (2007). While the D.C. Circuit case and many of the FERC collateral orders relate to the PX, the collateral at issue in *La Paloma* was held in the ISO. The same considerations that apply to PX collateral apply to ISO collateral.

> the sellers' liabilities for transactions during the refund period will not be "settled" until the Commission determines the maximum just and reasonable price at which they could lawfully sell power during the refund period. Furthermore, the Commission's interpretation, which will help ensure [that] "market participants meet their outstanding obligations and the ultimate CalPX creditors are paid," is consistent with both the text of § 2.2, which nowhere limits which liabilities must be collateralized, and the general purpose of the provision requiring that market transactions be secured. In sum, we believe the Commission reasonably concluded the sellers' total liabilities to the CalPX had not yet been "billed and settled"; consequently it did not err in permitting the PX to retain the sellers' collateral.[53]

Until the ISO and PX finish calculating the Governmental Entities' overcharges, bill the Governmental entities, and the Governmental Entities settle those accounts – until, in other words the Governmental Entities accounts have been billed and settled – court-approved Commission precedent and the PX Tariff require the Governmental Entities to maintain their collateral. Should the Governmental Entities choose to repay their overcharges, as did almost all of the Governmental Entities in the *MAPP/Alliant* proceeding, their collateral could be released. But because the Governmental Entities refuse, as did NPPD, to repay their overcharges until ordered to do so by the courts, their collateral must be maintained until such time as their accounts are actually billed and settled.

The fact that the total amount of the Governmental Entities' repayment obligation is likely to increase makes it even more important that the Commission require

---

[53] *Constellation Energy Commodities Group, Inc. v. FERC*, 457 F.3d 14, 21 (D.C. Cir. 2006) (referring to *Distrigas of Mass. Corp.*, 33 FERC ¶ 61,406 at 61,776 (1985)) (internal citation

(Continued …)

their collateral to be maintained. The Ninth Circuit has held that the Commission must reconsider whether, in addition to the refunds that the ISO and PX are currently calculating, refunds should also be available for sales made during the Summer Period,[54] for exchange transactions, and for sales made for periods in excess of twenty-four hours.[55] As the court noted, the California Parties have long argued that market-wide refunds are necessary for the Summer Period.[56] The Commission has not yet had an opportunity to engage in the reconsiderations required by the Ninth Circuit. Once it does, it is highly likely that the amount of refunds owed by any given seller will increase. Until the Commission makes that determination, accounts cannot be billed and settled and it is impossible for the Commission to determine whether a PX Participant's collateral exceeds its potential refund liability. Thus, the Ninth Circuit's *Lockyer* and *CPUC* opinions make it even more important for the Commission to ensure that, absent settlement, the ISO and PX retain all sellers' collateral until final billing and settlement take place.

### D. The Commission Should Defer Any Consideration of How to Address Shortfalls That Could Arise if the Relevant Courts Determine That a Governmental Entity May Escape Its Refund Liability

As noted above, the California Parties have filed civil litigation to enforce the Governmental Entities' contractual obligations to retain no more than the

---

omitted) (emphasis added).

[54] *See Lockyer v. FERC*, 383 F.3d 1006, 1018 (9th Cir. 2004), *petition for cert. filed* (U.S. Dec. 28, 2006) (No. 06-888).

[55] *See Pub. Utils. Comm'n of Cal. v. FERC*, 462 F.3d 1027, 1047-51 (9th Cir. 2006).

Commission-determined just and reasonable prices for their transactions. Depending on the outcome of that litigation, the Commission may be required to address new issues or reconsider its approach to other issues. For example, in the event a Governmental Entity does not pay its calculated refunds, among the issues that the Commission may have to consider is the potential adjustment of ISO and PX invoices for any such Governmental Entity, the amounts of such adjustments including the appropriate treatment of offsetting amounts owed to the Governmental Entity (on account of unpaid invoices) and from the Governmental Entity on account of overcharges, and the manner and mechanism for rebalancing the market (*i.e.*, allocating shortfalls).

These are complex and difficult issues that will have market-wide impacts, and neither the ISO and PX Tariffs, nor the Commission orders to date, provide undisputed methodologies for resolving these issues. Nor could they – the tariffs generally presume that parties will meet their tariff obligations and do not provide for the eventuality that an entire class of market participants might be allowed to violate the tariff with impunity.

