ORIGINAL

**Pacific Gas and Electric Company**

77 Beale Street
San Francisco, CA
415/973-6344
Telecopier 415/973-9271
*Mailing Address*
P.O. Box 7442
San Francisco, CA 94120

Mark D. Patrizio
Attorney at Law

RIMS Electric

**VIA FEDERAL EXPRESS**

RIMS Electric

May 30, 1997

FILED
OFFICE OF THE SECRETARY
97 JUN -3 AM 11:31
FEDERAL ENERGY REGULATORY COMMISSION

Lois D. Cashell, Secretary
Federal Energy Regulatory Commission
Mail Code: DPR,HL-20.3
888 First Street., N.E.
Washington, D.C. 20426

Re: Southern California Edison Company-FERC Docket No. EL97-36-000

Dear Ms. Cashell:

Enclosed are an original and fifteen (15) copies of "Pacific Gas and Electric Company's Motion to Intervene" for filing in the above-captioned matter.

Please file stamp the extra copy of this letter and return it in the enclosed self-addressed stamped envelope.

Very truly yours,

Mark D. Patrizio

MDP:kji

Enclosures

cc: Service List

9706100826-1

FERC-DOCKETED
JUN 3 1997

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | |
|---|---|
| Southern California Edison Company | Docket No. EL97-36-000 |

**PACIFIC GAS AND ELECTRIC COMPANY'S**
**MOTION TO INTERVENE**

Pacific Gas and Electric Company (PG&E), pursuant to Federal Energy Regulatory Commission (Commission) Rule of Practice and Procedure 214 (18 C.F.R. § 385.214) (1996), submits this Motion to Intervene in the above-referenced proceeding and states as follows:

**I.**

PG&E's principal office is located at 77 Beale Street, San Francisco, California 94105. All pleadings, orders, correspondence and communications regarding this filing should be directed to the following persons:

Roger J. Peters, Attorney
Mark D. Patrizio, Attorney
Pacific Gas and Electric Company
Law Department
P. O. Box 7442
San Francisco, CA 94120
Telephone: (415) 973-6344

PG&E requests that an additional copy be sent to:

Robert J. Doran
Pacific Gas and Electric Company
77 Beale Street, Mail Code B23A
San Francisco, CA 94105
Telephone: (415) 973-6398

FERC-DOCKETED
JUN 3 1997

II.

PG&E is a corporation which generates, transmits, distributes and sells electric energy to about 13 million people in northern and central California. The 1996 purchases of electric energy by PG&E's electric customers amounted to 74.3 billion kilowatt-hours. That electric energy was transmitted over approximately 18,516 circuit miles of interconnected transmission lines of 60 kilovolts (kV) to 500 kV. PG&E's retail electric service is comprehensively regulated by the Public Utilities Commission of the State of California, which has jurisdiction over retail rates, services and facilities. The electric transmission service PG&E provides and the energy PG&E supplies for resale in interstate commerce are subject to regulation by this Commission under provisions of the Federal Power Act. PG&E is the control area operator for northern and central California.

III.

As part of the electric industry restructuring underway in California, on April 29, 1996, Pacific Gas & Electric Company, San Diego Gas and Electric Company, and Southern California Edison Company (the Companies) filed a Joint Application for Authority to Convey Operational Control of Designated Jurisdictional Facilities to an Independent System Operator (Docket No. EC96-19-000) and a Joint Application for Authority to Sell Electric Energy at Market-Based Rates Using a Power Exchange (Docket No. ER96-1663-000). Concurrently with these filings, the Companies filed a Petition for a Declaratory Order (Docket No. EL96-48-000) confirming the Companies' proposed delineation of certain facilities as either Commission-jurisdiction transmission facilities or state-jurisdictional local distribution facilities. As another piece of this restructuring effort, and as stated in its Petition for Declaratory Order and Request for Expedited Consideration (Petition), Southern California Edison Company (SCE) has announced that it is planning to divest 100% of its fossil generation within its service territory. SCE asserts that the successful divestiture of these assets is important to the restructuring effort in California.

PG&E is in the same position as SCE. PG&E is currently in the midst of state regulatory proceedings to sell four fossil-fueled power plants through an open auction. Like SCE, PG&E believes that it is important for potential purchasers of those plants to understand that the plants will be classified as Exempt Wholesale Generators after sale. Indeed, PG&E had thought that this conclusion was self-evident, for all the reasons cited by SCE in its Petition for Declaratory Order. Now that the issue has been raised, PG&E supports SCE's request that the Commission issue an order declaring that sales into the Power Exchange qualify as "wholesale sales" for purposes of Section 32 of the Public Utility Holding Company Act of 1935, 15 U.S.C. § 79z-5a (1994).

**IV.**

As described in the preceding paragraph, PG&E has a direct and substantial interest in this proceeding that cannot be represented by any other party. PG&E files this Motion to Intervene to preserve its opportunity to participate in this matter.

//

//

//

**IV.**

WHEREFORE, PG&E respectfully requests that the Commission:

(1) Grant this intervention; and

(2) Provide such other relief as the Commission may deem appropriate.

Respectfully submitted,

ROGER J. PETERS
MARK D. PATRIZIO

By ______________________
MARK D. PATRIZIO

Attorneys for
PACIFIC GAS AND ELECTRIC COMPANY
Law Department, B30A
Post Office Box 7442
San Francisco, CA 94120
Telephone: (415) 973-6344

Dated: May 30, 1997

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing document upon each person designated on the official service list compiled by the Secretary in this proceeding in accordance with Rule 2010 of the Rules of Practice and Procedure, 18 C.F.R. §385.2010, as attached.

Executed at San Francisco, California, this 30th of May, 1997.

Kenneth Isaacs

c:\data\winword\el97int2.doc

ORIGINAL

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Southern California Edison Company ) Docket No. EL97-36-000

FILED OFFICE OF THE SECRETARY
97 JUN -2 PM 2:03
FEDERAL ENERGY REGULATORY COMMISSION

## MOTION TO INTERVENE OF SAN DIEGO GAS & ELECTRIC COMPANY

Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214, San Diego Gas & Electric Company ("SDG&E") hereby seeks leave to intervene in the above-captioned proceeding.

## I. NOTICES

Notices, pleadings, orders, and other communications concerning this notice should be addressed to:

James F. Walsh
San Diego Gas & Electric Company
P.O. Box 1831
San Diego, CA 92112-4150
Phone (619) 699-5022
Fax (619) 696-5027

and

Nicholas W. Fels
Matthew S. Yeo
Covington & Burling
P.O. Box 7566
Washington, D.C. 20044-7566
Phone (202) 662-6000
Fax (202) 662-6291

## II. STATEMENT OF INTEREST

By its petition in this proceeding, Southern California Edison Company ("Edison") seeks a ruling that sales of electricity into the California Power Exchange ("PX") qualify as sales at wholesale. Edison wishes to confirm that such sales may be made by Exempt Wholesale Generators

9706100223-1

FERC-DOCKETED
JUN 2 1997

consistent with the requirements of Section 32 of the Public Utility Holding Company Act, 15 U.S.C. § 79z-5a (1994).

SDG&E is a public utility serving some 1.1 million electric customers at retail in San Diego and Orange Counties, California, as well as some 700,000 natural gas customers at retail in San Diego County. Like Edison, SDG&E is required by orders of the California Public Utilities Commission to make certain sales of electricity into the PX. Accordingly, SDG&E has a direct interest in the outcome of this proceeding.

**CONCLUSION**

SDG&E is entitled to intervene in this proceeding.

Respectfully submitted,

Nicholas W. Fels

Nicholas W. Fels
Matthew S. Yeo

Covington & Burling
1201 Pennsylvania Avenue, N.W.
P.O. Box 7566
Washington, D.C. 20044-7566
(202) 662-6000

James F. Walsh, III

San Diego Gas & Electric Company
P.O. Box 1831
San Diego, California 92112
(619) 699-5022

Attorneys for
San Diego Gas & Electric Company

June 2, 1997

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 2nd day of June, 1997, served by first class mail, postage prepaid, a copy of the foregoing upon all parties listed on the service list compiled by the Secretary of the Federal Energy Regulatory Commission in this proceeding.

Nicholas W. Fels

Nicholas W. Fels

ORIGINAL

#9

Nos. 01-56879, 01-56993,
01-57020 (CONSOLIDATED)

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

SOUTHERN CALIFORNIA EDISON COMPANY,
*Plaintiff and Appellee,*

v.

