# In the United States Court of Federal Claims

Case Nos. 07-157C and 07-167C
FOR PUBLICATION
Filed: April 2, 2013

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **PACIFIC GAS AND ELECTRIC COMPANY, AND SOUTHERN CALIFORNIA EDISON COMPANY,**<br><br>*Plaintiffs*<br><br>v.<br><br>**THE UNITED STATES**,<br><br>*Defendant.* | Motion to Reconsider; *City of Redding v. FERC*, 693 F.3d 828 (9th Cir. 2012) *Bonneville Power Administration v. FERC*, 422 F.3d 908 (9th Cir. 2005) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

   *Marie L. Fiala*, Sidley Austin L.L.P, San Francisco, CA, for Plaintiff, Pacific Gas & Electric Company. *Jane I. Ryan*, Steptoe & Johnson L.L.P., Washington, D.C., for Plaintiff, Southern California Edison Company. *Mark Fogelman*, Friedman Dumas & Springwater L.L.P., San Francisco, CA, for Plaintiff, San Diego Gas & Electric Company. *Gary Alexander*, Deputy Attorney General, for Plaintiff The People, Office of the Attorney General, San Francisco, CA.

   *Timothy P. McIlmail*, Senior Litigation Counsel, with whom were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, *Martin F. Hockey*, *Jr.,* Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**Smith, Judge.**

   Before the Court is Defendant's Motion to Reconsider this Court's Opinion and Order dated May 2, 2012. Plaintiffs have not responded directly to this Motion nor has the Court requested a response to this particular Motion. However, Defendant has raised the same arguments in prior motions before this Court to which the Plaintiffs have responded. The parties were heard on those on September 7, 2012. Additionally, supplemental briefs were filed with regard to these issues. For the reasons set forth below and after careful consideration, the Court **DENIES** Defendant's Motion to Reconsider.

# INTRODUCTION

In its Opinion and Order, *PG&E v. United States*, 105 Fed. Cl. 420 (2012), this Court found that Defendant breached its contractual duty to pay refunds owed to certain participants in the California Power Exchange (PX) and California Independent System Operator (ISO) markets. *Id.* at 440. Defendant now asks this Court to reconsider its Opinion and Order based upon the Ninth Circuit's decision in *City of Redding v. FERC*, 693 F.3d 828 (9th Cir. 2012) and to find that Defendant did not breach any contracts with Plaintiffs with respect to the refund period claims and, as such, enter judgment dismissing Plaintiffs' refund period claims altogether. To this end, Defendant argues that the Court interpreted Section 206 of the Federal Power Act (FPA), 16 U.S.C. § 824e, in a manner inconsistent with the Ninth Circuit's decision in *City of Redding*. Specifically, Defendant argues that this Court found that § 206 of the FPA permitted FERC to retroactively adjust rates, contrary to the *City of Redding* decision. Defendant argues that in the *City of Redding* decision, the Ninth Circuit held that § 206(a) permits FERC to adjust rates only prospectively and that § 206(b) permits FERC only to determine just and reasonable rates to order refunds from jurisdictional sellers. Therefore, Defendant argues, because FERC may not retroactively reset rates for non-jurisdictional sellers, this Court erred in finding that the PX and ISO tariffs bind the government to FERC's determination of just and reasonable rates for the whole market.

# DISCUSSION

*The City of Redding Decision*

To determine whether this Court's Opinion and Order is inconsistent with *City of Redding*, the Ninth Circuit's decision must be reviewed. In *City of Redding*, the Ninth Circuit had to determine if specific FERC orders related to the PX and ISO electricity market rate adjustments exceeded FERC's authority. *City of Redding*, 693 F.3d at 831. This series of orders begins with a November 2000 order stating that FERC planned to investigate the rates being charged in the PX/ISO markets. *Id.* at 832. FERC then determined the PX/ISO rates to be unreasonable in its March 9, 2001 Order and established a "market clearing price" that would have been in effect if "[there] had . . . been competitive forces at work . . . ." *Id.* (quoting the March 9, 2001 Order, 94 FERC ¶ 61,245, at 61862). A subsequent order, the July 2001 Order, stated that FERC had the authority to retroactively reset rates and require refunds from jurisdictional and non-jurisdictional entities. *City of Redding*, 693 F.3d at 832-833. The non-jurisdictional entities affected by the order brought suit disputing FERC's authority to order the non-jurisdictional refund, *Id.* at 833, and the Ninth Circuit in *Bonneville Power Administration v. FERC*, 422 F.3d 908 (9th Cir. 2005), held that "FERC does not have refund authority over . . . sales made by governmental entities and non public utilities." *Id.* at 911.

