# In the United States Court of Federal Claims

Case Nos. 07-157C and 07-167C
FOR PUBLICATION
Filed: April 2, 2013

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY, AND SOUTHERN CALIFORNIA EDISON COMPANY,<br>    *Plaintiffs,*<br>v.<br><br>THE UNITED STATES,<br>    *Defendant.* | Declaratory Judgment; California Power Crisis |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Marie L. Fiala*, Sidley Austin L.L.P, San Francisco, CA, for Plaintiff, Pacific Gas & Electric Company. *Jane I. Ryan*, Steptoe & Johnson L.L.P., Washington, D.C., for Plaintiff, Southern California Edison Company. *Mark Fogelman*, Friedman Dumas & Springwater L.L.P., San Francisco, CA, for Plaintiff, San Diego Gas & Electric Company. *Gary Alexander*, Deputy Attorney General, for Plaintiff The People, Office of the Attorney General, San Francisco, CA.

*Timothy P. McIlmail*, Senior Litigation Counsel, with whom were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, *Martin F. Hockey*, *Jr.,* Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**Smith, Senior Judge**.

Plaintiffs brought this action to determine whether the Defendant is contractually bound to retain no more than the just and reasonable prices the Federal Energy Regulatory Commission (FERC) set for electric power sales by Bonneville Power Administration (BPA) and Western Area Power Administration (WAPA) during the California Energy Crisis. The requested refunds fall into three categories: Refund Period sales, Excluded Transactions, and Summer Period sales.

The Court held a trial on Plaintiffs' claims and, thereafter, issued an opinion, *PG&E v. United States*, 105 Fed. Cl. 420 (2012). The opinion addressed the Refund Period sales for which Plaintiffs sought liability rulings. Although evidence was presented at trial for sales involving Excluded Transactions and Summer Period sales, the opinion did not address those

claims. Thus, Plaintiffs have filed a Motion for Entry of Findings of Fact and Conclusions of Law seeking declarations that Defendant is contractually obligated to refund any overcharges for Excluded Transactions and Summer Period sales, if and when, FERC resets prices for those sales.

For the reasons set forth below and after careful consideration, the Court hereby **GRANTS** Plaintiffs' Motion for Entry of Findings of Fact and Conclusions of Law finding that when FERC corrects the prices to just and reasonable prices for the Excluded Transactions and Summer Period Sales, Defendant will be contractually obligated to abide by the reset prices and refund any overcharges that the Agencies collected.

## BACKGROUND

This issue stems from the BPA's and WAPA's participation in the California Power Exchange (PX) and California Independent System Operation Corporation (ISO), two FERC-regulated California electric energy markets. After market participants asked FERC to look into the pricing in the PX and ISO markets, FERC took action under their Federal Power Act (FPA) authority to establish a refund period that put sellers on notice that during their investigation if any prices charged during that time were found to be unjust and unreasonable, the sellers may be subject to a refund liability. FERC found the prices to be unfair and reset them. The recalculated prices established the refund obligation of market participants under FERC's enforcement authority (jurisdictional entities). Jurisdictional entities did not include Federal government market participants, like BPA and WAPA, but participation in the PX and ISO markets required all participants to sign an agreement consenting to FERC's oversight of the markets.

In July 2001, FERC issued an order that it had the authority to retroactively reset rates and require refunds from jurisdictional and non-jurisdictional entities. *City of Redding v. FERC*, 693 F.3d 828, 832-833 (9th Cir. 2012). The non-jurisdictional entities affected by the order brought suit disputing FERC's authority to order the non-jurisdictional refund, *Id*. at 833, and the Ninth Circuit in *Bonneville Power Administration v. FERC*, 422 F.3d 908 (9th Cir. 2005), held that "FERC does not have refund authority over . . . sales made by governmental entities and non public utilities." *Id.* at 911. After *Bonneville*, FERC issued a series of orders amending the July 2001 Order, culminating with the May 2009 Order that stated FERC's actions in regard to the PX/ISO market rates were not a retroactive resetting of rates, but instead a determination of a just and reasonable rate for the purposes of ordering refunds from jurisdictional sellers. *City of Redding*, 693 F.3d at 834.