There is no need for the Commission to address this tangle of issues now. If any such adverse judicial determination is rendered, the Commission and parties will then be in a position to evaluate the amounts at stake and the number of participants affected, and to then recommend and consider the best approach for resolving the situation. In the meantime, it is reasonable for the Commission to assume that the ISO

---

[56] *Id.* at 1049.

and PX Tariffs will be enforced against parties that contracted to abide by them – just as the MAPP Power Pool Agreement was enforced against NPPD – and to defer consideration until the situation arises, if it arises, of how to address an adverse judicial determination refusing to enforce the Commission's revised prices under the tariffs against one or more of the Governmental Entities.

## III. CONCLUSION

Wherefore, the California Parties respectfully request, as discussed above, that the Commission:

1. order the ISO and PX to complete their calculations of the overcharges owed by all parties, including the Governmental Entities;

2. set a date for the filing of the Governmental Entities' cost filings;

3. ensure that the ISO and PX continue to retain the Governmental Entities' collateral until their accounts have been billed and settled; and

4. defer for now the issue of how to deal with shortfalls that may arise in the future depending on the outcome of ongoing judicial proceedings.

Respectfully submitted,

*/s/ Elizabeth M. McQuillan*
RANDOLPH L. WU
MARY F. MCKENZIE
ELIZABETH M. McQUILLAN
Public Utilities Commission of the State of California
505 Van Ness Avenue
San Francisco, CA 94102

***Counsel for the Public Utilities Commission of the State of California***

*/s/ Richard L. Roberts*
RICHARD L. ROBERTS
CATHERINE M. GIOVANNONI
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

*/s/ Michael Mackness*
MICHAEL MACKNESS
Southern California Edison Company
2244 Walnut Grove Avenue
Rosemead, CA 91770

***Counsel for Southern California Edison Company***

*/s/ Kermit R. Kubitz*
MARK D. PATRIZIO
KERMIT R. KUBITZ
Pacific Gas and Electric Company
77 Beale Street, B30A
Post Office Box 7442
San Francisco, CA 94120

*/s/ Stan Berman*
STAN BERMAN
JOSEPH H. FAGAN
Heller Ehrman LLP
1717 Rhode Island Ave., N.W.
Washington, D.C. 20036

***Counsel for Pacific Gas and Electric Company***

_/s/ Steven Russo_
ERIK N. SALTMARSH
KRIS CHISHOLM
STEVEN RUSSO
California Electricity Oversight Board
770 L Street, Suite 1250
Sacramento, CA 95814

***Counsel for the California Electricity Oversight Board***

_/s/ Don Garber_
DON GARBER
San Diego Gas & Electric Company
101 Ash Street
San Diego, CA 92101

***Counsel for San Diego Gas & Electric Company***

_/s/ David M. Gustafson_
EDMUND G. BROWN JR.
Attorney General of the State of California
JAMES M. HUMES
Chief Deputy Attorney General
TOM GREENE
Chief Assistant Attorney General
1300 I Street, Suite 125
Sacramento, CA 95814

_/s/ Kevin J. McKeon_
KEVIN J. MCKEON
LILLIAN S. HARRIS
KATHERINE E. LOVETTE
Hawke McKeon Sniscak & Kennard LLP
Harrisburg Energy Center
100 North Tenth Street
Post Office Box 1778
Harrisburg, PA 17101

DAVID M. GUSTAFSON
Deputy Attorney General
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550

***Counsel for the People of the State of California, ex rel. Edmund G. Brown Jr., Attorney General***

Dated: April 2, 2007

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing document upon each person designated on the ListServ established in Docket Nos. EL00-95, *et al.*, in these proceedings.

Dated at Washington, D.C. this second day of April, 2007.

*/s/ Catherine M. Giovannoni*
Catherine M. Giovannoni
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000
cgiovann@steptoe.com

STEPTOE & JOHNSON LLP

ATTORNEYS AT LAW

Catherine M. Giovannoni
202.429.8072
cgiovann@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel 202.429.3000
Fax 202.429.3902
steptoe.com

May 17, 2007

**VIA HAND DELIVERY**

Honorable William K. Suter, Clerk
Supreme Court of the United States
One First Street, N.E.
Washington, D.C. 20543

Re: Pacific Gas and Electric Company, *et al.* v. Bonneville Power Administration, *et al.*

Dear Mr. Suter:

Enclosed for filing please find an original and two copies of an application for an extension of time within which to file a petition for a writ of certiorari to the United States Court of Appeals for the Ninth Circuit, including a Certificate of Service.