LORETTA M. LYNCH, HENRY M. DUQUE, RICHARD A. BILAS,
CARL W. WOOD, AND GEOFFREY F. BROWN,
IN THEIR OFFICIAL CAPACITIES AS COMMISSIONERS
OF THE CALIFORNIA PUBLIC UTILITIES COMMISSION, AND THE CALIFORNIA
PUBLIC UTILITIES COMMISSION,
*Defendants and Appellees.*

RECEIVED
CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS
FEB 05 2002
FILED
DOCKETED

---

RELIANT ENERGY SERVICES, [illegible] D MIRANT AMERICAS ENERGY MARKETING, LP,
AND CALIFORNIA MANUFACTURERS AND TECHNOLOGY ASSOCIATION,
*Applicants in Intervention and Appellants.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
HONORABLE RONALD S.W. LEW, JUDGE
CASE NO. 00-12056-RSWL (MCX)

---

**BRIEF OF APPELLEE SOUTHERN CALIFORNIA EDISON COMPANY**

Stephen Pickett, Esq. (SBN 97807)
Barbara Reeves, Esq. (SBN 58100)
Kris G. Vyas, Esq. (SBN 162871)
Southern California Edison Company
2244 Walnut Grove Avenue
Rosemead, California 91770
Telephone: (626) 302-1903
Facsimile: (626) 320-2783

Ronald L. Olson, Esq. (SBN 44597)
John W. Spiegel, Esq. (SBN 78935)
Henry Weissmann, Esq. (SBN 132418)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Suite 3500
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Plaintiff and Appellee
SOUTHERN CALIFORNIA EDISON COMPANY

[798513.1]

Nos. 01-56879, 01-56993,
01-57020 (CONSOLIDATED)

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

SOUTHERN CALIFORNIA EDISON COMPANY,
*Plaintiff and Appellee,*

v.

LORETTA M. LYNCH, HENRY M. DUQUE, RICHARD A. BILAS,
CARL W. WOOD, AND GEOFFREY F. BROWN,
IN THEIR OFFICIAL CAPACITIES AS COMMISSIONERS
OF THE CALIFORNIA PUBLIC UTILITIES COMMISSION, AND THE CALIFORNIA
PUBLIC UTILITIES COMMISSION,
*Defendants and Appellees.*

RELIANT ENERGY SERVICES, INC., AND MIRANT AMERICAS ENERGY MARKETING, LP,
AND CALIFORNIA MANUFACTURERS AND TECHNOLOGY ASSOCIATION,
*Applicants in Intervention and Appellants.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
HONORABLE RONALD S.W. LEW, JUDGE
CASE NO. 00-12056-RSWL (MCX)

# BRIEF OF APPELLEE SOUTHERN CALIFORNIA EDISON COMPANY

Stephen Pickett, Esq. (SBN 97807)
Barbara Reeves, Esq. (SBN 58100)
Kris G. Vyas, Esq. (SBN 162871)
Southern California Edison Company
2244 Walnut Grove Avenue
Rosemead, California 91770
Telephone: (626) 302-1903
Facsimile: (626) 320-2783

Ronald L. Olson, Esq. (SBN 44597)
John W. Spiegel, Esq. (SBN 78935)
Henry Weissmann, Esq. (SBN 132418)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Suite 3500
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Plaintiff and Appellee
SOUTHERN CALIFORNIA EDISON COMPANY

[798513.1]

## TABLE OF CONTENTS


Page

INTRODUCTION ........ 1

JURISDICTIONAL STATEMENT ........ 5

STATEMENT OF THE CASE ........ 5

STATEMENT OF FACTS ........ 5

I. THE REFUND PROCEEDINGS AT FERC ........ 5

II. THE SCE-CPUC SETTLEMENT AGREEMENT ........ 9

III. RELIANT'S AND CMTA'S LAST-MINUTE MOTIONS TO INTERVENE ........ 11

SUMMARY OF ARGUMENT ........ 12

STANDARD OF REVIEW ........ 14

ARGUMENT ........ 15

I. THE DISTRICT COURT DID NOT ERR IN DENYING RELIANT'S AND CMTA'S LAST-MINUTE INTERVENTION MOTIONS ........ 15

A. The District Court Properly Denied Reliant's And CMTA's Motions To Intervene As Of Right ........ 15

1. Reliant And CMTA Cannot Show A Legally Protectible Interest In The Lawsuit, Much Less One That Will Be Impaired By Its Outcome ........ 16

2. Reliant And CMTA Were Untimely In Seeking To Intervene ........ 18

3. CMTA Fails To Demonstrate That The Parties To The Lawsuit Inadequately Protect Its Interests ........ 21

B. The District Court Did Not Abuse Its Discretion In Denying Reliant's And CMTA's Motions To Intervene Permissively ........ 21

1. Neither Reliant Nor CMTA Has An Independent Basis For Jurisdiction ........ 22

2. Reliant's And CMTA's Applications To Intervene Were Untimely ........ 23

## TABLE OF CONTENTS
**(continued)**

**Page**


3. There Is No Common Question Of Law Or Fact Between Reliant's Claims And The Underlying Action ........ 24

C. Reliant Lacks Article III Standing To Intervene In The District Court Proceedings ........ 26

D. Reliant And CMTA Lack Independent Standing To Appeal From The Stipulated Judgment ........ 28

II. RELIANT AND CMTA PROVIDE NO BASIS FOR OVERTURNING THE STIPULATED JUDGMENT ........ 30

A. Neither The Pre-Settlement Provision Nor The Litigation Cooperation Provision Intrudes On FERC's Jurisdiction ........ 31

B. The Federal Power Act Does Not Preempt The Pre-Settlement And Litigation Cooperation Provisions ........ 34

C. Reliant's and CMTA's Incorporated TURN Arguments For Overturning The Stipulated Judgment Have No Merit ........ 39

CONCLUSION ........ 40

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alaniz v. Tillie Lewis Foods*,
572 F.2d 657 (9th Cir. 1978) .......... 20

*Bank of America v. M/V Executive*,
797 F.2d 772 (9th Cir. 1986) .......... 29, 30

*Beckman Industries, Inc. v. International Insurance Co.*,
966 F.2d 470 (9th Cir. 1992) .......... 22

*Deus v. Allstate Ins. Co.*,
15 F.3d 506 (5th Cir. 1994). .......... 24

*Donnelly v. Glickman*,
159 F.3d 405 (9th Cir. 1998) .......... *passim*

*Duke Energy Trading & Marketing Co. v. Davis*,
267 F.3d 1042 (9th Cir. 2001) .......... 36

*Employee Staffing Servs., Inc. v. Aubry*,
20 F.3d 1038 (9th Cir. 1994) .......... 14

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995). .......... 26

*In re California Power Exchange Corp.*,
245 F.3d 1110 (9th Cir. 2001) .......... *passim*

*League of United Latin American Citizens v. Wilson*,
131 F.3d 1297 (9th Cir. 1997) .......... *passim*

*Marino v. Ortiz*,
484 U.S. 301(1988).......... 29

*Mississippi Power & Light Co. v. Mississippi ex rel. Moore*,
487 U.S. 354 (1988),.......... 35

*Nantahala Power & Light Co. v. Thornburg*,
476 U.S. 953 (1986).......... 36

*Northwest Forest Resource Council v. Glickman*,
82 F.3d 825 (9th Cir. 1996) .......... 15, 16

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994) .......... 28

*Pike County Light & Power Co. v. Pennsylvania Public Util. Comm'n*,
77 Pa. Commw. 268, 465 A.2d 735 (1983).......... 36

*Public Serv. Co. of N.H. v. Patch*,
136 F.3d 197 (1st Cir. 1998).......... 18

*Safety-Kleen, Inc. v. Wyche*,
274 F.3d 846 (4th Cir. 2001) .......... 25

*Smith v. Marsh*,
194 F.3d 1045 (9th Cir. 1999) .......... 15, 19, 20

## TABLE OF AUTHORITIES
## (continued)

Page(s)

*Southwest Center for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ........................................ 27

*Valley Forge Christian College v. Americans United for Separation of Church & State*,
454 U.S. 464 (1982)........................................ 26

*Westlands Water District v. United States*,
700 F.2d 561 (9th Cir. 1983) ........................................ 18

**STATUTES**

16 U.S.C. § 824e(a)........................................ 7, 34

28 U.S.C. § 1331 ........................................ 5

28 U.S.C. § 1337 ........................................ 5

28 U.S.C. § 1343 ........................................ 5

28 U.S.C. § 1367 ........................................ 22

**OTHER AUTHORITIES**

*San Diego Gas & Elec.* Co.,
92 FERC ¶ 61,172, 2000 FERC LEXIS 1711 (Aug. 23, 2000) .............. 7, 9

*San Diego* Gas & *Elec. Co.*, 93
FERC ¶ 61,121, 2000 FERC LEXIS 2168 (Nov. 1, 2000) .......................... 8

*San Diego* Gas & Elec. *Co.*,
95 FERC ¶ 61,418, 2001 FERC LEXIS 1440 (June 19, 2001).............. 9, 34

*San Diego Gas & Elec. Co.*,
96 FERC ¶ 61,120, 2001 FERC LEXIS 1810 (July 25, 2001)...................... 9

*San Diego Gas &* Elec. *Co.*,
97 FERC ¶ 61,275, 2001 FERC LEXIS 3018 (Dec. 19, 2001)..................... 9

## INTRODUCTION

Appellants Reliant Energy Services and Mirant America Energy Marketing, LP (jointly "Reliant") and California Manufacturers and Technology Association ("CMTA") are Johnnies-come-lately to Southern California Edison Company's ("SCE") lawsuit against the Commissioners of the California Public Utilities Commission ("CPUC"). Although they knew about this litigation from the outset, Reliant and CMTA did not seek to intervene until SCE and the CPUC asked the District Court to approve a consensual resolution of their dispute. Reliant and CMTA say that only then – a year after the lawsuit was filed and months after the parties had asked the District Court to stay proceedings to allow for a possible out-of-Court resolution – did they have the epiphany that SCE and the CPUC were not litigating the suit with an eye only toward advancing Reliant's and CMTA's interests.