After *Bonneville*, FERC issued a series of orders amending the July Order, culminating with the May 2009 Order that stated FERC's actions in regard to the PX/ISO market rates were not a retroactive resetting of rates, but instead a determination of a just and reasonable rate for the purposes of ordering refunds from jurisdictional sellers. *City of Redding*, 693 F.3d at 834. The court in *City of Redding* reviewed whether FERC exceeded its authority in the post-*Bonneville*

orders. *Id.* at 831. First, the Ninth Circuit found that § 206 of the FPA does not give FERC the power to retroactively reset rates for all market participants. *Id.* at 838 (noting that the FPA gives FERC the authority under § 206(a) to set rates prospectively and under § 206(b) the authority to order refunds from jurisdictional sellers). In finding this, the *City of Redding* court dismissed FERC's argument that the ability to set rates retrospectively was necessary in determining the refund amounts for jurisdictional entities. *Id.* at 839. Instead, the court said that under § 206(b), FERC may only determine a just and reasonable rate for the purpose of calculating the jurisdictional sellers' refund amount. *Id.* at 841. The court also found that in reviewing the post-*Bonneville* orders, FERC acknowledged that it lacked the authority to order refunds from non-jurisdictional entities, and because of this, the court found that FERC did not exceed its authority in issuing the those orders. *Id.* at 842.

While the Ninth Circuit in *Bonneville* and *City of Redding* forbid FERC from ordering non-jurisdictional entities to pay refunds, neither case forecloses other remedy possibilities for injured market participants. In fact, the court in *Bonneville* left open the possibility that the remedy for injured market participants could be contract claims. *Bonneville*, 422 F.3d at 925 ("[T]he remedy, if any, may rest in a contract claim, not a refund action."). The *Bonneville* court confirmed that the non-jurisdictional entities entered into agreements with the PX and ISO that obligated the market participants to follow the tariffs, which are subject to FERC regulation. *Id.* ("FERC…emphasize[s] that the Public Entities entered into agreements with the ISO and CalPX that obligated them to abide by the ISO and CalPX tariffs…All of this is true."). While mentioning the possibility of a contract claim, the *Bonneville* court avoided making any determination as to remedies other than refund actions. *Id.* at 926 ("[W]e take no position on remedies available outside of the FPA."). The *City of Redding* decision reestablished the *Bonneville* opinion as to contract claims. *City of Redding* at 834. ("[Contract] actions loom large on the outskirts of this appeal and explain the motivation of most of the parties, but they are not before this court and we do not consider the contract-related arguments."). Even so, the *City of Redding* decision goes somewhat further than *Bonneville* as to what the just and reasonable prices established by FERC mean to non-jurisdictional entities:

> We are not blind to the potential impact of FERC's determination of the just and reasonable prices. In the contract actions brought in other forums, it is claimed that the Petitioners before us are liable for charges collected by them in excess of the just and reasonable prices subsequently calculated by FERC. Petitioners seek to protect themselves against those claims by preventing FERC from recalculating the market rates. *But FERC's recalculation was not an empty exercise, because it had to determine just and reasonable market clearing prices in order to calculate the refunds to be ordered from sellers from which it could order refunds.* What impact this calculation might have on the contract actions pending in other courts is not for us to say.

*Id.* (emphasis added). As the Ninth Circuit decision in *City of Redding* avoids making a determination as to what the just and reasonable rates mean to non-jurisdictional contract claims, it allows the courts hearing the contract claims, the California state courts and the United States Court of Federal Claims, to make the decision as to what that effect is.