Initially, FERC issued orders stating that it did not have the authority to correct the prices for the period between May 1, 2000 and October 1, 2000 (Summer Period) and for Refund Period energy exchanges and multi-day sales (Excluded Transactions). *PG&E v. United States*, 105 Fed. Cl. at 430. However, in *CPUC v. FERC*, 462 F.3d 1027 (9th Cir. 2006), the Ninth Circuit reversed FERC's denial of relief during the Summer Period and Excluded Transactions and remanded the case to FERC to reconsider. *Id.* at 1035. From April 11, 2012 until July 19, 2012, the FERC administrative law judge held trial to determine the refund requirements for the Excluded Transactions and the Summer Period transactions. Declaratory J. Oral. Arg. at 15. The FERC administrative law judge had until February 15, 2013 to rule on the case. *Id.* at 16.

On February 15, 2013, FERC issued its decision. *San Diego Gas & Elec. Co.*, 142 FERC ¶ 63,011, FERC Docket No. EL00-95-248 (Feb. 15, 2013). In its decision, FERC found that the Agencies engaged in Excluded Transactions are subject to mitigation, and per FERC's instruction are "to calculate the refunds." *Id*. at ¶ 131. The ALJ also found that the Agencies collectively owed refund for those transactions in the amount of $60,213,705 (before interest). *Id*. at 127, 147, 149, 151. With regard to the Summer Period sales, the ALJ found that the Agencies engaged in anomalous bidding that violated the tariffs, and that over the Summer Period there were over 20,000 total tariff violations that distorted the market prices. *Id*. at ¶¶14, 34-35. The impact of this decision is that now FERC can make a ruling on whether and to what extent the Agencies' prices for the Excluded Transactions and Summer Period sales are not just and reasonable.

## DISCUSSION

Plaintiffs' complaint in this matter involves seven claims for relief. This opinion will address Plaintiffs' Fourth and Fifth Claims seeking declaratory relief. Specifically, the Fourth Claim seeks a declaration that when FERC resets prices for the Agencies' Excluded Transactions, Defendant will be contractually bound to refund the value that the Agencies received in excess of the mitigated prices. The Excluded Transactions include the Refund Period energy exchanges and multi-day sales. The Fifth Claim similarly seeks a declaration that when FERC resets prices for the Agencies' Summer Period, transactions that took place from May 1, 2000 through October 1, 2000, Defendant will be contractually bound to refund value the Agencies received in excess of the mitigated prices.[1]

During the liability trial, evidence was presented regarding the Excluded Transactions and Summer Period sales. Specifically, evidence was given by Gary Stern, Stephen Oliver, Sean Sanderson and Jeffrey Ackerman.[2]

In its May 2, 2012, Opinion and Order, the Court found that BPA and WAPA breached their contractual obligation to refund overcharges incurred during the Refund Period. *PG&E v. United States,* 105 Fed. Cl. at 440. The Court did not make any findings as to the disposition of the Excluded Transactions and the Summer Period transactions because that issue was with FERC for reconsideration. *Id.* at 430.

### A. Jurisdiction

Though created in 1855, United States Court of Federal Claims jurisdiction received much of its present day reach from the Tucker Act of 1887, 28 U.S.C. § 1491. The Act gave the court the jurisdiction to "render judgment upon any claim against the United States, founded upon the Constitution, [Congressional Act], [federal regulation], or upon any express or implied

---

[1] The People's case is a related case in this matter, 07-184C. As such, some of the People's claims for relief are numbered differently from the IOUs' claims. The People's Fifth and Sixth Claims correspond to the IOUs' Fourth claim, and the People have no claim corresponding to the IOUs' Fifth Claim. This opinion addresses the IOUs' Fourth and Fifth claim as well as the People's Fifth and Sixth claims which shall be collectively referred to as "Plaintiffs' claims."