Please call me if you have any questions.

Sincerely,

Catherine M. Giovannoni

Catherine M. Giovannoni
Counsel for Southern California Edison Company

No. ________

IN THE

# SUPREME COURT OF THE UNITED STATES

PACIFIC GAS AND ELECTRIC COMPANY, ET AL.,
PETITIONERS,

v.

BONNEVILLE POWER ADMINISTRATION, ET AL.,
RESPONDENTS.

## APPLICATION FOR AN EXTENSION OF TIME WITHIN WHICH TO FILE A PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STAN BERMAN
JOSEPH H. FAGAN
Heller Ehrman LLP
1717 Rhode Island Ave., N.W.
Washington, D.C. 20036
(202) 912-2000

MARK D. PATRIZIO
KERMIT R. KUBITZ
Pacific Gas and Electric Company
77 Beale Street, B30A
Post Office Box 7442
San Francisco, CA 94120
(415) 973-2118
*Counsel for Pacific Gas and Electric Company*

CHARLES G. COLE
*Counsel of Record*
RICHARD L. ROBERTS
CATHERINE M. GIOVANNONI
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W. Washington, D.C. 20036
(202) 429-6270

MICHAEL MACKNESS
Southern California Edison Company
2244 Walnut Grove Avenue
Rosemead, CA 91770
(626) 302-2863
*Counsel for Southern California Edison Company*

May 17, 2007

*(Additional Counsel Listed on Next Page)*

EDMUND G. BROWN JR.
Attorney General of the State of California
JAMES M. HUMES
Chief Deputy Attorney General
THOMAS GREENE
Chief Assistant Attorney General
1300 I Street, Suite 125
Sacramento, CA 95814

DAVID M. GUSTAFSON
Deputy Attorney General
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550

KEVIN J. MCKEON
LILLIAN S. HARRIS
CRAIG R. BURGRAFF
KATHERINE E. LOVETTE
Hawke McKeon & Sniscak LLP
Harrisburg Energy Center
100 North Tenth Street
P.O. Box 1778
Harrisburg, PA 17101
*Counsel for the People of the State of California ex rel. Edmund G. Brown Jr., Attorney General*

ERIK N. SALTMARSH
KRIS CHISHOLM
STEVEN RUSSO
California Electricity Oversight Board
770 L Street, Suite 1250
Sacramento, CA 95814
(916) 322-8601
*Counsel for the California Electricity Oversight Board*

RANDOLPH L. WU
MARY F. MCKENZIE
ELIZABETH M. MCQUILLAN
Public Utilities Commission of the State of California
505 Van Ness Avenue
San Francisco, CA 94102
(415) 703-1471
*Counsel for the California Public Utilities Commission*

## CORPORATE DISCLOSURE STATEMENTS

Pursuant to Rule 29.6 of the Rules of this Court, applicants Pacific Gas & Electric Company and Southern California Edison Company state as follows:

**Pacific Gas & Electric Company** is a California corporation. It is a subsidiary of PG&E Corporation. PG&E Corporation is a publicly traded company and no entity owns more than ten percent of its stock.

**Southern California Edison Company** is a California corporation with its principal place of business in Rosemead, California. All of Southern California Edison Company's common stock is held by Edison International. Edison International is a publicly traded company and no entity owns more than ten percent of its stock.

No. ________

IN THE

# SUPREME COURT OF THE UNITED STATES

PACIFIC GAS AND ELECTRIC COMPANY, ET AL.,
PETITIONERS,

v.

BONNEVILLE POWER ADMINISTRATION, ET AL.,
RESPONDENTS.

## APPLICATION FOR AN EXTENSION OF TIME WITHIN WHICH TO FILE A PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

To the Honorable Anthony M. Kennedy, Associate Justice of the Supreme Court of the United States and Circuit Justice for the Ninth Circuit:

The People of the State of California, *ex rel.* Edmund G. Brown Jr., Attorney General, the California Electricity Oversight Board, the California Public Utilities Commission, Pacific Gas and Electric Company, and Southern California Edison Company (collectively, the California Parties) respectfully request a sixty-day extension of time, to and including August 4, 2007, within which to file a petition for a writ of certiorari to review the judgment of the United States Court of Appeals for the Ninth Circuit in this case. *See* 28 U.S.C. § 2101(c) (2000); S. Ct. R. 13.5, 22, 30.3. The court of appeals entered its judgment on September 6, 2005, and denied the California Parties' request for rehearing on March 7, 2007. Consequently, unless extended, the time within which to file a petition for a writ of certiorari will expire on June 5, 2007. The jurisdiction of this Court would be invoked under 28 U.S.C. § 1254(1) (2000). This application is filed more than ten days before the date upon which petitions for certiorari are due. *See* S. Ct.