The District Court correctly denied Reliant's and CMTA's long-delayed and meritless requests to intervene. Fundamentally, neither Reliant nor CMTA has a protectible interest that SCE's lawsuit against the CPUC could impair – the *sine qua non* of intervention as a matter of right under Federal Rule of Civil Procedure 24(a). The lawsuit concerns Reliant's "interests" no more than the interests of any other entity that claims to be a creditor of SCE, and CMTA's "interests" no more than any of SCE's 4.3 million retail customers. The only difference between the

former and the latter groups – illustrated by Reliant's and CMTA's divergent views on the merits of SCE's federal law claims – is that claimed creditors want SCE to recover as much money as possible while so-called "ratepayer advocates" want SCE to recover as little as possible. If Reliant and CMTA have a "right" to intervene, then so too does every SCE creditor and retail customer. Reliant's and CMTA's asserted "interests" are far too general to justify intervention as a matter of right.

The District Court's decision under Rule 24(a) also was correct because Reliant and CMTA have no good excuse for waiting until the eve of judgment before seeking to become parties. CMTA's application to intervene as of right was also improper given that an existing party, The Utility Reform Network ("TURN"), has made all the arguments that CMTA claims it wants to make and is pursuing the same result, namely, to prevent SCE from rebuilding its financial health by recovering from its customers the costs of power they have consumed.

Many of the same factors support the District Court's highly discretionary decision to deny permissive intervention under Rule 24(b). In particular, Reliant's and CMTA's unexcused tardiness in moving to intervene weighs heavily against their requests for discretionary intervention. Moreover, neither entity identified an independent jurisdictional ground supporting their intervention request. As the District Court explained, Reliant's and CMTA's objections to the settlement

centered on "concerns about the purported vagueness of the terms of the settlement agreement and concerns about its implementation." Reliant ER 258. The District Court correctly found their "concerns" in this regard unwarranted. Finally, Reliant failed to establish the requisite legal and factual nexus between the claims it wants to litigate – namely, "when, how, or even if Reliant, Mirant, or other creditors would be paid" by SCE, Reliant Br. at 12 – and the lawsuit that SCE actually was litigating against the CPUC. Rule 24(b) is "not intended to allow the creation of whole new lawsuits by the intervenors." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

The decision to deny Reliant intervention also should be affirmed because Reliant lacked Article III standing to participate in the District Court proceedings. Reliant's alleged "injury" (unsupported by evidence) is that SCE owes it money for past sales. Reliant cannot establish Article III standing based on that injury because it cannot show (a) that there is a causal connection between the entry of the stipulated judgment and the alleged nonpayment or (b) that overturning the stipulated judgment will lead to repayment of the money Reliant says it is owed.

Affirming the District Court's intervention rulings obviates consideration of Reliant's and CMTA's arguments on the merits of entering the stipulated judgment. Reliant's and CMTA's failure to provide a substantial basis for

overturning the stipulated judgment, however, underscores the propriety of the District Court's denial of their intervention motions.

CMTA's merits arguments are entirely duplicative of TURN's. Arguing only for itself, Reliant insists that the settlement agreement purports to transfer regulatory control over the wholesale power market from the Federal Energy Regulatory Commission ("FERC") to the CPUC. The agreement does nothing of the kind. SCE and the CPUC are complainants in pending litigation before FERC to obtain refunds from wholesalers (like Reliant) who were found by FERC to have charged "unjust and unreasonable" prices selling power to the California Power Exchange ("Cal PX"). The provisions that Reliant attacks deal only with the extent of litigation cooperation between SCE and the CPUC *before* FERC takes any action to establish a rate. Specifically, the provisions require only that SCE "consider in good faith" the CPUC's views about litigation strategy and that it obtain the CPUC's approval before making its otherwise unilateral and entirely voluntary decision to *settle* a refund claim. This type of cooperation is entirely unobjectionable between co-parties with aligned interests in the FERC refund proceedings. The provisions do not tread on FERC's jurisdiction – something *FERC itself* expressly recognized by soliciting the CPUC's participation in efforts to settle those refund claims.

## JURISDICTIONAL STATEMENT

The District Court's jurisdiction was based on 28 U.S.C. §§ 1331, 1337, and 1343. SCE agrees with Reliant and CMTA's statement of appellate jurisdiction.

## STATEMENT OF THE CASE

Reliant and CMTA appeal both from the District Court's denial of their motions to intervene and from the District Court's entry of a stipulated judgment between SCE and the CPUC.

## STATEMENT OF FACTS

### I. THE REFUND PROCEEDINGS AT FERC

The background of this case, including SCE's claims against the CPUC and their resolution in the stipulated judgment, is set forth in SCE's Brief in TURN's appeal, No. 01-56879, at 4-15.

Like TURN, CMTA is a self-appointed group that purports to represent a narrow class of ratepayer interests. The only difference is that CMTA says it represents the interests of certain "large" ratepayers, whereas TURN claims for itself the right to speak for a class of "small" ratepayers. For purposes of this appeal, CMTA's interests in the case are no different than TURN's: it objects to the settlement because it does not want SCE to achieve any recovery in its suit.

Reliant is the ying to CMTA's yang. Reliant is a wholesale generator of electricity that sold power into the Cal PX. SCE's and Pacific Gas and Electric Company's liquidity crises prevented them from paying the Cal PX, which in turn

failed to pay Reliant and other generators. Reliant therefore wants SCE to get as much money as possible so that it can pay the Cal PX. As Reliant says, it "viewed [SCE's case against the CPUC] as a potential source of significant funds for SCE from which it might pay its outstanding debts." Reliant Br. at 13. Reliant's basic complaint about the stipulated judgment is that it does not go far enough, *i.e.*, that "it includes no provision for actually paying SCE's outstanding debts to Reliant . . . or any other creditor." *Id.* at 12.

Reliant's contention that it is "a substantial creditor of SCE[,]" *id.* at 7, is not supported by evidence in the record. The record citation claimed to support this assertion – Reliant ER at 112 – is not evidence but instead is Reliant's District Court brief, in which Reliant makes the same unsupported assertion.

SCE purchased power from, and failed to pay, the Cal PX. Reliant's claims relate entirely to SCE's purchases from the Cal PX prior to mid-January 2001, when the Cal PX suspended operations in its spot markets. The Cal PX functioned as a clearinghouse, matching competing bids and processing payments from power purchasers (like SCE) and power sellers (like Reliant) at "market-clearing" prices. *See In re California Power Exchange Corp.*, 245 F.3d 1110, 1114-15 (9th Cir. 2001) ("*Cal PX*"). Thus, in Cal PX transactions, SCE (as buyer) and wholesalers like Reliant (as sellers) were in privity with the Cal PX but not with each other. *See* Settlement Agreement § 1.1(n), Reliant ER 206 ("PX Billing Claim" means

claims against SCE for alleged failure "to pay timely any amounts due or claimed to be due to the [Cal PX]"); *id.*, Schedule 1.1 (Procurement Related Liabilities), Reliant ER 227 (listing nearly $1 billion in SCE Procurement Related Liabilities to the Cal PX). The Cal PX cleared trades not only on behalf of SCE, but also on behalf of Pacific Gas and Electric Company and other purchasers. The Cal PX has not attributed any portion of the amounts unpaid by SCE to Reliant or any other specific generator. Reliant's claim – that approximately $260 million of the amount it says it is owed by the Cal PX is attributable to SCE – is therefore speculative and unsupported by any evidence.

SCE and the CPUC vigorously dispute Reliant's claim for payment, and that dispute is the subject of the ongoing proceedings at FERC to which Reliant alludes. Reliant Br. at 7. Following the dramatic upsurge in wholesale electricity prices in the summer of 2000, San Diego Gas & Electric Company (like SCE, an investor-owned utility) filed a complaint with FERC, alleging that prices in the Cal PX were "unjust and unreasonable," in violation of Section 206(a) of the Federal Power Act, 16 U.S.C. § 824e(a). *See San Diego Gas & Elec. Co.*, 92 FERC ¶ 61,172, 2000 FERC LEXIS 1711 (Aug. 23, 2000).