*Defendant's Contractual Obligation Argument*

In the Motion to Reconsider, Defendant states that Plaintiffs are foreclosed from relying on the PX and ISO tariffs for a contractual remedy because having FERC effect a contractual remedy on non-jurisdictional entities is outside of FERC's § 206 authority.  But that is not what is happening. The contract was determined by the parties, the FPA, and the PX and ISO, not FERC.  FERC is merely and permissibly determining what a just and reasonable rate for the subject period is.   The contract determines the consequence of this price with respect to the contractual rights of the parties.  It also seems clear from the Ninth Circuit decision that this is a necessary FERC action in order to assess refunds for jurisdictional sellers. The Defendant's argument also ignores the fact that *City of Redding* and *Bonneville* both provide the possibility of the contractual remedy as an alternative to the disallowed FERC refund order.   *See Bonneville*, 422 F.3d at 925, 926; *see also City of Redding*, 693 F.3d at 834.   Further, in *City of Redding*, the Ninth Circuit states its understanding as to why the non-jurisdictional entities would want the court to find the FERC orders outside of FERC's authority since doing so would prevent a recalculated rate for the market to be determined.  *Id.* at 842.  ("Petitioners seek to protect themselves against [the contract] claims by preventing FERC from recalculating the market rates.").

The *Bonneville* decision describes how the Eighth Circuit permitted the contractual remedy in the Mid-Continent Area Power Pool (MAPP) proceedings in *Alliant Energy v. Nebraska Public Power District*, 347 F.3d 1046 (8th Cir. 2003).   Like the PX and ISO markets, MAPP is a power pool that includes both government utilities (outside of FERC's refund authority) and non-government utilities (within FERC's refund authority).  *Id.* at 1048.  The Eighth Circuit found that while FERC could not order the government entities to pay a refund, the terms of the contractual agreement into which MAPP participants entered subjected all participants to FERC's regulatory authority.  *Id.* at 1050.  This permitted the court to enforce the agreement and order the government entity to pay the refund.  *Id.*  *Bonneville*'s discussion of the contractual remedy used in the *Alliant* decision shows the Ninth Circuit's understanding that the *Alliant* decision remedy and a valid contract claim, based upon a FERC determination of the just and reasonable rate for the whole market, is not inconsistent with its decision at issue here, contrary to the Defendant's arguments.   In addition, the Ninth Circuit's *City of Redding* decision does nothing to dispute the potential of a contractual claim remedy.   It leaves in place *Bonneville*'s discussion of the remedy process from the *Alliant* decision, only mentioning *Alliant* when looking for cases discussing whether FERC had the authority to retroactively reset tariff rates.   *City of Redding*, 693 F.3d at 839-840.   The discussion of the contract remedy availability in *Bonneville* and *City of Redding* shows that the Ninth Circuit leaves available the potential to bring a contract claim against the non-jurisdictional parties.

Finally, the contracts into which the non-jurisdictional entities entered to participate in the PX and ISO markets clearly state that the markets were subject to FERC's regulation.  *Bonneville*, 422 F.3d at 925.  The question remains as to whether the tariff language permitting a market participant to "exercise its rights under Section 206 of the FPA," *PG&E*, 105 Fed. Cl. at 434 (quoting the language of PX Tariff Section 13, which substantively identical to ISO Tariff Section 19), permits injured market participants to rely on FERC's determination of just and reasonable

4

rates in their contract claims. Section 206 permits FERC to determine a just and reasonable rate for the purpose of calculating a refund obligation for jurisdictional sellers. *City of Redding*, 693 F.3d at 834. *City of Redding* leaves open how the recalculated rates may be used in determining the non-jurisdictional entities' contractual obligation. *Id.* at 842. Thus, Defendant's main argument in the Motion to Reconsider is defeated by the fact that the Ninth Circuit avoids making a determination on the merits of the contract claims cases and leaves finding how the just and reasonable rates may be used to the United States Court of Federal Claims. Furthermore, because these issues have not been decided but have been left open by the Ninth Circuit, Defendant's argument with regard to issue preclusion and collateral estoppel is without merit.

## **CONCLUSION**

It is clear to this Court that its Opinion and Order is consistent with the decision in *City of Redding*. In light of this, the Court hereby **DENIES** Defendant's Motion to Reconsider.

**IT IS SO ORDERED.**

s/Loren A. Smith
LOREN A. SMITH
Senior Judge