[2] For a complete list of witnesses and titles see *PG&E v. United States*, 105 Fed. Cl. 420, 431(2012).

contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2011). In interpreting what "claim" means as within the Tucker Act, the United States Supreme Court held that for a claim to be within the Unites States Court of Federal Claims' jurisdiction, the claim must be for "actual, presently due money damages from the United States." *United States v. King*, 395 U.S. 1, 3 (1969).

Congress expanded the Court of Federal Claims' authority when it amended the Tucker Act to provide for "equitable relief ancillary to claims for monetary relief over which it has jurisdiction," *National Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998), the Court does have the authority to hear or decline to hear or to dismiss declaratory judgment proceedings. *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1271 (Fed. Cir. 1999).

In reviewing whether declaratory relief is proper in a matter before the Court of Federal Claims, the Court has the discretion to "consider the appropriateness of declaratory relief, including whether the claim involves a live dispute between the parties, whether a declaration will resolve that dispute, and whether the legal remedies available to the parties would be adequate to protect the parties' interests." *Id.* In addition, the court may consider declaratory relief, even when there is the potential for damage claims in the future. *Emery Worldwide Airlines, Inc. v. United States*, 47 Fed. Cl. 461, 472 (2000) ("The court rejects defendant's position that we should dismiss [the declaratory relief claim] because plaintiff may, at some point, have a claim for damages."). In making its determination on declaratory relief, the court may take into consideration whether present monetary damages would be sufficient. *Alliant Techsystems*, 178 F.3d at 1271.

### B. Arguments

At trial, as well as through their motions and arguments during hearings, the Plaintiffs and Defendant have set out their evidence and arguments as to whether the Court should grant declaratory relief to the Plaintiffs.

Plaintiffs argue that the Court should grant a declaratory judgment. In support, Plaintiffs argue BPA and WAPA breached their contractual duty to refund overcharges for the Excluded Transactions and the transactions that occurred during the Summer Period. In making their argument, Plaintiffs set out two main reasons supporting their request. First, Plaintiffs make the argument for judicial efficiency. Plaintiffs argue that the Court has already heard the claims and the facts on which the claims rely, and as such, it would be time-consuming and inefficient to have to retry each set of transactions individually, especially since they are all connected by the fact that the BPA and WAPA entered into a contract that allowed participants to request that FERC adjust unjust and unreasonable market rates. Second, Plaintiffs argue that if the Court enters a declaratory judgment it could facilitate settlement discussions. The parties have acted in good faith throughout the process and only disagree as to the refund obligation.

Defendant argues that *City of Redding* precludes Plaintiffs' arguments. The Court addressed these arguments in its Opinion and Order dated April 2, 2013, denying Defendant's Motion for Reconsideration. As such, Defendant's arguments with regard to *City of Redding*

precluding Plaintiffs' claims are moot. Additionally, as Defendant reads *City of Redding*, FERC cannot reset prices. But, *City of Redding* found that FERC could determine what a just and reasonable rate was. This Court's earlier decision found that this allows Plaintiffs to assert the amount over "just and reasonable rates" as a valid contract claim. As its decision clearly states, the ALJ has found that the Excluded Transactions are subject to mitigation, and per FERC's instruction are due refunds. The ALJ similarly found various tariff violations that distorted the market prices during the Summer Period sales. Hence, Defendant's argument is without merit. The Court will, therefore, turn its attention to the facts presented at trial.

### C. Findings of Fact

It is true that the contractual basis for the Agencies' refund obligations on the Excluded Transactions and Summer Period sales arises from the same legal principles and many of the same facts as those for the Agencies' Refund Period sales that this Court has already ruled upon in its May 2, 2012 Opinion and Order. For instance, in that Opinion and Order the Court has already found the existence of a contract between the Agencies and Plaintiffs incorporating the PX and ISO Tariffs; that the Agencies are contractually bound by FERC's correction of tariff prices; that the Tariffs require repayment of overcharges; and that Plaintiffs have standing to bring these claims against the Agencies as direct parties.