R. 13.5. The opinion of the court of appeals, which is reported at 422 F.3d 908 (9th Cir. 2005), and the court's order denying rehearing are attached to this Application.

Additional time is warranted in this case so that the numerous public and private parties constituting the California Parties can coordinate their analysis regarding the advisability of filing a petition for certiorari and, if warranted, prepare a single petition. The State parties in this group include the Attorney General of California, the California Public Utilities Commission, and the California Electricity Oversight Board. The private parties in this group include the two largest investor-owned utilities in the State: Pacific Gas and Electric Company and Southern California Edison Company. Because the court of appeals has already issued its mandate, no party will be prejudiced by this brief delay in the filing of the petition. In fact, the resources of all parties, including this Court, will be preserved if the California Parties are able to avoid filing separate petitions for certiorari. Finally, this extension is likely to have little effect on the pace of this case because of the Court's summer recess.

This case concerns the jurisdiction of the Federal Energy Regulatory Commission (FERC) with respect to organized regional markets for electric power. The court of appeals held that FERC cannot require Municipals (governmental entities, including municipal power companies) to refund their overcharges, even when they sell electricity at excessive rates through such regulated markets. Thus, the question presented here is whether FERC, in order to perform its statutory responsibility of ensuring that public utility rates are just and reasonable, has the authority to order all sellers, including Municipals, to pay refunds when they choose to make sales through FERC-jurisdictional, public utility clearinghouses.

Section 205 of the Federal Power Act (FPA) provides that FERC is responsible for ensuring that "all" public utility rates for wholesale sales of electricity in interstate commerce are

"just and reasonable." 16 U.S.C. § 824d(a) (2000). Any such rate that is not just and reasonable is "unlawful." *Id.* Section 206 of the FPA gives FERC the authority to set just and reasonable rates for public utilities and to order refunds when FERC finds that the rates charged were not just and reasonable. *See* 16 U.S.C.A. § 824e (2000 & Supp. 2007). Municipals have an exemption from certain provisions of the FPA. *See* 16 U.S.C.A. § 824(f) (Supp. 2007).

In the 1990s, California restructured its electric industry in order to foster increased competition. Central to California's restructuring was the creation of the California Independent System Operator Corporation (ISO) and the California Power Exchange Corporation (PX). Both the ISO and PX were public utilities, subject to the full panoply of FERC regulation, including the requirement that all of their rates must be filed at FERC and determined by FERC to be just and reasonable. *See, e.g., Pac. Gas & Elec. Co. v. FERC*, 306 F.3d 1112, 1114 (D.C. Cir. 2002); *Automated Power Exch., Inc. v. FERC*, 204 F.3d 1144, 1147 (D.C. Cir. 2000). The ISO and PX operated as centralized clearinghouse auction markets into which all sellers were free to sell. These auctions established a single clearing-price for all sellers, including Municipals. Buyers, such as Pacific Gas and Electric Company and Southern California Edison Company, did not know the identity of the sellers who sold power into the auctions.

Following the California electricity crisis of 2000-2001, FERC determined that the rates charged by all sellers in the ISO and PX markets were unjust and unreasonable and ordered refunds for those overcharges. *See, e.g., San Diego Gas & Elec. Co.*, 96 FERC ¶ 61,120 at 61,511 (2001). FERC held that, given the centralized, clearinghouse nature of the ISO and PX, it had the authority to require all parties that sold through the ISO and PX – including Municipals – to refund their overcharges. *See id.* The Municipals appealed FERC's orders and the court of appeals reversed FERC.