In a November 1, 2000 order, FERC determined that, under certain circumstances, short-term prices in the Cal PX *were* "unjust and unreasonable." *Cal PX*, 245 F.3d at 1116 (citing *San Diego Gas & Elec. Co.*, 93 FERC ¶ 61,121,

at 61,349, 61,366, 2000 FERC LEXIS 2168, at *3, *79 (Nov. 1, 2000)). Among other things, "FERC concluded that the electricity market structure and market rules devised by California's restructuring plan were 'seriously flawed' and a significant cause of the unjust and unreasonable short-term rates in California[.]" *Id.* (quoting *San Diego Gas & Elec. Co.*, 93 FERC ¶ 61,121, at 61,349, 2000 FERC LEXIS 2168, at *3). FERC also "found 'clear evidence' that California's market rules and structures provided electricity wholesale sellers" – *i.e.*, sellers like Reliant – "the opportunity to exercise market power during periods of tight supply[.]" *Id.* (quoting *San Diego Gas & Elec. Co.*, 93 FERC ¶ 61,121, at 61,350, 2000 FERC LEXIS 2168, at *3).

FERC undertook a number of measures to address the "unjust and unreasonable" rates charged in the Cal PX. Most relevant to Reliant's appeal, FERC commenced an inquiry into whether to order refunds for unlawful sales in the Cal PX. *Id.* at 1118 (citing *San Diego Gas & Elec. Co.*, 93 FERC ¶ 61,121, at 61,370-71, 61,376-82, 2000 FERC LEXIS 2168, at *94-99, 145-172). Through a series of orders, FERC has determined that certain sales through the Cal PX – by wholesalers like Reliant – are subject to refund for the period October 2, 2000 through June 20, 2001; FERC directed one of its administrative law judges to oversee the process of instituting settlement discussions and ultimately adjudicating the refund claims. *See San Diego Gas & Elec. Co.*, 96 FERC

¶ 61,120, at 61,499, 2001 FERC LEXIS 1810, at *1 (July 25, 2001); *San Diego Gas & Elec. Co.*, 97 FERC ¶ 61,275, 2001 FERC LEXIS 3018 (Dec. 19, 2001).

Reliant intimates that FERC has walled-off the CPUC from the ongoing litigation and refund proceedings because the federal agency is concerned with "the entire western interconnect," whereas the CPUC's involvement would be limited to advancing the parochial concerns of the State of California. Reliant Br. at 45. In fact, the CPUC has been actively involved in the FERC proceedings – with FERC's full approval. The CPUC intervened on the complainants' side in the *San Diego Gas & Electric* proceedings. *San Diego Gas & Elec. Co.*, 92 FERC ¶ 61,172, at 61,604-605, 2000 FERC LEXIS 1711, at *7-10. SCE intervened on the same side as the CPUC, and Reliant intervened in opposition to the complaint. *Id.* Moreover, in its order directing the parties to engage in settlement discussions, FERC specifically solicited the State's participation:

> [W]e stress that it will be critical to the success of these discussions that the State of California designate one or more representatives, authorized to act on behalf of all affected state interests, to participate fully in the settlement discussions.

*San Diego Gas & Elec. Co.*, 95 FERC ¶ 61,418, at 62,570, 2001 FERC LEXIS 1440, at *116 (June 19, 2001).

## II. THE SCE-CPUC SETTLEMENT AGREEMENT

The settlement agreement between SCE and the CPUC recognizes that the ongoing FERC refund proceedings are a potential source of funds to offset the

wholesale power procurement costs that SCE would otherwise recover from its customers under the settlement agreement. The settlement agreement mandates that 100% of the net liquidated value of any such FERC refunds, through the period during which SCE is recovering its costs under the settlement, will be passed on to SCE's customers. Settlement Agreement § 3.3(a), Reliant ER 219.

In light of SCE's and the CPUC's common interest in minimizing the burden on SCE's customers by obtaining refunds through the FERC proceedings, the two parties formally agreed to SCE's "cooperat[ing] in good faith with the CPUC and the California Attorney General in order to coordinate the pursuit and resolution of" the refund claims that FERC is adjudicating. Settlement Agreement § 3.1, Reliant ER 217. This provision – one of two that is the principal focus of Reliant's appeal – is hereinafter referred to as the "Litigation Cooperation Provision." It is typical of agreements between co-parties who share a common interest in cooperatively prosecuting a case. SCE will (1) consult with state counsel concerning coordinated litigation strategies and will "consider in good faith" state counsel's views about the litigation; (2) execute "reasonable and customary" joint-defense agreements to preserve privileges; and (3) "seek and consider in good faith" state counsel's comments about briefs SCE files in the refund litigation. *Id.*

The settlement agreement also confirms SCE's right to compromise, at its discretion, its refund claims in the FERC proceedings. Settlement Agreement § 3.2(a)-(b), Reliant ER 218. The CPUC has an obvious interest in any such voluntary settlement by SCE: each dollar that SCE receives through the refund proceedings, either in settlement or judgment, reduces the amount that otherwise would be recovered from SCE's customers. Accordingly, SCE agreed to limit its otherwise unilateral discretion whether to compromise a refund claim:

> *[I]n the event that SCE wishes to compromise*, waive or settle any Seller Claim or PX Billing Claim on or after March 1, 2002 (subject to extension by mutual agreement), *it shall first obtain the CPUC's permission to do so*. In the event the CPUC grants such permission, then SCE may effect such compromise, waiver or settlement. In the event the CPUC does not grant such permission, then SCE shall continue to pursue the claim or defense in question, and any compromise, waiver or settlement thereof shall continue to be subject to CPUC review.

Settlement Agreement § 3.2(c) (emphasis added), Reliant ER 219. This provision – referred to herein as the "Pre-Settlement Provision" – is the second of the two provisions upon which Reliant bases its appeal on the merits.

## III. RELIANT'S AND CMTA'S LAST-MINUTE MOTIONS TO INTERVENE

Reliant first sought to intervene in this case on October 3, 2001, nearly a year after SCE filed its complaint and six months after the District Court stayed it to allow SCE and the CPUC to pursue settlement options. Reliant complained that, because the SCE-CPUC settlement agreement did not address how SCE's creditors

were to be paid, Reliant could not determine whether the agreement would impair its interests or not. Reliant ER 113. Like Reliant, CMTA waited until October 3, 2001, to attempt to intervene; although TURN, another self-appointed ratepayer group, had moved to intervene nearly a year earlier, CMTA claimed its late filing was justified because it did not know that the CPUC was unable to represent its interests adequately until the settlement agreement was announced. Reliant ER 99. Both Reliant and CMTA asked the District Court not to enter the stipulated judgment. Reliant ER 101 (CMTA), 111 (Reliant).

The District Court reviewed Reliant's and CMTA's applications and concluded they provided no basis for denying entry of the stipulated judgment. The Court explained that "[t]he concerns presently raised by the non-parties [*i.e.*, Reliant and CMTA] are primarily concerns about the purported vagueness of the terms of the settlement agreement and concerns about its implementation. The agreement contains all the fundamental terms necessary for a complete agreement, and the interpretation and implementation of the agreement are only ministerial acts to be performed by the parties." Reliant ER 258.

## SUMMARY OF ARGUMENT

1. The District Court correctly denied Reliant's and CMTA's motions to intervene as a matter of right:

a. Neither Reliant nor CMTA has a protectible interest that SCE's lawsuit against the CPUC threatens to impair.

b. Reliant and CMTA cannot justify their extreme delay in waiting to move to intervene.

c. TURN, which already has intervenor-party status, has more than adequately represented the interests CMTA says it wants to advance in this litigation; indeed, it has represented them identically.

2. The District Court did not abuse its discretion in denying Reliant's and CMTA's requests for permissive intervention:

a. Reliant and CMTA fail to establish an independent jurisdictional basis for their participation as permissive intervenors.

b. Reliant's and CMTA's applications for intervention were untimely.

c. The claims that Reliant wants to assert lack the necessary legal and factual nexus with the lawsuit that SCE brought against the CPUC.

3. The District Court's decision to deny Reliant intervention also should be affirmed because Reliant does not have Article III standing.

4. There is no merit to Reliant's argument that the settlement agreement treads on FERC's exclusive jurisdiction to set wholesale rates. The provisions that Reliant attacks deal solely with SCE's conduct of, and its unilateral decision

whether to settle, FERC refund litigation *before* FERC is presented with or passes on a proposed "rate." Reliant's extreme jurisdictional argument that the CPUC can have no involvement whatsoever in any process preceding FERC's consideration of the appropriate rate is belied both by FERC's express solicitation of the CPUC's participation in refund settlement proceedings and by the very cases that Reliant cites.

5. CMTA's arguments simply repeat TURN's arguments. Its filings with this Court merit no additional response from SCE.

**STANDARD OF REVIEW**

SCE agrees with Reliant's and CMTA's discussion of the standard of review of the District Court's rulings on the motions to intervene *as of right*.