At trial, Plaintiffs also presented facts relevant to the Excluded Transactions and Summer Period sales. Mr. Stern testified that the Excluded Transactions included "multi-day" and "exchange" transactions. He testified that these were transactions where the ISO arranged for delivery of power over more than a 24-hour period. Exchange transactions involved sales in kind through the ISO, where the selling party was repaid by the delivery of electric energy at a later date, rather than in cash and that both BPA and WAPA engaged in such transactions.

With regard to the Summer Period, May 1 to October 1, 2000, both Mr. Oliver and Mr. Sanderson testified that each of the Agencies also made sales through the PX and ISO during the Summer Period. Mr. Stern testified that the only difference between the Refund Period Transactions and the Summer Period and Excluded Transactions was that they were at different stages at FERC. As the only difference is the timing of the claims at FERC, the Court finds that the same legal principles that were found in its May 2, 2012 Opinion and Order with regard to the Refund Period apply to the Excluded Transactions and Summer Period sales as well. Specifically, the Court finds that existence of a contract between the Agencies and Plaintiffs incorporating the PX and ISO Tariffs; that the Agencies are contractually bound by FERC's correction of tariff prices; that the Tariffs require repayment of overcharges; and that Plaintiffs have standing to bring these claims against the Agencies as direct parties.

### D.  Declaratory Relief

As this Court has been granted the power to order declaratory relief, it is within this Court's discretion to make a determination as to the parties' contract rights upon the future occurrence of FERC's correction of prices for the Excluded Transaction and Summer Period sales. In making its determination, the Court must consider the appropriateness of declaratory relief. As stated earlier, in order to determine the appropriateness, the Court must determine

whether "the claim involves a live dispute between the parties, whether a declaration will resolve that dispute, and whether the legal remedies available to the parties would be adequate to protect the parties' interests." *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1271 (Fed. Cir. 1999).

Here, it is clear, all three parts are satisfied.  First there is a "live" dispute between the parties. Specifically, there is a live dispute regarding Defendant's obligation to refund overcharges with regard to the parties' contract rights if and when FERC makes a correction of prices.  This Court notes that other courts have held such relief proper even where the future events were much less imminent.  In *CW Government Travel, Inc. v. United States*, 63 Fed. Cl. 369, 389-90 (2004), the plaintiff sought a declaratory judgment that its contract made it the exclusive provider of certain commercial travel services. The United States argued there was no "live dispute" because there was no imminent decision by the Army to reduce plaintiff's provision of services under the contract, so that plaintiff was seeking an "advisory opinion" about the consequences of "a possible future event." *Id.* at 389. The court disagreed, holding that while the contract had not yet been breached, the facts "sufficiently evidence[d]" the government's intent to breach the contract in the future to allow the court to grant declaratory judgment relief.  *Id.* at 390.  Here, Defendant argues that in essence this opinion is also just an advisory opinion.  That is not so.  Like *CW*, the facts and law sufficiently show the Defendant's obligation to refund overcharges if, and when, FERC makes a correction of prices.

Second, in making a declaration, the dispute will be resolved.  And third, the legal remedies available in the future will not adequately protect the Plaintiffs' rights since trial might have to be repeated, all the evidence has been presented, and in the future live witnesses' testimony may be lost.  This is particularly true in light of the length of some of the necessary FERC investigations and calculations.  And, of course, only if FERC orders a reset of prices will any refund for overcharges be allowed.

## CONCLUSION

For the reasons set forth above the Court hereby **GRANTS** Plaintiffs' Motion.

**IT IS SO ORDERED.**

s/Loren A. Smith
LOREN A. SMITH
Senior Judge