The court relied on the general exclusion of Municipals from FERC's jurisdiction in FPA Section 201(f) to find that FERC could not compel refunds from Municipals. *Bonneville Power Admin. v. FERC*, 422 F.3d 908, 915-16 (9th Cir. 2005). This holding conflicts with cases in other circuits. For example, the United States Court of Appeals for the District of Columbia Circuit has held that, when Municipals choose to sell through FERC-jurisdictional centralized markets, FERC may regulate these sales notwithstanding the Municipals' general exclusion from FERC jurisdiction. *See, e.g., United Distribution Cos. v. FERC*, 88 F.3d 1105 (D.C. Cir. 1996) (upholding FERC's exercise of jurisdiction over resale of transportation rights on natural gas pipelines even though this impacted the rates that otherwise-exempt, municipally-owned local distribution companies could charge), *cert denied sub nom. Associated Gas Distribs. v. FERC*, 520 U.S. 1224 (1997).

The California Parties believe that this case raises issues of national importance, as independent system operators (ISOs) and regional transmission organizations (RTOs) now deliver "two-thirds of the electricity consumed in the United States to two-thirds of its population."[1] All of these ISOs and RTOs are FERC-regulated public utilities that operate centralized clearinghouse markets similar to those here at issue. Municipals play a significant role in these markets, selling more than twenty percent of the electricity generated in the entire United States.[2] If FERC is unable to require all sellers to abide by the same set of tariff rules,

---

[1] James Torgerson, Letter Accompanying Report by the ISO/RTO Council on the Value of Indep. Regional Grid Operators (Nov. 14, 2005), *at* http://www.caiso.com/14c6/14c6c4291aa40.pdf (last visited May 13, 2007).

[2] Elec. Energy Mkt. Competition Task Force, *Report to Cong. on Competition in Wholesale & Retail Mkts. for Elec. Energy* 16, FERC Docket No. AD05-17-000 (Apr. 5, 2007) (sum of percentages for Publicly-owned utilities, Cooperatives, and Federal Power Agencies).

including those that have a direct impact upon the reliability of the nation's interconnected electric grid, these ISOs and RTOs cannot function effectively.

In order to analyze these important issues and, as necessary, prepare a single petition, the California Parties respectfully request a sixty-day extension of time, to and including August 4, 2007, within which to file a petition for a writ of certiorari.

Respectfully submitted,

Stan Berman /CGC
STAN BERMAN
JOSEPH H. FAGAN
Heller Ehrman LLP
1717 Rhode Island Ave., N.W.
Washington, D.C. 20036
(202) 912-2000

MARK D. PATRIZIO
KERMIT R. KUBITZ
Pacific Gas and Electric Company
77 Beale Street, B30A
Post Office Box 7442
San Francisco, CA 94120
(415) 973-2118
*Counsel for Pacific Gas and Electric Company*

Charles G. Cole
CHARLES G. COLE
*Counsel of Record*
RICHARD L. ROBERTS
CATHERINE M. GIOVANNONI
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W. Washington, D.C. 20036
(202) 429-6270

MICHAEL MACKNESS
Southern California Edison Company
2244 Walnut Grove Avenue
Rosemead, CA 91770
(626) 302-2863
*Counsel for Southern California Edison Company*

David M. Gustafson /cs

EDMUND G. BROWN JR.
Attorney General of the State of California
JAMES M. HUMES
Chief Deputy Attorney General
THOMAS GREENE
Chief Assistant Attorney General
1300 I Street, Suite 125
Sacramento, CA 95814

DAVID M. GUSTAFSON
Deputy Attorney General
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550

KEVIN J. MCKEON
LILLIAN S. HARRIS
CRAIG R. BURGRAFF
KATHERINE E. LOVETTE
Hawke McKeon & Sniscak LLP
Harrisburg Energy Center
100 North Tenth Street
P.O. Box 1778
Harrisburg, PA 17101
*Counsel for the People of the State of California ex rel. Edmund G. Brown Jr., Attorney General*

Dated: May 17, 2007

Erik N. Saltmarsh /cs

ERIK N. SALTMARSH
KRIS CHISHOLM
STEVEN RUSSO
California Electricity Oversight Board
770 L Street, Suite 1250
Sacramento, CA 95814
(916) 322-8601
*Counsel for the California Electricity Oversight Board*

Elizabeth M. McQuillan /cs

RANDOLPH L. WU
MARY F. MCKENZIE
ELIZABETH M. MCQUILLAN
Public Utilities Commission of the State of California
505 Van Ness Avenue
San Francisco, CA 94102
(415) 703-1471
*Counsel for the California Public Utilities Commission*