Reliant and CMTA understate the degree of deference this Court gives the District Court concerning the decision whether to allow *permissive* intervention. Because the District Court has discretion to deny permissive intervention *even if* the applicants meet the threshold requirements under Rule 24(b), *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998), Reliant and CMTA have a heavy burden to overturn the District Court's decision. This Court must have a "definite and firm conviction that the court committed a clear error of judgment in reaching its conclusion after weighing the relevant factors." *Employee Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994) (quotations omitted). This Court thus

has jurisdiction over the District Court's denial of permissive intervention "*only if* the district court abused its discretion in reaching that decision." *Donnelly*, 159 F.3d at 411 (emphasis added) (citing *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1307-08 (9th Cir. 1997) ("*LULAC*")). Accordingly, if this Court determines that the District Court did not abuse its discretion, "it *must* dismiss the appeal for want of jurisdiction." *LULAC*, 131 F.3d at 1308.

The District Court's ultimate decision to enter the stipulated judgment is reviewed for abuse of discretion. *See* SCE Br. in TURN App. at 17-18.

## ARGUMENT

### I. THE DISTRICT COURT DID NOT ERR IN DENYING RELIANT'S AND CMTA'S LAST-MINUTE INTERVENTION MOTIONS

#### A. The District Court Properly Denied Reliant's And CMTA's Motions To Intervene As Of Right

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), an applicant must satisfy each of four requirements: (1) the applicant must have a significantly protectible interest in the litigation; (2) the application must be timely; (3) the applicant must show that the disposition of the action may practically impair its protectible interest; and (4) the applicant must show that the parties before the Court do not adequately represent its interests. *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996); *Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir. 1999). Neither Reliant nor CMTA satisfies any of these requirements.

1. Reliant And CMTA Cannot Show A Legally Protectible Interest In The Lawsuit, Much Less One That Will Be Impaired By Its Outcome

Under Rule 24(a)(2), the applicant must show that its asserted interest is protected by some law, and that there is a relationship between the protected interest and the claims at issue. *Northwest Forest Council*, 82 F.3d at 837. Reliant and CMTA fail to meet these standards.

The *only* interest that Reliant identifies in this litigation is the allegation that SCE owes it more than $260 million stemming from past wholesale electricity transactions. Reliant Br. at 25-26. Reliant claims that its "interest" in that sum "is both legally protectible and related to the claims at issue in SCE's lawsuit." *Id.* at 26; *see also* Reliant ER 112 (Reliant's District Court Brief) (Reliant's "interest in the settlement agreement" identified as "how the sums expected to be received by SCE pursuant to it are distributed among creditors"). Reliant's claim that SCE owes it $260 million is not only unsupported by record evidence, but also hotly disputed. SCE is in privity with the Cal PX, not Reliant; the portion, if any, of SCE's non-payment to the Cal PX that would flow to Reliant has not been established; and the amounts charged by generators such as Reliant to the Cal PX are the subject of FERC refund proceedings. *See supra* at 6-8.

Even if Reliant could establish a legal entitlement to collect from SCE the money it claims it is owed, that does not give it a protectible interest in *this*

lawsuit. This case does not dispose of claims by Reliant against SCE arising out of wholesale power purchases by SCE. Nor does it impair any interest that Reliant claims to receive payment for its wholesale power sales. On the contrary, the settlement agreement *benefits* Reliant by enabling SCE to pay the Cal PX. Reliant's complaint about the settlement is not that it *impairs* Reliant's interest in getting paid, but only that it "includes no provision for actually paying SCE's outstanding debts to Reliant, Mirant, or any other creditor." Reliant Br. at 12. Indeed, the stipulated judgment is "silent about the mechanics of payment to creditors," *id.* at 28, and for good reason: the stipulated judgment resolves the dispute that is the subject of SCE's lawsuit against the CPUC, not claims of wholesale power suppliers (or anyone else) claiming that SCE has outstanding debts to them. The fact that the outcome of the SCE-CPUC litigation will not resolve "when, how, or even if Reliant, Mirant, or other creditors would be paid" by SCE, *id.* at 12, shows that Reliant cannot demonstrate an interest entitling it to intervene as a matter of right.

If Reliant's desire to get paid on a disputed claim were enough to entitle it to intervene as of right in litigation in which SCE seeks to obtain additional revenues that might be a source of payment, then any unsecured creditor would have a right to intervene in any lawsuit that its debtor brings against any third party, which might in turn serve as a source of funds that the creditor might be able to tap.

Reliant's interests as a creditor are far too attenuated to justify intervention as of right.

CMTA likewise fails to demonstrate a protectible interest that would entitle it to intervene. CMTA asserts only that it is an association of manufacturing and high-technology companies that "purchase significant quantities of electricity from SCE" and thus will be substantially affected by the outcome of this litigation. Reliant Br. at 26. That CMTA's members purchase electricity from SCE in no way distinguishes them from any of SCE's millions of customers throughout California. Federal law construing Rule 24(a)(2) is clear that "an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." *Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998); *see also Westlands Water District v. United States*, 700 F.2d 561, 563 (9th Cir. 1983) (Environmental Defense Fund's interest in water district's water export rights is no different from interest of "substantial portion of the population of northern California" and is thus not "legally protectible" under Rule 24(a)). CMTA's asserted "interest" in the cost of power here is far too general to justify its intervention.

2. <u>Reliant And CMTA Were Untimely In Seeking To Intervene</u>

Reliant and CMTA have no excuse for their nearly year-long delay in seeking to intervene. The determination of timeliness of a motion to intervene is

based on (1) the stage of the proceedings, (2) the length of and reason offered for the delay, and (3) the possible prejudice to the existing parties. *LULAC*, 131 F.3d at 1308. Each of these factors supports the District Court's denial of Reliant's and CMTA's motions.

Reliant and CMTA sought to intervene on the eve of entry of judgment. In these circumstances, the first factor "weighs heavily" against Reliant and CMTA *Id.* at 1303 ("[T]he fact that the district court has substantively – and substantially – engaged in the issues in this case weighs heavily against allowing intervention as of right under Rule 24(a)(2)."); *Smith*, 194 F.3d at 1050-51 (under *LULAC*, proposed intervenor had "uphill battle" to prevail on application 15 months after filing of original suit, even where suit was still in pretrial phases).

Reliant's and CMTA's professed disappointment with the terms of the stipulated judgment does not excuse their tardy motion to intervene. Reliant and CMTA were on notice from the beginning of this litigation of the interests that SCE and the CPUC have each sought to advance. SCE filed suit to vindicate its own federal right to recover the costs of procuring wholesale power, not to litigate a claim for Reliant to money it claims to be owed. Likewise, the CPUC from the beginning has said that it was seeking to vindicate the interests of California ratepayers as a whole, not simply the narrow interests that CMTA claims to represent. Reliant and CMTA knew or should have known that SCE and the

CPUC were not concerned solely with their interests, and that the outcome of the litigation almost certainly would not entirely please either SCE's creditors or its customers. Reliant and CMTA could have sought to intervene at the beginning of the case, as did TURN, and their decision to wait to see how the case came out before seeking to intervene weighs heavily against their motions. *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978) ("The crux of appellants' argument is that they did not know the settlement decree would be to their detriment. But surely they knew the risks. To protect their interests, appellants should have joined the negotiations before the suit was settled.").

On the other side of the balance, granting Reliant's and CMTA's motions threatened to prejudice the parties. SCE and the CPUC share an interest in the prompt implementation of the stipulated judgment, which is designed to restore SCE's credit standing and thus enable it to resume procuring power on behalf of its customers. Further delay at this late stage undermines this outcome. Had they been allowed to intervene, Reliant and CMTA undoubtedly would have sought to litigate manifold issues, and therefore their admission would "have the inevitable effect of prolonging the litigation to some degree." *LULAC*, 131 F.3d at 1304. Particularly where the proposed intervenors seek to "inject new issues and matters that are well beyond the scope of [the original parties'] claims and . . . defenses," *Smith*, 194 F.3d at 1051 (quotations omitted) – here, for example, by litigating

putative contract claims against SCE – the District Court is well justified in concluding that intervention would prejudice the existing parties.

3. CMTA Fails To Demonstrate That The Parties To The Lawsuit Inadequately Protect Its Interests

CMTA has no right to intervene for the additional reason that the parties already before the District Court more than adequately protected its claimed interests in this litigation. CMTA does not even dispute the existing parties' ability to adequately represent its interests. CMTA fails to identify a single merits argument that it would seek to make that TURN (which is an existing party) has not made already. Indeed, CMTA's substantive argument does nothing more than incorporate CMTA's amicus brief in the TURN case – which itself makes exactly the arguments that TURN has made in its merits brief. By definition, CMTA's interests are adequately represented by TURN at this juncture.

**B. The District Court Did Not Abuse Its Discretion In Denying Reliant's And CMTA's Motions To Intervene Permissively**

The District Court was well within its discretion in concluding that neither Reliant nor CMTA satisfy Rule 24(b)'s prerequisites for permissive intervention: (1) neither Reliant nor CMTA established an independent ground for jurisdiction; (2) neither timely moved to intervene; and (3) neither demonstrated that they had a claim or defense with a question of law or fact in common with the underlying action. *Donnelly*, 159 F.3d at 412.

1. Neither Reliant Nor CMTA Has An Independent Basis For Jurisdiction

Reliant and CMTA first argue that, notwithstanding the requirements of Rule 24(b), they need not establish an independent basis for jurisdiction because they do not seek to assert any new claim or defense on the merits. Reliant Br. at 29. Reliant and CMTA rely on *Beckman Industries, Inc. v. International Insurance Co.*, 966 F.2d 470 (9th Cir. 1992), but that case hardly supports their novel and broad exception to Rule 24(b). *Beckman* involved a request to intervene following the settlement of the claims on the merits for an extremely limited purpose: to modify a previously entered protective order. The protective order – which, by its own terms, was subject to later modification by the district court, *id.* at 473 – effectively prevented the intervention applicants from accessing discovery materials that they claimed to need in ongoing, separate litigation in state court. Reliant and CMTA, on the other hand, seek to intervene *precisely* to litigate the merits of the settlement agreement. Reliant and CMTA therefore are necessarily bound by Rule 24(b)'s jurisdictional requirement.

Alternatively, Reliant and CMTA argue that the District Court has supplemental jurisdiction to entertain their "claims" because they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. That is simply wrong. As the District Court properly recognized,

"[t]he concerns presently raised by the non-parties are primarily concerns about the purported vagueness of the terms of the settlement agreement and concerns about its implementation. The agreement contains all the fundamental terms necessary for a complete agreement, and the interpretation and implementation of the agreement are only ministerial acts to be performed by the parties." Reliant ER 258. Indeed, the outcome of this litigation between SCE and the CPUC will *not* resolve Reliant's central concern: "when, how, or even if Reliant, Mirant, or other creditors would be paid" by SCE. Reliant Br. at 12.

Finally, Reliant and CMTA suggest they have a laundry list of federal claims they *could* raise in this case, if they were so inclined. Reliant Br. at 32-33. But Reliant and CMTA did not intervene to assert any claim – federal or state – in this case, and they cite no authority for the proposition that a District Court should allow intervention based on claims that a proposed intervenor elected not to bring.

2. Reliant's And CMTA's Applications To Intervene Were Untimely

The timeliness inquiry under Rule 24(b) considers the same factors that are relevant under Rule 24(a): the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay. "In the context of permissive intervention, however, we analyze the timeliness element more strictly than we do with intervention as of right." *LULAC*, 131 F.3d at 1308. As this Court has made clear, a conclusion that an application for permissive intervention is untimely

follows "*a fortiori*" from the finding that applicants have untimely sought to intervene of right. *Id.* As discussed above in connection with Rule 24(a), Reliant and CMTA cannot justify the tardiness of their motions to intervene.

3. There Is No Common Question Of Law Or Fact Between Reliant's Claims And The Underlying Action

Finally, Reliant fails to establish a nexus between its asserted interests and SCE's claims against the CPUC. Reliant wanted to litigate a different case than the one that SCE brought against the CPUC and that those parties settled. SCE's case concerns its claim for recovery of costs from its customers. The case that Reliant would like to litigate is how SCE would use that money, *viz.*, claims for the payment of alleged debts to SCE creditors. *See* Reliant Br. at 12 (faulting stipulated judgment for "includ[ing] no provision for actually paying SCE's outstanding debts to Reliant, Mirant, or any other creditor"); *id.* at 28 (stipulated judgment "silent about the mechanics of payment to creditors"). As this Court has made clear, "[t]he intervention rule is . . . not intended to allow the creation of whole new lawsuits by the intervenors." *Donnelly*, 159 F.3d at 412 (quoting *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994)). Reliant's inability to show how this litigation ever was supposed to resolve "when, how, or even if Reliant, Mirant, or other creditors would be paid" by SCE, Reliant Br. at 12, underscores the soundness of the District Court's decision not to allow it to intervene.

Reliant's interest in SCE's claim against the CPUC is no different than the interest of *any* general unsecured creditor in the outcome of litigation brought by a debtor against a third party. If the debtor wins its case, it will have more money that it can use to pay its creditors. If that were enough to entitle the creditor to intervene in the debtor's litigation – or, worse yet, to justify reversing a District Court's exercise of discretion not to allow intervention – the courts would soon be flooded with interventions from expectant creditors. Not surprisingly, the caselaw does not support that result. *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846 (4th Cir. 2001), does not hold, as Reliant suggests (Reliant Br. at 36-37), that unsecured creditors can intervene in any litigation brought by their debtor. The holding of *Safety-Kleen*, which was expressly "limited to the particular circumstances of this case," 274 F.3d at 867-68, was based on the failure by either the lower court or the parties to articulate "any reason" for denying intervention, *id.* at 867. (Just the opposite is true in this case, as both the District Court and the parties identified multiple grounds for upholding the exercise of the lower court's discretion.) The Fourth Circuit did not accept the intervenors' alternative argument that, as representatives of unsecured creditors, they had an interest in the subject of the action sufficient to give rise to an entitlement to intervene of right.

### C. Reliant Lacks Article III Standing To Intervene In The District Court Proceedings

Even if Reliant could satisfy all of the requirements for either as-of-right or permissive intervention – which it cannot – the District Court's order as to Reliant should be affirmed on an alternative basis: Reliant lacks standing under Article III of the Constitution, and the District Court therefore had no jurisdiction to entertain its arguments. The standing limitation is at the core of federal judicial power and, "at an irreducible minimum" requires a "party who invokes the court's authority to show that he personally has suffered some actual or threatened injury," that the injury "fairly can be traced to the challenged action," and that the injury "is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472 (1982) (quotations omitted); *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995). Reliant cannot establish Article III standing.

Reliant cannot establish any causal connection between the entry of the stipulated judgment and the only "injury" that Reliant asserts in this litigation – that SCE owes it money. *See supra* at 16. Even if Reliant presented real evidence that it is a creditor of SCE – which it does not – Reliant does not suggest that it has suffered nonpayment *because* of the entry of the stipulated judgment. On the contrary, the settlement enables SCE to make payment to the Cal PX, Reliant ER 227, and thus increases the likelihood that Reliant will be paid. Nor would any

injury Reliant claims be redressed by the relief it seeks. Eliminating the particular settlement provisions to which Reliant objects will not result in Reliant being paid. Even apart from the settlement, SCE has the discretion to cooperate with the CPUC in pursuing claims against generators (as it has done in the past), and has the discretion not to settle with generators or to settle only on such terms as SCE elects. Indeed, Reliant's major objection to the settlement is that it *fails* to specify whether and how SCE will pay Reliant. Reversing the stipulated judgment therefore gets Reliant no closer to getting paid what it claims to be owed.

Reliant's position as would-be intervenor does not relieve it of the need to meet the requirements of Article III standing. As this Court has repeatedly recognized, the Article III "standing requirement is at least implicitly addressed by our requirement [for intervention of right] that the applicant must 'assert[] an interest relating to the property or transaction which is the subject of the action.'" *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 n.3 (9th Cir. 2001) (quotations omitted). Thus, Reliant's failure to show a cognizable injury caused by the settlement that would be redressed by the relief it seeks not only defeats Reliant's argument for intervention as of right, but also demonstrates its lack of Article III standing.

The Article III requirements have even greater bite as applied to Reliant's plea for permissive intervention. Even if Reliant otherwise met the standards for

permissive intervention, it cannot become a party that invokes the Court's jurisdiction unless it meets the irreducible minimum standing requirements. This is particularly so where, as here, a would-be intervenor seeks to raise an issue – the repayment of alleged debt – that was not raised, litigated, or resolved by the parties themselves. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 776 (3d Cir. 1994) (analyzing whether third parties have standing to intervene permissively to raise challenge to a previously entered protective order in an effort to obtain access to information). In these circumstances, a person without Article III standing is asking the federal court to decide an issue that is not otherwise presented as a case or controversy by the real parties in interest. The federal courts are not in the business of rendering opinions at the behest of persons who lack Article III standing. Accordingly, the District Court is without jurisdiction to entertain Reliant's arguments on the merits of the stipulated judgment.

**D. Reliant And CMTA Lack Independent Standing To Appeal From The Stipulated Judgment**

Finally, Reliant and CMTA erroneously contend that they have standing to challenge the stipulated judgment on appeal even if they are not entitled to intervene under Rule 24. Reliant Br. at 40-41. Appellants' own authority makes clear that, as a general rule, "persons who were not parties before the district court may not appeal that court's order." *Bank of America v. M/V Executive*, 797 F.2d 772, 774 (9th Cir. 1986); *see also Marino v. Ortiz,* 484 U.S. 301, 304 (1988) (per

curiam) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled.").

*Bank of America,* on which Reliant and CMTA rely, recognizes a narrow exception to that rule where "(1) the appellant, though not a party, participated in the district court proceedings, and (2) the equities of the case weigh in favor of hearing the appeal." 797 F.2d at 774. The Supreme Court has expressed deep skepticism about the propriety of such an exception under *any* circumstance, *Marino,* 484 U.S. at 304 (holding that "because petitioners were not parties to the underlying lawsuit, and because they failed to intervene for purposes of appeal, they may not appeal from the consent decree approving that lawsuit's settlement"), and has made clear that whether or not such an exception might exist, "the better practice is for such a nonparty to seek intervention for purposes of appeal." *Id.* The *Bank of America* exception thus *only* comes in to play where a non-party has otherwise failed to seek intervention. That is simply not the case here, and the exception appellants identify is thus inapposite.

In all events, Reliant and CMTA satisfy neither of the *Bank of America* criteria. Apart from their applications for intervention, Reliant and CMTA did not in any sense participate in the District Court proceedings at any time prior to the Court's consideration of the stipulated judgment. The contrast with the non-party/appellant's participation in *Bank of America* is striking: the non-party there

filed papers and presented oral argument to a magistrate judge and the district court on the merits of the case.

Moreover, the equities weigh strongly against allowing Reliant and CMTA to participate at this late stage. Reliant and CMTA do not contend they had no notice of this litigation. On the contrary, Reliant and CMTA deliberately sat out during the initial months of litigation and remained silent when the District Court stayed these proceedings to allow the parties time to reach a consensual resolution. There also is no discernable prejudice to either entity from denying intervention. Reliant candidly acknowledges that its real goal in stepping in is to ensure payment for money it says it is owed. Nothing in the settlement, however, even remotely purports to extinguish any of the "claims" for payment that Reliant asserts it would like to bring. For its part, CMTA has not advanced a single argument that TURN has not already made; there is nothing inequitable about requiring CMTA to limit its participation to submitting amicus briefs echoing TURN's arguments.

## II. <u>RELIANT AND CMTA PROVIDE NO BASIS FOR OVERTURNING THE STIPULATED JUDGMENT</u>

Reflecting their divergent interests in the outcome of the underlying lawsuit, Reliant and CMTA make very different arguments on the merits for reversing the stipulated judgment. Reliant – but not CMTA – argues that the settlement agreement's Pre-Settlement and Litigation Cooperation Provisions put the CPUC in the business of regulating wholesale power rates and thereby intrude on FERC's

exclusive jurisdiction. On the last page of their brief, Reliant and CMTA join together to adopt TURN's merits arguments for overturning the stipulated judgment. None of these arguments supports reversal.

### A. <u>Neither The Pre-Settlement Provision Nor The Litigation Cooperation Provision Intrudes On FERC's Jurisdiction</u>

Reliant's principal merits argument is that the Pre-Settlement and Litigation Cooperation Provisions of the SCE-CPUC settlement agreement intrude on FERC's exclusive jurisdiction to set wholesale power rates. The argument fails because neither provision interferes in any way with FERC's jurisdiction. The Pre-Settlement Provision cabins only *SCE's* decision whether to voluntarily compromise refund litigation relating to its purchases from the Cal PX. FERC would not become involved in reviewing the terms of a proposed settlement to determine its "justness and reasonableness" until *after* SCE consents to settlement terms. SCE has the indisputable right to decide the terms on which it will consent to a strictly voluntary settlement before submitting it to FERC for approval. SCE also has the indisputable right to obligate itself to obtain another's consent, be it a lender which has the right to review proposed litigation settlements or (as here) a co-party on the same side of refund litigation. SCE may be tying its own hands, but there is no preemption issue because it is not tying FERC's.

The Pre-Settlement Provision has no application if FERC decrees a resolution to the refund proceedings. SCE must underscore this point because

Reliant's brief potentially mischaracterizes the Pre-Settlement Provision. Specifically, Reliant states that the Pre-Settlement Provision "forbid[s] [SCE] from actually paying *these rates* to Reliant and Mirant unless [SCE] first obtains the CPUC's approval." Reliant Br. at 46 (emphasis added). If by "these rates" Reliant means to refer to "wholesale rates that FERC decrees," then this statement is incorrect. Nothing in the settlement agreement purports to give the CPUC authority to approve SCE's payment pursuant to a FERC order. The only pricing term as to which the CPUC can have a say under the Pre-Settlement Provision is one that SCE and any wholesaler agree to in a tentative compromise of outstanding disputes: "in the event that SCE wishes to compromise, waive or settle any [refund claim], it shall *first obtain* the CPUC's permission to do so." Settlement Agreement § 3.2(c) (emphasis added), Reliant ER 219. By definition, FERC would not review or set a "rate" proposed through SCE-wholesaler settlement discussions until *after* SCE and the wholesaler agreed to it; because SCE must obtain the CPUC's approval for the settlement before providing its own agreement, the CPUC's involvement is necessarily concluded *before* FERC ever commences to review the settlement. And if there is no compromise or settlement of an SCE-wholesaler claim, and FERC renders a decision on the merits that requires SCE to make a payment, the Pre-Settlement Provision is not implicated and the CPUC has no approval right.

Reliant similarly exaggerates the impact of the Litigation Coordination Provision on FERC's jurisdiction, although even Reliant admits that its impact is "less direct" than the Pre-Settlement Provision's. Reliant Br. at 47. Reliant incorrectly characterizes the Litigation Coordination Provision as giving the CPUC the "power to force SCE to institute and maintain additional legal claims against the sellers, regardless of whether such claims are inconsistent with FERC's exclusive jurisdiction over wholesale rates." *Id.* at 52. In fact, SCE's obligations under the provision are much more narrowly circumscribed: SCE agrees only to consult with state counsel concerning litigation strategies and "consider in good faith" their views about litigation decisions; to execute reasonable joint-defense agreements so as to avoid waiving applicable privileges; and to "seek and consider in good faith" state counsel's input about legal briefs filed in the FERC refund proceedings. Settlement Agreement § 3.1(a)-(c), Reliant ER 217-18. In short, SCE undertakes to do no more than what FERC already has allowed SCE to do by aligning it and the CPUC as complainants in the refund proceedings: to cooperate with each other in pursuing their common claims for refund and to consider "in good faith" the suggestions that each party makes to the other concerning the conduct of the litigation. In no way does the Litigation Cooperation Provision require SCE to institute litigation at the CPUC's insistence or to ignore any FERC rate or refund order.

### B. <u>The Federal Power Act Does Not Preempt The Pre-Settlement And Litigation Cooperation Provisions</u>

Reliant makes an extreme jurisdictional argument: that the Federal Power Act, 16 U.S.C. § 824e(a), bars a state utilities commission from playing *any* role in any process that could lead to the presentation of a wholesale power rate for FERC's review and approval. Reliant's position is belied, first, *by FERC itself,* which expressly invited the State of California and the CPUC to participate in the very settlement process that Reliant now argues is off-limits to the CPUC:

> [W]e stress that *it will be critical to the success of these discussions that the State of California* designate one or more representatives, authorized to act on behalf of all affected state interests, to *participate fully in the settlement discussions.*

*San Diego Gas & Elec. Co.*, 95 FERC ¶ 61,418, at 62,570, 2001 FERC LEXIS 1440, at *116 (emphasis added).

Reliant cannot square its argument that the CPUC can have no role in the process of arriving at a settlement rate for eventual presentation to FERC and FERC's express solicitation of the State's "critical" participation in that process. The CPUC did not buy any power in the Cal PX. The CPUC is a party to the FERC refund proceedings solely because its status as the State's electricity "regulator" gives it an interest in the outcome of the refund proceedings. Contrary to Reliant's claim that any such interest is necessarily parochial and thus

preempted, FERC has allowed the CPUC to intervene and emphasized the need for it to be involved in any consensual resolution of the refund claims.

Reliant's extended discussion of FERC's exclusive jurisdiction to set wholesale rates, *see* Reliant Br. at 41-50, is beside the point. Reliant's exclusive jurisdiction argument assumes that the settlement agreement implicates conduct that is within FERC's exclusive jurisdiction. But Reliant has failed to show that FERC has jurisdiction over the objects of the Pre-Settlement and Litigation Cooperation Provisions, namely, parties' decisions whether to settle (and if so on what terms) refund claims before presenting them to FERC for review and approval, or their conduct of litigation in coordination with aligned parties having common interests. Because the settlement is limited to these consensual activities preceding a FERC decision, and nothing in the settlement agreement gives the CPUC the authority to interfere with a FERC rate or refund order, the settlement does not implicate FERC's exclusive jurisdiction.

For these reasons, Reliant's citation of *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953 (1986), and *Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354 (1988), is misplaced. These cases deal with the preemptive force of FERC's action within its exclusive jurisdiction. Reliant fails to show that the Pre-Settlement and Litigation Cooperation Provisions even

implicate, much less undermine, FERC's exclusive jurisdiction to set wholesale rates.

The CPUC in its brief explains how the so-called "*Pike County*" rule has been interpreted by some courts to limit the scope of FERC preemption to the regulation of the rates charged by a wholesale seller and to preserve a state commission's authority to review the prudence of the utility as purchaser. *See Nantahala*, 476 U.S. at 973 (citing *Pike County Light & Power Co. v. Pennsylvania Public Util. Comm'n*, 77 Pa. Commw. 268, 465 A.2d 735 (1983)). In both *Nantahala* and *Mississippi Power*, the Supreme Court reserved the question whether *Pike County* is a valid exception to the filed-rate doctrine, but distinguished *Pike County* on other grounds. *Nantahala*, 476 U.S. at 972-73; *Mississippi Power,* 487 U.S. at 373-74. Suffice to say that if Reliant's view were correct, the Supreme Court's distinguishing of *Pike County* was unnecessary verbiage; the Court simply could have declared that *Pike County* review is preempted per se because any state commission review of a utility's actions touching upon wholesale power sales necessarily interferes with FERC's exclusive jurisdiction.

Reliant also places unwarranted reliance on *Duke Energy Trading & Marketing Co. v. Davis*, 267 F.3d 1042, 1056-59 (9th Cir. 2001), where this Court, relying on *Nantahala*, held that Governor Davis's commandeering of wholesaler

contracts approved in FERC tariffs – specifically the Governor's nullification of those contracts' security and mitigation rules in the event of utility defaults – violated the filed-rate doctrine. The Court held the Governor's actions preempted *not* because the Governor's orders touched on the wholesale market – the jurisdictional argument that Reliant makes here – but because there was an *actual conflict* between the Governor's orders and the security and default mitigation provisions set forth in FERC-approved tariffs. The Court makes this point repeatedly in the opinion:

- "Governor Davis's commandeering orders *directly nullify* the security and default mitigation provisions of the FERC-approved CTS rate schedule, and hence cross the 'bright line' between state and federal jurisdiction established by the [Federal Power Act]." *Id.* at 1056 (emphasis added).

- "Governor Davis's commandeering orders *effectively rewrote the terms of the [FERC-approved] CTS rate schedule*, depriving wholesale suppliers such as Duke of their bargained-for collateral and default mitigation rights." *Id.* at 1057 (emphasis added).

- "[B]y [the Governor's] commandeering the block forward contracts, Duke (and, derivatively, the CalPX) lost its FERC-protected right to standard financial protection, *i.e.*, to liquidate its collateral if the buyers default on their obligations. *It is Governor Davis's interference with the block forward contracts' security provisions that is preempted by the federal scheme.*" *Id.* at 1058 (emphasis added).

- "Here, it is the very act of commandeering the block forward contracts that is preempted because in so doing, *the Governor nullified express requirements of a FERC-*

> *regulated and approved scheme.*" *Id.* at 1058 n.11 (emphasis added).

Here, by contrast, Reliant cannot point to *any* FERC tariff or order with which either the Pre-Settlement or Litigation Cooperation Provision conflicts. Its assertion that "the CPUC would directly control the timing and amount of any payment for wholesale electricity purchases by SCE to Reliant or Mirant, *which are governed by FERC-approved wholesale tariffs*[,]" Reliant Br. at 50 (emphasis added), is inaccurate. Reliant has not cited any FERC-approved wholesale tariff that prevents SCE from seeking the CPUC's concurrence before entering into a settlement with wholesale generators, or that prevents SCE from cooperating with the CPUC in pursuing refund claims at FERC. In fact, Reliant has not even identified any FERC tariff that would obligate SCE to pay Reliant at all; and the whole issue of how much, if at all, SCE should pay the Cal PX is the crux of the pending FERC refund proceedings. As discussed above, the Pre-Settlement Provision only comes into play *before* FERC has even reviewed (much less approved) a proposed settlement; once FERC adopts any refund order, the Pre-Settlement Provision does not purport to authorize any entity to ignore it.

In sum, Reliant has no basis for its sweeping assertion that the CPUC is precluded from playing any role in any process that might lead to the presentation of rates for FERC approval. Nothing in the Pre-Settlement or Litigation

Cooperation Provisions even remotely intrudes on FERC's jurisdiction to set wholesale rates.

### C. Reliant's and CMTA's Incorporated TURN Arguments For Overturning The Stipulated Judgment Have No Merit

Reliant announces on the last page of the brief that it also embraces all of TURN's merits arguments. Reliant Br. at 54. For its part, CMTA says that it argued the same issues that TURN did in CMTA's amicus filing in TURN's appeal; CMTA simply incorporates that brief. *Id.* The arguments in CMTA's amicus brief are no different than the arguments that TURN made in its own brief. Accordingly, SCE responds to Reliant and CMTA's arguments on this score by incorporating its discussion of the merits in its brief in TURN's appeal.

## CONCLUSION

The judgment should be affirmed.

Dated: February 1, 2002

Respectfully submitted,

Stephen E. Pickett (SBN 97807)
Barbara Reeves (SBN 58100)
Kris G. Vyas (SBN 162871)
Southern California Edison Company
2244 Walnut Grove Avenue
Rosemead, California 91770
Telephone: (626) 302-1903
Facsimile: (626) 302-2783

Ronald L. Olson (SBN 44597)
John W. Spiegel (SBN 78935)
Henry Weissmann (SBN 132418)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Suite 3500
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

By ______________________
Henry Weissmann

## STATEMENT OF RELATED CASES

[9th CIR. R. 28-2.6]

Pursuant to Ninth Circuit Rule 28-2.6, Plaintiff and Appellee Southern California Edison Company states that these consolidated appeals are related to *Southern California Edison Co., Plaintiff-Appellee v. Loretta M. Lynch, et al., Defendants-Appellees, The Utility Reform Network, Intervenor-Appellant*, No. 01-56879. All of these appeals have been consolidated by Order of this Court filed January 2, 2002.

**CERTIFICATE OF COMPLIANCE**
**FRAP 32(a)(7)(C) & 9th CIR. R. 32-1**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the foregoing Brief of Appellee Southern California Edison Company is double-spaced and printed in proportionally spaced 14-point Times New Roman type. Exclusive of those portions not subject to the type-volume limitations, *see* FRAP 32(a)(7)(B)(iii), it contains 9,275 words. In completing this word count, I relied on the "word count" function of the Microsoft Word 2000 word processing program.

Dated: February 1, 2002

HENRY WEISSMANN

***PROOF OF SERVICE***

I am a citizen of the United States, over 18 years of age, employed in the City of Los Angeles and County of Los Angeles, and not a party to the subject cause. My business address is 355 South Grand Avenue, Suite 3500, Los Angeles, California 90071.

On February 1, 2002, I caused to be served via Federal Express (Saturday delivery) two (2) copies of the Brief of Appellee Southern California Edison Company in Nos. 01-56879, 01-56993, and 01-57020, to the following parties:

Gary M. Cohen, Esq.
Public Utilities Commission of the
State of California
505 Van Ness Avenue
San Francisco, California 94102

Michael J. Strumwasser
Fredric D. Woocher
Strumwasser & Woocher LLP
100 Wilshire Boulevard, Suite 1900
Santa Monica, California 90401

Robert A. Berliner, Esq.
Berliner Candon & Jimison PC
1225 19th Street, N.W. Suite 800
Washington, D.C. 20036

Lloyd W. Pellman, Esq.
John F. Krattli, Esq.
Office of the County Counsel
500 West Temple Street, Room 648
Los Angeles, California 90012-2713

Terry J. Houlihan, Esq.
McCutchen, Doyle, Brown
& Enersen, LLP
Three Embarcadero Center
San Francisco, California 94111-4067

Netti Hoge, Esq.
Robert E. Finkelstein, Esq.
The Utility Reform Network
711 Van Ness Avenue, Suite 350
San Francisco, California 94102

Richard H. Cooper, Esq.
Kirkpatrick & Lockhart LLP
10100 Santa Monica Boulevard
Suite 700
Los Angeles, California 90067

Keith R. McCrea, Esq.
Sutherland Asbill & Brennan
1275 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Bryan A. Merryman, Esq.
White & Case LLP
633 West Fifth Street
Suite 1900
Los Angeles, California 90071

**COURTESY COPIES SENT TO:**

Bill Lockyer, Esq.
Attorney General for the
State of California
300 South Spring Street
Los Angeles, California 90013

Karen N. Frederiksen, Esq.
Davis, Wright & Tremaine LLP
865 South Figueroa Street
Suite 2400
Los Angeles, California 90017

David S. MacCuish, Esq.
Andrew M. Gilford, Esq.
Weston, Benshoff, Rochefort,
Rubalcava & MacCuish LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

I also filed the above documents with the United States Court of Appeals for the Ninth Circuit by mailing them this day to the Clerk of said Court by First-Class United States mail. *See* Fed. R. App. P. 25(a)(2)(B).

I declare under penalty of perjury that the foregoing is true and correct and that I executed this declaration on February 1, 2002 at Los Angeles, California.

Marie S. Young
Marie S. Young

{794762.1}